UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EFRAT INVESTMENTS LLC, Individually and on Behalf of all Others Similarly Situated, <br><br>        Plaintiff, <br><br>     v. <br><br> HUB CYBER SECURITY LTD., <br><br>        Defendant. | Civil Action No. 1:23-cv-05764-AS <br><br> <u>CLASS ACTION</u> |
| DUSTIN GREEN, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>     v. <br><br> HUB CYBER SECURITY LTD. f/k/a HUB CYBER SECURITY (ISRAEL) LTD., EYAL MOSHE, HUGO GOLDMAN, UZI MOSCOVICH, ZEEV ZELL, MOSHE RAINES, MANISH AGARWAL, and MOTI FRANKO, <br><br>        Defendant. | Civil Action No. 1:23-cv-06668-AS <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF THE
HUB INVESTOR GROUP'S MOTION FOR CONSOLIDATION, APPOINTMENT AS
<u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ..........................................................................................1

II.   SUMMARY OF RELEVANT FACTS ..............................................................................2

III.  PROCEDURAL HISTORY.................................................................................................5

IV.   ARGUMENT.......................................................................................................................6

        A.    Consolidation Is Discretionary and the Exchange Act and Securities Act
              Claims Should be Kept Separate...............................................................................6

        B.    The HUB Investor Group Should Be Appointed as Lead Plaintiff ........................7

              1.    The HUB Investor Group Timely Moved for Appointment as Lead
                    Plaintiff .......................................................................................................7

              2.    The HUB Investor Group Has the Largest Financial Interest in the
                    Relief Sought ..............................................................................................8

              3.    The HUB Investor Group Satisfies the Requirements of Rule 23 ...............8

              4.    The HUB Investor Group is an Appropriate "Group of Persons"
                    Under the PSLRA .....................................................................................10

        C.    The HUB Investor Group's Selection of Counsel Should Be Approved...............11

V.    CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Baron v. Talkspace, Inc.*,
  2022 WL 1912255 (S.D.N.Y. June 3, 2022) ...................................................... 10

*Crass v. Yalla Grp. Ltd.*,
  2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021) ..................................................... 10

*Godinez v. Alere Inc.*, et al.,
  No. 1:16-cv-10766 (PBS) (D. Mass. Dec. 22, 2017) ...................................... 12

*Gross v. AT&T Inc.*,
  2019 WL 7759222 (S.D.N.Y. June 24, 2019) .................................................... 7

*In re Millennial Media, Inc. Sec. Litig.*,
  87 F. Supp. 3d 563 (S.D.N.Y. 2015)................................................................. 11

*In re SunEdison, Inc. Sec. Litig.*,
  No. 16-md-02742-PKC (S.D.N.Y. Dec. 22, 2016)............................................ 11

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)............................................................................. 6

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)..................................................... 10

*Peters v. Jinkosolar Holding Co., Ltd.*,
  2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ................................................... 10

*Sgalambo v. McKenzie*,
  268 F.R.D. 170 (S.D.N.Y. 2010) ....................................................................... 9

*Silverstrand Investments v. AMAG Pharmaceuticals et al.*, No. 1:10-cv-10470 (NMG)
  (D. Mass Jul. 27, 2010)..................................................................................... 12

*Utesch v. Lannett Company Inc.*, *et al.,* No. 2:16-cv-05932 (WB) (E.D. Pa. Mar. 20,
  2017) .................................................................................................................. 12

*Wang v. Athira Pharma, Inc.*,
  2021 WL 4726458 (W.D. Wash. Oct. 5, 2021) .................................................. 7

**Statutes, Rules & Regulations**

15 U.S.C. § 77l(a)(2)............................................................................................... 5

15 U.S.C. § 77z-1(a)(3)(B) ........................................................................................................ 1

15 U.S.C. § 77z-1(a)(3)(B)(iii) ................................................................................................ 10

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc) ..................................................................................... 7, 8

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) ........................................................................................... 10

