# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EFRAT INVESTMENTS LLC, Individually and on Behalf of all Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>HUB CYBER SECURITY LTD., )<br><br>Defendant. ) | Case No. 1:23-cv-5764<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Efrat Investments LLC ("Plaintiff"), on behalf of all other similarly situated persons (defined below as the "Class"), by its undersigned attorneys, alleges the following based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings of Hub Cyber Security Ltd. ("HUB" or the "Company") and other publicly available reports and information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action asserting claims arising under the Securities Act of 1933 (the "Securities Act") with respect to Defendant's offering and soliciting shareholders of Hub Cyber Security (Israel) Ltd. ("Legacy HUB") to exchange their investments in Legacy HUB for the Company's common stock ("Common Stock") in connection with the Legacy HUB's merger (the "Merger") with Mount Rainier Acquisition Corp. ("Mount Rainier").

2. Leading up to the Merger, Legacy HUB incorrectly represented that:

(a) private investment in public equity ("PIPE") financing at the time of the merger was committed; and,

(b)    the combined company would be led by HUB's current management team, including Founder and Chief Executive Officer, Eyal Moshe ("Moshe").

## JURISDICTION AND VENUE

3.    The claims alleged herein arise under the laws of the United States, specifically §§12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§77l(a)(2) and 77o, providing this Court with original subject matter jurisdiction pursuant to 15 U.S.C. §77v(a) and 28 U.S.C. §1331.  In addition, the Company's bylaws designate the federal district courts of the United States as the exclusive forum for causes of action arising under the Securities Act.

4.    Personal jurisdiction exists over Defendant either because the Defendant conducts business in or maintains operations in this District, or is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

5.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the Nasdaq, headquartered in this District, as a result of the Merger.

## PARTIES

6.    Plaintiff acquired Common Stock in the Merger in exchange for Ordinary Shares of Legacy HUB that it previously owned.

7.    Defendant HUB was formed on February 28, 2023, by the Merger of Mount Rainier and Legacy HUB.

## RELEVANT NON-PARTIES

8.    Mount Rainier was a special purpose acquisition company ("SPAC") listed on the NASDAQ and was formed to merge with another company.

**SUBSTANTIVE ALLEGATIONS**

9.      Legacy HUB was founded in 2017 by veterans of the elite Unit 8200 and Unit 81 of the Israeli Defense Forces and described itself as having "developed unique technology and products in the field of Confidential Computing, and it intends to be a significant player providing effective cybersecurity solutions for a broad range of government entities, enterprises and organizations."  Before the Merger, Legacy HUB's ordinary shares and existing warrants traded on the Tel Aviv Stock Exchange ("TASE").

10.      On March 23, 2022, Legacy HUB and Mount Rainier issued a joint press release stating "that they have entered into a definitive business combination agreement."  The press release further stated that Legacy "HUB's Founder and Chief Executive Officer, Eyal Moshe, and the current management team will continue to lead the Combined Company" and that "Cash proceeds from the proposed transaction are expected to consist of up to approximately $176 million of cash held in RNER's trust (before any redemptions by RNER's public stockholders and the payment of certain expenses) and approximately $50 million attributed to the PIPE investment anchored by Israeli and American institutional and existing investors. Proceeds from the PIPE are expected to satisfy the minimum cash closing condition and will be used as working capital to support continued growth and to fund acquisitions."

11.      On April 5, 2022, Legacy HUB filed an investor presentation transcript with the SEC pursuant to Rule 425 under the Securities Act of 1933.  That transcript largely quoted Eyal Moshe, who stated, among other things, that "Investors have made irrevocable commitments to invest approximately $50 million in a PIPE financing at a valuation of $1.28 billion."  The presentation given during that meeting also stated, in part, that "[i]nstitutional investors have made irrevocable commitments to invest approximately $50 million in a PIPE financing at a valuation of $1.28 billion" and that "[t]his $50 million PIPE investment is the minimum investment amount

3

required to close the merger transaction (even if all of the $173 million of SPAC funds are redeemed by SPAC investors)."

