**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EFRAT INVESTMENTS LLC, Individually and on Behalf of all Others Similarly Situated, | Case No. 1:23-cv-05764-AS |
| Plaintiff, | |
| v. | |
| HUB CYBER SECURITY LTD., | |
| Defendants. | |
| DUSTIN GREEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-06668-AS |
| Plaintiff, | |
| v. | |
| HUB CYBER SECURITY LTD. f/k/a HUB CYBER SECURITY (ISRAEL) LTD., EYAL MOSHE, HUGO GOLDMAN, UZI MOSCOVICH, ZEEV ZELL, MOSHE RAINES, MANISH AGARWAL, and MOTI FRANKO, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF ARYEH AGAM AND SHIMON AHARON'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

I.  PRELIMINARY STATEMENT ...................................................................................... 1

II.  FACTUAL BACKGROUND ........................................................................................ 2

III.  PROCEDURAL BACKGROUND................................................................................. 5

IV.  ARGUMENT ................................................................................................................ 6

    A.  The Related Actions Should Be Consolidated ........................................................ 6

    B.  Agam and Aharon Should Be Appointed Lead Plaintiff ........................................ 7

        1.  Agam and Aharon Filed a Timely Motion.................................................. 8

        2.  Agam and Aharon Have the Largest Financial Interest.............................. 8

        3.  Agam and Aharon Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure .............................................................................. 9

            a)  Agam and Aharon's Claims Are Typical...................................... 10

            b)  Agam and Aharon Are Adequate Representatives ....................... 10

    C.  The Court Should Approve Lead Plaintiff's Choice of Counsel .......................... 11

V.  CONCLUSION............................................................................................................ 11

i

# TABLE OF AUTHORITIES

CASES

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc.*,
269 F.R.D. 291 (S.D.N.Y. 2010) ....................................................................................... 9, 10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)............................................................................................... 9, 11

*In re eSpeed, Inc. Sec. Litig.*,
232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................................................... 9

*Johnson v. Celotex Corp.*,
899 F.2d 1281 (2d Cir. 1990)................................................................................................... 6

*Kuriakose v. Federal Home Loan Mortg. Co.*,
No. 1:08-cv-7281, 2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008) ...................................... 9, 10

*Pipefitters Local No. 636 Defined Ben Plan v. Bank of America Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ............................................................................................. 6

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................................... 8, 9

STATUTES

15 U.S.C. § 77z-1................................................................................................................ *passim*

15 U.S.C. § 78u-4 .............................................................................................................. *passim*

Aryeh Agam and Shimon Aharon ("Agam and Aharon") respectfully submit this memorandum of law in support of their motion pursuant to the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*, and 15 U.S.C. § 77z-1, *et seq*[1] (the "PSLRA") for an Order: (1) consolidating the above-captioned related actions; (2) appointing Agam and Aharon as Lead Plaintiff under 15 U.S.C. § 78u-4(a)(3)(B) and 15 U.S.C. § 77z-1(a)(3)(B); (3) approving Agam and Aharon's selection of Glancy Prongay & Murray LLP and The Law Offices of Jacob Sabo as Co-Lead Counsel pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v) and 15 U.S.C. § 77z-1(a)(3)(B)(v); and (4) granting such other relief as the Court may deem to be just and proper (the "Motion").

## I.    PRELIMINARY STATEMENT

This is a class action on behalf of a class consisting of all: (a) Hub Cyber Security (Israel) Ltd. ("Legacy HUB") stockholders who acquired the Hub Cyber Security Ltd. ("HUB" or the "Company") shares through Legacy HUB's merger (the "Merger") with Mount Rainier Acquisition Corp. ("Mount Rainier"); (b) Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the Offering Documents issued in connection with the Merger; and/or (c) persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed HUB securities between March 23, 2022 and June 13, 2023, both dates inclusive (the "Class Period").

The PSLRA provides that the Court shall appoint the most adequate plaintiff—*i.e.* the plaintiff most capable of adequately representing the interests of class members—as lead plaintiff. The PSLRA also provides a presumption that the movant with the largest financial

---

[1] These two sections of the PSRLA (15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1) are similar. Section 78u-4 pertains to the Exchange Act claims, and Section 77z-1 pertains to the Securities Act claims.

interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff."