15 U.S.C. § 77z-1-4(a)(3)(A)(i) .................................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(A)(i) ..................................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B) ......................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(i) ..................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii) ......................................................................................... 7, 8, 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) ........................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ........................................................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ..................................................................................... 7, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..................................................................................... 11

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................. 11

Fed. R. Civ. P. 23 ........................................................................................................... 1, 7, 8, 9

Fed. R. Civ. P. 42(a) .................................................................................................................... 6

Efrat Investments LLC ("Efrat") and Gerard Smith ("Smith" and, with Efrat, the "HUB Investor Group") respectfully submit this memorandum of law in support of their motion: (i) consolidating the above-captioned actions; (ii) appointing (a) Efrat as lead plaintiff pursuant to Section 27 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), on behalf of Hub Cyber Security (Israel) Ltd. ("Legacy HUB") holders who acquired the Hub Cyber Security Ltd. ("HUB" or the "Company") common stock through Legacy HUB's merger (the "Merger") with Mount Rainier Acquisition Corp. ("Mount Rainier"), a special purpose acquisition vehicle ("SPAC"); (b) Smith as lead plaintiff pursuant to Section 27 of the Securities Act of 1933, 15 U.S.C. § 77z-1(a)(3)(B), on behalf of Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the Offering Documents (as defined below), and; (c) Smith as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), on behalf of persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed HUB securities between March 23, 2022 and June 13, 2023, both dates inclusive (the "Class Period"); and (iii) approving the HUB Investor Group's selection of the law firm of Abraham, Fruchter & Twersky, LLP ("AF&T") to serve as Lead Counsel for the class.

## I.    PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B). In that regard, the Court is required to determine which movant has the "largest financial interest in the relief sought by the class" who also makes a *prima facie* showing of being a typical and adequate class representative under Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

The HUB Investor Group makes this Motion seeking appointment as Lead Plaintiff based upon its belief that it has the largest financial interest in the relief sought by the Class and it is otherwise a typical and adequate representative of the Class.  Each member of the HUB Investor Group has: a real financial interest in this litigation, the ability to supervise and monitor counsel, fully understands their obligations to the class under the PSLRA, and is willing and able to undertake those responsibilities to ensure the vigorous and efficient prosecution of this action.

The HUB Investor Group has also demonstrated its adequacy through its selection and retention of AF&T, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class.  Therefore, as discussed in greater detail below, the HUB Investor Group respectfully requests that this Court appoint it as Lead Plaintiff and approve of its selection of counsel.

## II.     SUMMARY OF RELEVANT FACTS

Legacy HUB was founded in 2017 by veterans of elite units of the Israeli Defense Forces and described itself as having "developed unique technology and products in the field of Confidential Computing, and it intends to be a significant player providing effective cybersecurity solutions for a broad range of government entities, enterprises and organizations." Efrat ¶9.[1] Its securities traded on the Tel Aviv Stock Exchange (the "TASE").  *Id.*

On March 23, 2022, Legacy HUB and Mount Rainier disclosed "a definitive business combination agreement[,]" stating that Legacy HUB's "management team will continue to lead the Combined Company[,]" and further disclosing, in addition to the receipt of funds held in Mount

---

[1]     Citations to "Efrat ¶__" and "Green ¶__" mean and refer to allegations of the complaints filed in the above-captioned actions.  The *Efrat* and *Green* Complaints are attached to the Declaration of Michael J. Klein (the "Klein Decl.") as Exhibits 1 and 2, respectively. The HUB Investor Group is concurrently moving to serve as lead plaintiff in the *Efrat* Action and the *Green* Action.

Ranier's SPAC trust, "approximately $50 million attributed to [a] private investment in public equity ("PIPE")] investment anchored by Israeli and American institutional and existing investors[.]"  Efrat ¶10.  On April 5, 2022, Legacy HUB filed a prospectus pursuant to the Securities Act describing those PIPE commitments as "irrevocable" and "at a valuation of $1.28 billion."  Efrat ¶11.