12. On July 5, 2022, Legacy HUB submitted a formal request to the Israeli District Court to allow the Company shareholders to decide on 'same-day' delisting from the Tel-Aviv Stock Exchange (the "TASE") and start of its expected trading on NASDAQ.

13. On August 9, 2022, the Company disclosed that it had received formal approval from the Israeli District Court to summon a shareholders' meeting for the approval of the upcoming SPAC meeting and listing terms on the Nasdaq.

14. On August 25, 2022, Legacy HUB made a submission to the Israeli Securities Authority stating, in part, that the completion of the Merger and the start of trading on the Nasdaq was subject to several conditions precedent, including the approval of the Company's shareholders to carry out the Merger.

15. On or about October 6, 2022, Legacy HUB solicited its stockholders' approval of the Merger through a mailing (the "Prospectus"), with that solicitation stating that the PIPE investors made an absolute and irrevocable commitment to invest in the company at a value of $10 per share as part of a private placement, and that the PIPE is equal to the minimum amount required to close the Merger.

16. On October 27, 2022, at a Legacy HUB extraordinary general meeting, Legacy HUB's shareholders and optionholders voted to approve the Merger.

**THE TRUTH IS REVEALED**

17. On February 2, 2023, the Board of Directors of Legacy HUB accepted the resignation of Eyal Moshe as the Company's Chief Executive Officer, effective immediately, and appointed him as President of the Company's U.S. operations.

4

18.     Also on February 2, 2023, Ayelet Bitan, the Company's Vice President of Human Resources, resigned from her position as an officer of the Company, effective immediately.

19.     Further, on February 2, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part that "HUB Cyber Security updates on February 2nd 2023, that it has received an irrevocable commitment by A-Labs Advisory & Finance Ltd. to substitute a current HUB PIPE investor, Clover Wolf Fund, in the sum US$ 10 million on the same terms."

20.     On February 28, 2023, Legacy Hub shares closed at $4.99 per share.

21.     On March 1, 2023, after markets closed, the Company filed a Form 6-K with the SEC stating, in relevant part:

*PIPE Financing*

Concurrently with the execution of the Business Combination Agreement, the Company and certain qualified institutional buyers and accredited investors (the "PIPE Investors") entered into a series of subscription agreements ("Subscription Agreements"), providing for the purchase by the PIPE Investors at the Effective Time of an aggregate of 5,000,000 Company Ordinary Shares at a price per share of $10.00 for gross proceeds to the Company of $50,000,000 (collectively, the "PIPE Financing"). The PIPE Financing did not consummate at closing of the Business Combination.

The Business Combination Agreement provides that the consummation of the Business Combination is conditioned upon, among other things, the satisfaction or waive[r] by the Company of a requirement that the combined company have an aggregate cash amount of at least $50,000,000 (the "Minimum Cash Condition") available on the Closing Date from RNER's trust account (after giving effect to all of the RNER stockholder redemptions) and the PIPE Investors. As a result of the redemptions from RNER's trust account and the failure of the PIPE Financing to be consummated, the Company waived the Minimum Cash Condition in order to proceed to close the Business Combination.

22.     On March 14, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part:

Tel Aviv, Israel, March 14, 2023 /NewsDirect/ --HUB Cyber Security Ltd (Nasdaq: HUBC), a developer of Confidential Computing cybersecurity solutions and services ("HUB" or the "Company"), today announced that it had issued and sold

5

approximately 400,000 shares to two of the original PIPE investors at a price per share of $10 for proceeds of approximately $4 million dollars, in a private placement. The shares were sold pursuant to the original PIPE terms entered into in connection with the Company's business combination . The remaining PIPE funds are currently being negotiated with investors and the Company remains in discussions with the investors to receive those funds.