Agam and Aharon believe that they are the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on their financial losses suffered as a result of defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Agam and Aharon satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as their claims are typical of other class members' claims and they are committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Agam and Aharon respectfully submit that they are presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Agam and Aharon's selection of Glancy Prongay & Murray LLP ("GPM") and The Law Offices of Jacob Sabo ("Sabo Law") as co-lead counsel for the class should be approved because GPM has substantial expertise in securities class actions, and the experience and resources to efficiently prosecute this action.

## II.    FACTUAL BACKGROUND[2]

Legacy HUB was founded in 2017 by veterans of the elite Unit 8200 and Unit 81 of the Israeli Defense Forces and described itself as having "developed unique technology and products in the field of Confidential Computing, and it intends to be a significant player providing effective cybersecurity solutions for a broad range of government entities, enterprises and organizations."

On March 23, 2022, Legacy HUB and Mount Rainier issued a joint press release stating "that they have entered into a definitive business combination agreement" and that the

---

[2] This section is adapted from the complaints in the above-captioned actions.

Company's Founder and Chief Executive Officer "and the current management team will continue to lead the Combined Company."

On January 26, 2023, the Company disclosed that it expected its shares and warrants to begin trading on the NASDAQ on February 28, 2023, representing a delay of nearly one month from Mount Rainier's earlier announcement that the Merger would close in late January 2023. On this news, Mount Rainer's stock price fell $0.48, or 4.8%, over two consecutive trading days, to close at $9.63 per share on January 27, 2023.

Then, on March 1, 2023, HUB disclosed that "[t]he PIPE Financing did not consummate at closing of the Business Combination" and that, "[a]s a result of the redemptions from [Mount Rainier]'s trust account and the failure of the PIPE Financing to be consummated, the Company waived the Minimum Cash Condition in order to proceed to close the Business Combination." On this news, HUB's stock price fell $0.34, or 21.38%, to close at $1.25 per share on March 2, 2023.

Then, on April 20, 2023, HUB stated that "[o]n April 19th, 2023, [the Board] of [HUB] appointed a special committee of independent directors . . . in order to investigate and asses [sic] certain allegations of potential misappropriation and other potential fraudulent actions raised against a former senior officer of the Company." The Company further disclosed that "[t]he allegations were raised during on-going reviews by the new management of the Company, and within this framework the new management of the Company discovered certain unexplained expenses . . . estimated at approximately NIS[2] 2.5 million"—*i.e.*, approximately $675,110. On this news, HUB's stock price fell $0.03, or 2.5%, to close at $1.16 per share on April 20, 2023.

On May 15, 2023, HUB issued a press release disclosing that "due to the previously disclosed internal investigation by a special committee of independent directors . . . that was

3

appointed by the [Board], the Company requires additional time to complete the process and file its Annual Report on Form 20-F for the fiscal year ended December 31, 2022."

On May 22, 2023, HUB issued a press release disclosing that HUB received a notice that the Company was non-compliant with applicable NASDAQ listing rules because the Company had failed to "timely file[] its Annual Report on Form 20-F for the fiscal year ended December 31, 2022 . . . with the [SEC.]" The Company also disclosed, inter alia, that "[t]he Company's management and the Audit Committee are also reviewing the effectiveness of the Company's controls over its disclosure and internal accounting and financial reporting for the year ended December 31, 2022"; and that, "[i]f the Company fails to timely regain compliance with the Nasdaq Listing Rules, the securities of the Company will be subject to delisting from Nasdaq." On this news, HUB's stock price fell $0.04, or 6.2%, to close at $0.61 per share on May 22, 2023.