After formal requests to the Israeli courts, Legacy HUB called a meeting so its stockholders could vote on a "same day" delisting from the TASE and the start of trading on the NASDAQ.  Efat ¶¶12-14.  On October 6, 2022, Legacy HUB solicited stockholders' approval of the Merger, mailing a prospectus (the "Prospectus") stating that the PIPE investors made an absolute and irrevocable commitment to invest in the company at a value of $10 per share that equals the minimum funding required to close the Merger.  ¶15.  On October 27, 2022, based upon those representations, Legacy HUB's stockholders approved the Merger.  Efrat ¶16.

On August 24, Legacy HUB filed a registration statement on Form F-4 in connection with the Merger.  Green ¶54.  That registration was declared effective on December 8, 2022.  *Id.* The next day, Legacy HUB filed a proxy statement/prospectus (the "Mount Rainier Investor Prospectus" and, together with the Registration Statement, the "Offering Documents"), explaining certain generic risk factors facing the Company and disclosing a material weakness in internal controls, while downplaying the scope and severity of the Company's issues.  Green ¶¶8, 59-62. The Mount Rainier Investor Prospectus repeated that the PIPE was fully committed and that Legacy HUB's management was expected to remain in place after the Merger.  Green ¶¶63-64.

On January 4, 2023, Mount Rainier disclosed its stockholders' approval of the Merger, which was expected to close in late January.  Green ¶66.  On January 26, 2023, Legacy HUB issued a press release disclosing that it expected to close the Merger on February 27, 2023, and for

the Company to begin trading on the Nasdaq on February 28, 2023.  Green ¶11.  That news caused Mount Rainier's share price to fall by 4.75%.  Green ¶¶67-68.

On February 2, 2023, Legacy HUB CEO Eyal Moshe ("Moshe") and Vice President of Human Resources Ayelet Bitan resigned their positions effective immediately.  Efat ¶¶17-18.  The same day, one PIPE investor purportedly substituted for another in the amount of $10 million.  Efrat ¶¶19-20.  That news caused Mount Rainier's share price to fall again.  Green ¶¶67-68, 72.

On February 28, the Merger was consummated and Mount Rainier's stock closed at $4.99 per share.  *Id.*  ¶73.  On March 1, the Company's common stock closed at $1.59 per share.  *Id.* ¶73.

On March 1, 2023, after trading hours, the Company disclosed that the Merger closed but in lieu of the PIPE Financing consummating at closing of the Business Combination, the Company waived the minimum cash condition required by the merger documents.  Efrat ¶21.  As a result, the Company's stock price fell 21.38%, to close at $1.25 per share on March 2, 2023.  Green ¶76.

On March 14, 2023, the Company disclosed that $4 million of the PIPE closed.  Efrat ¶22; Green ¶77.  On March 15, the Company disclosed that another investor reaffirmed its commitment to invest $20 million in the PIPE but did not disclose any receipt of funds.  Efrat ¶23.

On April 20, 2023, the Company disclosed that a special committee of its board of directors (the "Board") was investigating allegations of misappropriation and potential fraud against former senior officers.  Efrat ¶24.  That investigation made the Company unable to file its annual report for 2022 and jeopardized its compliance with Nasdaq rules.  Efrat ¶¶25-27.  As a result of the foregoing, the Company's stock price fell to $1.16 per share.  Green ¶80.

On May 15, 2023, the Company issued a press release disclosing that its Form 20-F would be delayed as a result of its internal investigation.  *Id.* ¶81.  On May 2, 2023, the company disclosed that it had received a notice from Nasdaq indicating that it was not in compliance with Nasdaq

- 4 -

listing rules, causing its stock price to fall to $0.61 per share.  *Id.* ¶¶82-83.  The Company then received a notice from Nasdaq stating that if the closing price of its stock remained below $1.00, it would be subject to delisting, causing its stock price to fall to $0.55 per share.  *Id.* ¶85.