23.     On March 15, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part:

> **TEL AVIV, Israel – March. 15th, 2023 –** <u>HUB Cyber Security Ltd</u> (Nasdaq:HUBC), a developer of Confidential Computing cybersecurity solutions and services ("**HUB**" or the "**Company**"), announced today that the Israeli investment bank, A-Labs Advisory & Finance Ltd. ("**ALabs**"), has reaffirmed its irrevocable commitment to invest $20 million in HUB as an equity PIPE investment at $10 per share, previously made in connection with the Company's business combination….

24.     On April 20, 2023, the Company filed a Form 6-K with the SEC stating in relevant part that:

> On April 19th, 2023, [the] board of directors (the "Board") of HUB Cyber Security Ltd (the "Company") appointed a special committee of independent directors (the "Special Committee") in order to investigate and asses certain allegations of potential misappropriation and other potential fraudulent actions raised against a former senior officer of the Company. The Board, as part of its review, is seeking to ensure that the Company is adhering to the highest standards of conduct.
>
> The allegations were raised during on-going reviews by the new management of the Company, and within this framework the new management of the Company discovered certain unexplained expenses, Based on preliminary findings, the amount of the examined expenses is estimated at approximately NIS 2.5 million
>
> The Special Committee includes three (3) independent directors, and will be headed by, Mr. Ilan Flato, chair of the Company's audit committee.
>
> The Special Committee's review is ongoing, and it is working diligently with outside advisers to complete its investigation as soon as possible. The Company is committed to working with the Special Committee to complete its work in order to assess the validity of these allegations and provide transparency to its shareholders as soon as feasible.

25.     On May 15, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part that:

6

**Tel Aviv, Israel, – May 15, 2023** – HUB Security (Nasdaq: HUBC), a developer of Confidential Computing cybersecurity solutions and services ("HUB Security" or the "Company"), today announced that due to the previously disclosed internal investigation by a special committee of independent directors (the "Special Committee") that was appointed by the Company's Board of Directors, the Company requires additional time to complete the process and file its Annual Report on Form 20-F for the fiscal year ended December 31, 2022.

"Since being appointed CEO in February of this year, I have been focused on creating a disciplined management team and organization accountable to results as well as transparency to investors." said Uzi Moskovich, Chief Executive Officer of HUB Security. "As part of the internal investigation that began in April, we continue to review all Company controls and are committed to properly and thoroughly completing the investigation in a thoughtful and comprehensive manner." Moskovich continued. "At the same time, we are focused on maximizing our market opportunity and, following the completion of the Committee's important work, look forward to updating the investment community on the significant strides we have made to maintain the momentum of our business as "One HUB", and its impact on traction for our Confidential Computing and cyber security solutions with our clients."

The internal investigation was commenced as a result of certain matters that were identified by the new management team during an overview of the Company's financial statements in which a number of unexplained expenses incurred by a former senior officer of the Company were discovered. The Special Committee is resolved to completing a meticulous and comprehensive process, with the highest level of transparency. Based on preliminary findings from the Special Committee, the Company believes that the investigation will not have a material impact on its financial statements

The Special Committee, with the assistance of independent advisors, is working to complete its investigation and advise on potential remediation measures as soon as practicable. The new senior management team is actively collaborating with the Special Committee to ensure a rigorous process and is determined to fully support the Special Committee in this endeavor. The Company intends to file its Form 20-F as soon as practicable.

26.     On May 22, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part that:

TEL AVIV, Israel, May 22, 2023 - HUB Cyber Security Ltd (NASDAQ: HUBC), a developer of Confidential Computing cybersecurity solutions and services ("HUB Security" or the "Company"), today announced, as expected, that it has received a notice (the "Notice") from The Nasdaq Stock Market LLC ("Nasdaq") indicating that, as a result of not having timely filed its Annual Report on Form 20-F for the fiscal year ended December 31, 2022 (the "Annual Report") with the Securities and Exchange Commission ("SEC"), the Company is not in compliance with Nasdaq

7

Listing Rule 5250(c)(1), which requires timely filing of all required periodic financial reports with the SEC . The Notice has no immediate effect on the listing or trading of the Company's securities, which will continue to trade on Nasdaq, subject to the Company's compliance with the other continued listing requirements of Nasdaq.