Then, on June 13, 2023, HUB disclosed that it had received another notice of non-compliance with applicable NASDAQ listing rules "because for the past 30 consecutive business days preceding the date of the notification . . . the bid price per share of the Company's ordinary shares, no par value ('Ordinary Shares') had closed below the $1.00 per share minimum bid price required for continued listing on Nasdaq[.]" The Company further disclosed that "[i]f the Company has not regained compliance within the period(s) granted by Nasdaq, including any extensions, the Ordinary Shares will be subject to delisting, pending an appeal to the Nasdaq Hearing Panel." On this news, HUB's stock price fell $0.04, or 6.8%, to close at $0.55 per share on June 14, 2023.

On July 5, 2023, the price of HUB's stock closed at $0.3918 per share.

4

The complaints filed in the above-captioned actions allege that in the Offering Documents and throughout the Class Period the defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies by failing to disclose that: (i) PIPE financing in connection with the Merger was not committed; (ii) HUB would not be led by Legacy HUB's then-current management team, including Defendant Moshe; (iii) the Company had downplayed the full scope and severity of deficiencies in its compliance controls and procedures, including its disclosure controls and procedures and internal controls over financial reporting; (iv) the Company overstated its remediation of, and/or ability to remediate, the foregoing deficiencies; (v) accordingly, the Company had hundreds of thousands of dollars of unexplained expenses incurred, and/or funds misappropriated or otherwise fraudulently obtained, by a senior officer of the Company; (vi) the foregoing increased the risk that the Company would be unable to timely file one or more of its periodic financial reports with the SEC, as required by the NASDAQ's listing rules; (vii) as a result, the Company was also at an increased risk of being delisted from the NASDAQ; (viii) all the foregoing, once revealed, was likely to negatively impact the Company's business, financial results, and reputation; and (ix) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, the class members have suffered significant losses and damages.

## III.    PROCEDURAL BACKGROUND

On July 6, 2023, Plaintiff Efrat Investments LLC commenced a securities class action against HUB captioned *Efrat Investments LLC v. Hub Cyber Security Ltd.*, Case No. 23-cv-

5

05764 (the "*Efrat* Action"). It was brought pursuant to the Securities Act on behalf of Legacy HUB shareholders who acquired HUB shares through the Merger.

On July 31, 2023, Plaintiff Dustin Green filed a related lawsuit, captioned *Green v. Hub Cyber Security Ltd., et al*, Case No. 23-cv-06668 (the "*Green* Action," and with the *Efrat* Action, the "Related Actions"). It is brought pursuant to the Securities Act and Exchange Act on behalf of: (1) Legacy HUB shareholders who acquired the Company's shares through Legacy HUB's merger with Mount Rainier Acquisition Corp.; (2) Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the Offering Documents issued in connection with the Merger; and/or (c) persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed HUB securities between March 23, 2022 and June 13, 2023, inclusive.

## IV.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).

Each of the Related Actions presents similar factual and legal issues, as they involve the same subject matter and present similar same legal issues. Each action alleges violations of the Securities Act, and each is based on the same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Pipefitters Local No. 636 Defined Ben Plan v. Bank of America Corp.*, 275 F.R.D. 187, 192 (S.D.N.Y. 2011) (Consolidation is appropriate "if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

6

### B.    Agam and Aharon Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B); 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"— *i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

As set forth below, Agam and Aharon satisfy all of the PSLRA criteria and have complied with all of the PSLRA's requirements for appointment as lead plaintiff. Agam and Aharon have, to the best of their knowledge, the largest financial interest in this litigation and meet the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure. In addition,

Agam and Aharon are not aware of any unique defenses Defendants could raise against them that would render them inadequate to represent the class. Accordingly, Agam and Aharon respectfully submit that they should be appointed lead plaintiff. *See Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008).

### 1. Agam and Aharon Filed a Timely Motion

Agam and Aharon have made a timely motion in response to a PSLRA notice. On August 16, 2023, notice was published in connection with this action, as directed by the Court. *See* Dkt. No. 16-1. Therefore, Agam and Aharon had until October 16, 2023 to file a motion to be appointed as lead plaintiff. As purchasers of HUB securities during the Class Period and persons that received Hub shares in connection with the Merger, Agam and Aharon are members of the proposed class and have hereby timely filed a motion for appointment as lead plaintiff in compliance with the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in their PSLRA certifications, Agam and Aharon attest that they have reviewed the complaints, and are willing to serve as representatives of the class. *See* Declaration of Gregory B. Linkh ("Linkh Decl.") Ex. A. Accordingly, Agam and Aharon satisfy the first requirement to serve as lead plaintiff for the class.