## III.    PROCEDURAL HISTORY

On July 6, 2023, the above-captioned *Efrat* Action (the "*Efrat* Action") was filed on behalf of all Legacy HUB holders who acquired HUB common stock through the Merger.  ECF No. 1. The *Efrat* Action asserts one claim for violation of 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2).

On July 6, 2023, Efrat, through counsel, caused a notice of pendency of the *Efrat* Action to be disseminated through GlobeNewswire, alerting members of the putative class in the *Efrat* Action of the lead plaintiff deadline.  *Efrat* Action ECF No. 8.  On July 25, 2023, counsel for the Company accepted service and the parties to the *Efrat* Action stipulated to delay the deadline to answer or otherwise respond to the Efrat Complaint until lead plaintiff and lead counsel were appointed.  *Efrat* Action ECF No. 10.  The Court so-ordered that stipulation on August 3, 2023. *Efrat* Action ECF No. 11.

On July 31, 2023, the related above-captioned *Green* Action (the "*Green* Action") was filed against the Company and several of its officers and directors, alleging five separate claims, one of which overlapped with the *Efrat* Action.  The *Green* Action pleads claims "on behalf of a class consisting of all: (a) Legacy HUB stockholders who acquired the Company's common stock through [the Merger]; (b) Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the [Offering Documents] issued in connection with the Merger; and/or (c) persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed

HUB securities between March 23, 2022 and June 13, 2023[.]" Klein Decl. Ex. 2, ¶1.[2]  The claims described in (a) and (b) are brought pursuant to the Securities action, and the claims described in (c) are brought pursuant to the Exchange Act.

After correspondence, on August 9, 2023, the Court ordered Plaintiff Green to republish a PSLRA notice.  *Efrat* Action ECF No. 15.  The Court then ordered a lead plaintiff motion briefing schedule with opening motions due on October 16, 2023.  *Efrat* ECF No. 17.

## IV.   ARGUMENT

### A.   Consolidation Is Discretionary and the Exchange Act and Securities Act Claims Should be Kept Separate

The cases before this Court share "a common question of law or fact" and may be consolidated pursuant to Federal Rule of Civil Procedure 42(a).  However, consolidation is discretionary, and should only be utilized when no confusion, prejudice, or delay will result. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990).

Because the HUB Investor Group has standing to pursue all claims before the Court and believes it has the largest losses (as discussed next), it believes that consolidation is appropriate, subject to a review of other lead plaintiff movants, and the Court ensuring that no confusion, prejudice, or delay will result from consolidation.  The HUB Investor Group believes, however, that consolidation under the stewardship of lead plaintiff movants without standing to bring all claims asserted might cause confusion, prejudice, or delay, and will address their contentions further in opposition to other lead plaintiff movants as may be relevant.  *See e.g.*, *Wang v. Athira Pharma, Inc.*, 2021 WL 4726458, at *3 (W.D. Wash. Oct. 5, 2021) (courts regularly separate Securities Act claims and Exchange Act where, for example, a "movant with the indisputably

---

[2]   The two other claims are control person claims brought pursuant to the Securities Act and Exchange Act, each of which relies upon having a well-pled underlying claim.

greatest Section 10(b) losses faced a tangible risk of being unable to prove scienter as an element of his Exchange Act claims and had "no losses traceable to the IPO and Registration Statement[.]"); *Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24, 2019) (appointing a lead plaintiff with standing to Exchange Act claims to "best serve[s] the class" by adding the "ab[ility] to assert claims under the Securities Act").

### B.     The HUB Investor Group Should Be Appointed as Lead Plaintiff

The PSLRA provides a method for determining the "most adequate plaintiff" to serve as Lead Plaintiff in a securities fraud class action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii). *First*, the plaintiff must file a complaint or make a timely motion to be appointed lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa). *Second*, the proposed lead plaintiff needs to have "the largest financial interest in the relief being sought by the [C]lass." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). *Third*, the proposed lead plaintiff needs to "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc). The HUB Investor Group believes it is the "most adequate plaintiff" because it satisfies all three elements. Accordingly, the HUB Investor Group should be appointed as Lead Plaintiff.

#### 1.     The HUB Investor Group Timely Moved for Appointment as Lead Plaintiff

Under the PSLRA, any class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); 15 U.S.C. § 77z-1(a)(3)(A)(i). The HUB Investor Group satisfies this requirement through the filing of this Motion on the Court-ordered deadline and Efrat further satisfies the deadline through the filing of its complaint. *See* Section III, *supra*.

**2.**   **The HUB Investor Group Has the Largest Financial Interest in the Relief Sought**

The HUB Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in this litigation as a result of having suffered losses from its purchases of Legacy Hub, Mount Rainier, and Company common stock during the Class Period.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  *See* Klein Decl. Exs. 5-6 (certifications), 7-8 (loss charts).  More specifically, Efrat exchanged 66,256 shares of Legacy HUB stock and Smith exchanged 8,855 shares of Mount Rainier stock at the time of the Merger, which are themselves direct proxies for total attributable losses because the Securities Act provides for statutory damages.  *See Marquez v. Bright Health Grp., Inc.*, No. 22CV101AMDRLM, 2022 WL 1314812, at *6 (E.D.N.Y. Apr. 26, 2022).  In addition, Smith lost $155,002.29 in connection with purchases of Mount Rainier and U.S.-listed HUB securities between March 23, 2022 and June 13, 2023.  *See* Klein Decl. Ex. 8.

To the best of the HUB Investor Group's knowledge, there is no other applicant seeking Lead Plaintiff appointment and having a larger financial interest in the litigation, either individually or as an appropriate group.  Accordingly, the HUB Investor Group has the largest financial interest among those seeking appointment as Lead Plaintiff and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

**3.**   **The HUB Investor Group Satisfies the Requirements of Rule 23**

A lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C.  §  78u-4(a)(3)(B)(iii)(I)(cc);  15 U.S.C.  §  77z-1(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous the joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23.'"  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted).  Here, the HUB Investor Group satisfies the typicality and adequacy requirements of Rule 23, justifying its appointment as Lead Plaintiff.

The HUB Investor Group's claims are typical of the claims of other purchasers of Legacy HUB, Company, and Mount Rainier securities.  The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *McKenzie*, 268 F.R.D. at 173-74 (citation omitted).  Here, the claims of the HUB Investor Group are typical because, like all members of the putative class, they purchased Legacy HUB, Company, or Mount Rainier securities during the Class Period at prices artificially inflated by Defendants' violations of federal securities laws and suffered damages when the truth was revealed.  The HUB Investor Group's claims not only arise from the same course of events as all Class members and require the same legal arguments in order to prove defendants' liability, their claims span all claims alleged.  As such, the HUB Investor Group satisfies the typicality requirement.

The HUB Investor Group similarly satisfies the adequacy requirement of Rule 23 to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class[.]"  *McKenzie*, 268 F.R.D. at 174 (citation omitted).  The HUB Investor Group satisfies these elements because its substantial financial stake

in the outcome of this litigation provides the incentive to vigorously represent the claims of the Class, and it does not have interests that are antagonistic to the Class.

The HUB Investor Group thus satisfies the requirements of the PSLRA and is presumptively the most adequate plaintiff.  This presumption has not been, and cannot be, rebutted by proof that the HUB Investor Group "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). Therefore, for the reasons stated above, the Court should appoint the HUB Investor Group as Lead Plaintiff.

### 4.    The HUB Investor Group is an Appropriate "Group of Persons" Under the PSLRA

The HUB Investor Group comprise an appropriate "group of persons" to be appointed Lead Plaintiff under the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(iii) (establishing criteria to identify the "person or group of persons" presumed to be the "most adequate plaintiff"); 15 U.S.C. § 77z-1(a)(3)(B)(iii) (similar).  Courts in the Second Circuit have often selected groups as Lead Plaintiffs. *See, e.g.*, *Baron v. Talkspace, Inc.*, 2022 WL 1912255 (S.D.N.Y. June 3, 2022); *Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021); *Perez v. HEXO Corp.*, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020).

Appointing the HUB Investor Group as Lead Plaintiff will enable manageability and prevent the risk of the litigation being disrupted at a later point.  It has only two members, making it discrete enough to allow for coordination of the management of the case, while also diverse enough to prevent the Class from being exposed to disruption later in the litigation and providing standing for each claim asserted in the *Green* Action.  *See Peters v. Jinkosolar Holding Co., Ltd.*, 2012 WL 946875, at *7 (S.D.N.Y. Mar. 19, 2012) ("[C]ourts appear to generally agree that a group

comprising five or fewer members is appropriate."). Moreover, electing a group of persons as Lead Plaintiff will provide the Class with the benefits of joint decision-making and will enable plaintiffs to have more control over counsel. *See In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 570 (S.D.N.Y. 2015) (appointing two-member group as lead plaintiff and explaining the benefits of a small group).

Further, the members of the HUB Investor Group have discussed their respective roles in this litigation, should they be appointed Lead Plaintiff, with one another and with counsel. Specifically, they are well aware of the responsibilities of a lead plaintiff, and have discussed the preparation and filing of this motion, as well as protocols for managing the litigation and resolving disputes between them. Klein Decl. Ex. 9.

Thus, the HUB Investor Group is an appropriate Lead Plaintiff group. In fact, there is nothing to suggest that the HUB Investor Group (or their counsel, as discussed next) will not fairly and adequately represent the Class or that the HUB Investor Group or that its members are subject to unique defenses. This Court should appoint the HUB Investor Group as Lead Plaintiff.

C.       **The HUB Investor Group's Selection of Counsel Should Be Approved**

The PSLRA expressly provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb a proposed lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The HUB Investor Group has selected and retained AF&T to serve as Lead Counsel. AF&T has the commitment and ability to accomplish the required tasks because it has extensive experience and is highly competent in prosecuting similar actions. *See, e.g., In re SunEdison, Inc. Sec. Litig.*, No. 16-md-02742-PKC, ECF No. 103 (S.D.N.Y. Dec. 22, 2016) (appointing AF&T lead counsel); *accord, e.g., Godinez v. Alere Inc.*, et al., No. 1:16-cv-10766 (PBS), ECF No. 152 (D. Mass. Dec.

- 11 -

22, 2017) (appointing AF&T co-lead counsel); *Utesch v. Lannett Company Inc., et al.,* No. 2:16-cv-05932 (WB), ECF No. 53 (E.D. Pa. Mar. 20, 2017) (appointing AF&T lead counsel); *Silverstrand Investments v. AMAG Pharmaceuticals et al.,* No. 1:10-cv-10470 (NMG), ECF No. 24 (D. Mass Jul. 27, 2010) (same).  The firm resume of AF&T, the proposed Lead Counsel, is submitted for the Court's convenience.  *See* Klein Decl., Ex. 8. The Court should appoint lead plaintiff's choice of counsel by appointing AF&T as lead counsel.

## V.    CONCLUSION

For the reasons set forth herein, the HUB Investor Group respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) approve its selection of the law firm of Abraham, Fruchter & Twersky, LLP to serve as Lead Counsel for the class; and (iii) grant such further relief as the Court may deem just and proper.

DATED:  October 16, 2023

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**

*s/ Michael J. Klein*

Jack G. Fruchter
Michael J. Klein
450 Seventh Avenue, 38th Floor
New York, NY 10123
Tel:  (212) 279-5050
Fax: (212) 279-3655
jfruchter@aftlaw.com
mklein@aftlaw.com

*Attorneys for the HUB Investor Group*