As previously disclosed, a special committee of independent directors of the Company's Board of Directors ("Special Committee") is working to complete its investigation into unexplained expenses incurred by a former senior officer of the Company and, as such, the Company requires additional time to file the Annual Report.

The Special Committee is resolved to completing a meticulous and comprehensive process, with the highest level of transparency. Based on preliminary findings from the Special Committee, the Company believes that the investigation will not have a material impact on its financial statements. The Company's management and the Audit Committee are also reviewing the effectiveness of the Company's controls over its disclosure and internal accounting and financial reporting for the year ended December 31, 2022.

Under the Nasdaq Listing Rules, the Company has 60 calendar days until July 18, 2023 to submit a plan to regain compliance and if Nasdaq accepts the Company's plan, then Nasdaq may grant an exception of up to 180 calendar days from the prescribed due date of the Annual Report, or until November 13, 2023, to regain compliance. However, there can be no assurance that Nasdaq will accept the Company's plan to regain compliance or that the Company will be able to regain compliance within any extension period granted by Nasdaq. If the Company fails to timely regain compliance with the Nasdaq Listing Rules, the securities of the Company will be subject to delisting from Nasdaq.

27. On June 13, 2023, the Company filed a Form 6-K with the SEC attaching a press release stating in relevant part that:

TEL AVIV, Israel, June 13, 2023 – HUB Security Ltd (Nasdaq: HUBC), a developer of Confidential Computing cybersecurity solutions and services ("HUB Security" or the "Company"), received a notification on June 9, 2023 from The Nasdaq Stock Market ("Nasdaq") notifying the Company that it is no longer in compliance with Nasdaq Listing Rule 5450(a)(1), because for the past 30 consecutive business days preceding the date of the notification ("Notice"), the bid price per share of the Company's ordinary shares, no par value ("Ordinary Shares") had closed below the $1.00 per share minimum bid price required for continued listing on Nasdaq (the "Minimum Bid Price Requirement").

The Notice has no immediate effect on the listing of the Company's Ordinary Shares, and the Company's Ordinary Shares continue to trade on Nasdaq under the symbol "HUBC".

Pursuant to Nasdaq Listing Rule 5810(c)(3)(A), the Company has been provided with an initial 180-calendar day period, ending on December 6, 2023, (the "Initial Compliance Period") to regain compliance with the Minimum Bid Price Requirement. If at any time during the Initial Compliance Period, the closing bid price per share of the Ordinary Shares is at least U$$1.00 for a minimum of 10 consecutive business days, it is expected that Nasdaq will provide the Company a written confirmation of compliance and the matter will be closed.

If the Company does not regain compliance within the Initial Compliance Period, it may be eligible for an additional 180- calendar day compliance period, pursuant to Nasdaq Listing Rule 5810(c)(3)(A)(ii), provided that it meets the applicable market value of publicly held shares requirement for continued listing and all applicable standards for initial listing on the Nasdaq Capital Market (except the Minimum Bid Price Requirement) and notifies Nasdaq of its intent to cure this deficiency during this second compliance period. If the Company has not regained compliance within the period(s) granted by Nasdaq, including any extensions, the Ordinary Shares will be subject to delisting, pending an appeal to the Nasdaq Hearing Panel.

The Company's business operations are not affected by the receipt of the Notification Letter. The Company intends to monitor the closing bid price of its Ordinary Shares and will consider its options in order to regain compliance with the Minimum Bid Price Requirement.

28.     On July 5, 2023, the price of Common Stock closed at $0.3918 per share.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of a class (the "Class") consisting of all Legacy HUB stockholders who acquired HUB stock through the Merger.  Defendant, the officers, directors and affiliates of the Defendant, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendant has or had a controlling interest are excluded from the Class.

30.     The members of the Class are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of members in the proposed Class.  Class members may be identified from records maintained by HUB, its subsidiaries, or their transfer

agents, and such persons may be notified of the pendency of this action by mail, using form of notice customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of the Securities Act complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendant violated the Securities Act;

(b)     whether Defendant offered or solicited the sale of HUB stock to Legacy HUB's shareholders;

(c)     whether Defendant's statements misrepresented or omitted to state material facts in connection with offering or soliciting the purchase of HUB stock by Plaintiff and other Class members; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION

### For Violation of Section 12(a)(2) of the Securities Act Against HUB

35.     Plaintiff repeats and realleges ¶¶1-35 by reference.

36.     This cause of action is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class, against HUB.

37.     This Cause of Action does not sound in fraud.  Plaintiff does not allege that Defendant had scienter or fraudulent intent, which are not elements of a §12(a)(2) claim.

38.     Section 12(a)(2) of the Securities Act states that "[a]ny person who offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraphs (2) and (14) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable, subject to subsection (b), to the person purchasing such security from him…."

39.     HUB stock is a security as defined by the Securities Act and is not excepted from Section 12(a)(2).  *See* 15 U.S.C §§77b(1), 77l(a)(2).

40.     Legacy Hub offered the Company's Common Stock by means of the mails, through a prospectus as defined by the Securities Act.  *See* 15 U.S.C §77b(10) (defining a prospectus as a "prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security.").  Neither exception to that definition applies because there is no effective date of a registration statement

11

and no communication identifying where a prospectus may be obtained. The Prospectus and other solicitations relating to the Merger were mailings that included a letter and other information directly from Legacy HUB confirming, if not explicitly offering, the sale of a security within the meaning of 15 U.S.C §77b(3).

41. The Prospectus and other solicitations relating to the Merger omitted to state material facts necessary in order to make its contents, in the light of the circumstances under which they were made, not materially misleading, including the fact that the PIPE was not irrevocable and that the Company had no reasonable basis to believe the minimum cash closing condition would be satisfied.

42. By means of the defective Prospectus, Defendant promoted, solicited, and encouraged Plaintiff and the Class to vote in favor of the Merger and to exchange shares of Legacy HUB for shares of the Company, and thereby offered or sold the Company's Common Stock issue to the Class in connection with the Merger.

43. The Prospectus concealed and failed to disclose material facts, as alleged above. Defendant owed Plaintiff and other members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus and other solicitations relating to the Merger to ensure that such statements were true and that there was no omission to state a material fact required to be stated to make the statements contained therein not materially misleading. Defendant, in the exercise of reasonable care, should have known of the materialization of risks contained in the Prospectus and other solicitations relating to the Merger.

44. Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Prospectus and other solicitations relating to the Merger at the time Plaintiff acquired Company Common Stock.

45.     By reason of the conduct alleged herein, the Company violated §12(a)(2) of the Securities Act.  As a direct and proximate result of such violations, Plaintiff and the other Class members who received Common Stock pursuant to the Prospectus and other solicitations relating to the Merger from Defendant sustained damages in connection with their purchases of Company Common Stock.  Accordingly, Plaintiff and the other members of the Class who hold the Company Common Stock issued for shares in Legacy HUB pursuant to the Merger have the right to rescind and recover the consideration paid for their shares, and hereby tender their Common Stock to the Defendant sued herein or otherwise seek an equivalent measure of damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Plaintiff as class representative under Fed. R. Civ. P. 23;

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding rescission or a rescissory measure of damages;

D.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

13

DATED:  July 6, 2023

    *s/ Michael J. Klein*

Jack G. Fruchter
Michael J. Klein
**ABRAHAM, FRUCHTER &**
    **TWERSKY, LLP**
450 Seventh Avenue, 38th Fl.
New York, New York 10123
Tel:    (212) 279-5050
Fax:    (212) 279-3655
Email: jfruchter@aftlaw.com
         mklein@aftlaw.com

14