### 2. Agam and Aharon Have the Largest Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); 15 U.S.C. § 77z-1(a)(3)(B)(iii). At the time of this filing, Agam and Aharon believe that they have the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and are presumed to be the "most adequate plaintiff."

Agam and Aharon purchased HUB securities during the Class Period and received HUB securities in the Merger, and as a result, suffered financial harm of approximately $6,786,912.29. *See* Linkh Decl., Ex. B. To the best of its knowledge, Agam and Aharon are not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Agam and Aharon believe they have the "largest financial interest in the relief sought by the class," and thus satisfies the second PSLRA requirement to be appointed as lead plaintiff for the class. *See Varghese*, 589 F. Supp. 2d at 396.

### 3. Agam and Aharon Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a). In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, "typicality and adequacy of representation are the only provisions [of Rule 23] relevant to the determination." *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Svcs. Group, Inc*. 269 F.R.D. 291, 296 (S.D.N.Y. 2010). At the lead plaintiff stage of the litigation, a movant need only make a preliminary showing that they satisfy Rule 23's typicality and adequacy requirements. *Id*. at 296-97 (*citing In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *Kuriakose v. Federal Home Loan Mortg. Co.*, No. 1:08-cv-7281, 2008 WL 4974839, at *5 (S.D.N.Y. Nov. 24, 2008).

### a)    Agam and Aharon's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Kuriakose*, 2008 WL 4974839, at *4. Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Agam and Aharon's claims are typical of the claims asserted by the proposed members of the class. Like all members of the class, Agam and Aharon allege that Defendants' material misstatements and omissions concerning HUB's business, operations, and financial prospects violated the federal securities laws. Agam and Aharon, like all members of the class, purchased HUB securities in reliance on Defendants' alleged misstatements and omissions and acquired HUB shares in connection with the Merger, and was damaged thereby. Accordingly, Agam and Aharon's interests and claims are "typical" of the interests and claims of the class.

### b)    Agam and Aharon Are Adequate Representatives

"The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *City of Monroe*, 269 F.R.D. at 297.

Agam and Aharon have demonstrated their adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and their financial losses ensure that they have sufficient incentive to provide vigorous advocacy. *See* Linkh Decl., Ex. B. Agam and Aharon are not aware of any conflict between their claims and those asserted on behalf of the class. Agam and Aharon have also submitted a joint declaration herewith, attesting to their adequacy. *See* Linkh Decl., Ex. C. As such, there is no question that

10

Agam and Aharon are adequate to represent the class, and Agam and Aharon should be appointed as lead plaintiff.

### C. The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v); *Cendant*, 264 F.3d at 274. Thus, the Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa). Here, Agam and Aharon have retained GPM and Sabo Law as co-lead counsel to pursue this litigation on their behalf and will retain the firms as the class's co-lead counsel in the event they are appointed lead plaintiff. GPM possess extensive experience in securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, as reflected by the firm's résumé attached to the Linkh Declaration as Exhibit D. Thus, the Court may be assured that, by granting the Motion, the class will receive the highest caliber of legal representation.

## V. CONCLUSION

For the foregoing reasons, Aryeh Agam and Shimon Aharon respectfully request that the Court grant their Motion and enter an Order (1) consolidating the Related Actions; (2) appointing Agam and Aharon as Lead Plaintiff; (3) approving their selection of Glancy Prongay & Murray LLP and The Law Offices of Jacob Sabo as Co-Lead Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

11

Respectfully submitted,

DATED: October 16, 2023

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICE OF JACOB SABO**
Jacob Sabo
22a Mazzeh St.
Tel-Aviv, Israel
Telephone: (++972) 39070770

*Counsel for Aryeh Agam and Shimon Aharon, and*
*Proposed Co-Lead Counsel for the Class*

12

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 16, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 16, 2023, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh