UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EFRAT INVESTMENTS LLC, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HUB CYBER SECURITY LTD.,<br><br>Defendants. | Case No.  1:23-cv-05764-AS [rel. 1:23-cv-06668-AS] |
| DUSTIN GREEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HUB CYBER SECURITY LTD. f/k/a HUB CYBER SECURITY (ISRAEL) LTD., EYAL MOSHE, HUGO GOLDMAN, UZI MOSCOVICH, ZEEV ZELL, MOSHE RAINES, MANISH AGARWAL, and MOTI FRANKO,<br><br>Defendants. | Case No.  1:23-cv-06668-AS [rel. 1:23-cv-05764-AS] |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF REESE TRIPP AND RODRIGUE FODJO FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL

TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................ 2

STATEMENT OF FACTS .............................................................................................. 3

ARGUMENT .............................................................................................................. 10

    I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
        ALL PURPOSES ...................................................................................... 10

    II.    TRIPP AND FODJO SHOULD BE APPOINTED CO-LEAD PLAINTIFFS .... 12

        A.    Tripp and Fodjo Are Willing to Serve as Class Representatives.............. 13

        B.    Tripp and Fodjo Have the "Largest Financial Interest" in the
            Related Actions ................................................................................... 13

        C.    Tripp and Fodjo Otherwise Satisfy the Requirements of Rule 23 ............ 14

        D.    Tripp and Fodjo Will Fairly and Adequately Represent the Interests
            of the Class and Are Not Subject to Unique Defenses ............................ 18

    III.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD
        BE APPROVED ...................................................................................... 18

CONCLUSION............................................................................................................ 20

TABLE OF AUTHORITIES

Page(s)

Cases

*Aude v. Kobe Steel, Ltd.*,
    No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ................................15

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) ........................................................................................17

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) ........................................................................................11

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
    141 F.R.D. 229 (2d Cir. 1992) ...........................................................................................16

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................................11

*Chahal v. Credit Suisse Grp. AG*,
    No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)..........................14

*Dookeran v. Xunlei Ltd.*,
    No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .....................................16

*Efrat Investments LLC v. Hub Cyber Security Ltd.*,
    No. 1:23-cv-05764 .........................................................................................................1, 13

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................16

*Green v. Hub Cyber Security Ltd. et al.*,
    No. 1:23-cv-06668 .....................................................................................................1, 10, 13

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
    No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017).................17, 18

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...........................................................................................14, 17

*In re Comverse Technology, Inc. Securities Litigation*,
    No. 1:06-cv-01825 (E.D.N.Y.) ............................................................................................19

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)................................................................................................15

*In re GE Sec. Litig.*,
  No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................11

*In re Orion Sec. Litig.*,
  No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...................................15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) .....................................................................................15

*In re Petrobras Securities Litigation*,
  No. 14-cv-09662 (S.D.N.Y.)...........................................................................................19

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) ....................................................................................11

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) ....................................................................................16

*Johnson v. Celotex Corp.*,
  899 F.2d 1281 (2d Cir. 1990)..........................................................................................11

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ......................................................................................15

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ....................................................................................19

*Lax v. First Merchants Acceptance Corp.*,
  No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)..............................................14

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) ........................................18

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993)............................................................................................10

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
  No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ....................................................................................14

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)..............................................................................19

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
  No. CIV.A. 13-6731, 2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ...................................18

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ..................................................................................17

**Statutes**

15 U.S.C. § 77z-1................................................................................................... *passim*

15 U.S.C. § 78u-4 .................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 .................................................. *passim*

Securities Act of 1933............................................................................................ *passim*

Securities Exchange Act of 1934............................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... *passim*

Fed. R. Civ. P. 42 ................................................................................................... *passim*

Reese Tripp and Rodrigue Fodjo (together, "Tripp and Fodjo") respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42"), as well as Section 27(a)(3) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77z-1(a)(3), and Section 21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) consolidating the above-captioned related actions ("Related Actions"); (2) appointing Tripp and Fodjo as Co-Lead Plaintiffs on behalf of a class (the "Class") consisting of all (a) Hub Cyber Security (Israel) Ltd. ("Legacy HUB") stockholders who acquired Hub Cyber Security Ltd.'s ("HUB" or the "Company") common stock through Legacy HUB's merger (the "Merger") with Mount Rainier Acquisition Corp. ("Mount Rainier"), (b) Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the Offering Documents (as defined below) issued in connection with the Merger, and/or (c) persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed HUB securities between March 23, 2022 and June 13, 2023, both dates inclusive (the "Class Period"); and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

---

[1] On July 6, 2023, the first-filed of the Related Actions was filed in this Court against HUB, styled *Efrat Investments LLC v. Hub Cyber Security Ltd.*, No. 1:23-cv-05764 ("*Efrat*"), on behalf of a class including all Legacy HUB stockholders who acquired HUB stock through the Merger. *See Efrat*, Dkt. No. 1 ("*Efrat* Complaint") ¶ 29. Then, on July 31, 2023, a second action alleging substantially the same wrongdoing as *Efrat* against HUB and other defendants was filed in this Court, styled *Green v. Hub Cyber Security Ltd. et al.*, No. 1:23-cv-06668 ("*Green*"), on behalf of a more expansive class of investors including all (a) Legacy HUB stockholders who acquired HUB common stock through the Merger, (b) Mount Rainier investors who acquired the Company's securities pursuant and/or traceable to the Offering Documents (as defined below) issued in connection with the Merger, and/or (c) persons and entities that purchased or otherwise acquired Mount Rainier or U.S.-listed HUB securities during the Class Period. *See Green*, Dkt. No. 1 ("*Green* Complaint") ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the larger class alleged in *Green*.

1

PRELIMINARY STATEMENT

The Complaints in the Related Actions allege that the above-captioned defendants ("Defendants") disseminated a materially false or misleading registration statement and prospectuses to investors in connection with the Merger in violation of the Securities Act, as well as defrauded investors in violation of the Exchange Act. HUB and Mount Rainier investors, including Tripp and Fodjo, incurred significant losses following the disclosure of Defendants' alleged wrongful conduct, which caused HUB's share price to fall sharply, damaging Tripp and Fodjo, as well as other HUB and Mount Rainier investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by, *inter alia*, HUB, arising from substantially the same alleged wrongful conduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I). Pursuant and/or traceable to the Offering Documents (as defined below) issued in connection with the Merger and/or during the Class Period, Tripp and Fodjo collectively purchased 199,077 HUB and Mount Rainier shares, expended $415,763 on these transactions, and, as a result of the disclosure of Defendants' alleged misrepresentations and/or omissions, incurred losses of approximately $214,999. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A. Accordingly, Tripp and Fodjo believe that they have the largest financial interest in the relief sought in the Related Actions. Beyond their considerable financial interest, Tripp and Fodjo also

meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, Tripp and Fodjo have selected Pomerantz as Lead Counsel for the Class. Pomerantz is a nationally recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in these Related Actions.

Accordingly, Tripp and Fodjo respectfully request that the Court enter an Order consolidating the Related Actions, appointing Tripp and Fodjo as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the Complaints in the Related Actions, Legacy HUB was founded in 2017 by veterans of the elite Unit 8200 and Unit 81 of the Israeli Defense Forces and described itself as having "developed unique technology and products in the field of Confidential Computing, and it intends to be a significant player providing effective cybersecurity solutions for a broad range of government entities, enterprises and organizations." Before the Merger, Legacy HUB's ordinary shares and existing warrants traded on the Tel Aviv Stock Exchange ("TASE").

Mount Rainier was a special purpose acquisition company ("SPAC"), also called a blank-check company, which is a development stage company that has no specific business plan or purpose or has indicated that its business plan is to engage in a merger or acquisition with an unidentified company or companies, other entity, or person. Before the Merger, Mount Rainier's common stock, units, and redeemable warrants traded on the Nasdaq Stock Market ("NASDAQ"). After the Merger, Mount Rainier became a wholly owned subsidiary of HUB.

3

On March 23, 2022, Legacy HUB and Mount Rainier issued a joint press release stating "that they have entered into a definitive business combination agreement." The press release further stated that Legacy HUB's Founder and Chief Executive Officer ("CEO"), Defendant Eyal Moshe ("Moshe"), and the current management team will continue to lead the Combined Company" and that "Cash proceeds from the proposed transaction are expected to consist of up to approximately $176 million of cash held in RNER's [Mount Rainier's] trust (before any redemptions by RNER's public stockholders and the payment of certain expenses) and approximately $50 million attributed to the PIPE [private investment in public equity] investment anchored by Israeli and American institutional and existing investors. Proceeds from the PIPE are expected to satisfy the minimum cash closing condition and will be used as working capital to support continued growth and to fund acquisitions."

On April 5, 2022, Legacy HUB filed an investor presentation transcript with the U.S. Securities and Exchange Commission ("SEC") pursuant to Rule 425 under the Securities Act. That transcript largely quoted Defendant Moshe, who stated, among other things, that "Investors have made irrevocable commitments to invest approximately $50 million in a PIPE financing at a valuation of $1.28 billion." The presentation given during that meeting also stated, in part, that "[i]nstitutional investors have made irrevocable commitments to invest approximately $50 million in a PIPE financing at a valuation of $1.28 billion" and that "[t]his $50 million PIPE investment is the minimum investment amount required to close the merger transaction (even if all of the $173 million of SPAC funds are redeemed by SPAC investors)."

On July 5, 2022, Legacy HUB submitted a formal request to the Israeli District Court to allow the Company shareholders to decide on 'same-day' delisting from the TASE and start of its expected trading on the NASDAQ.

On August 9, 2022, the Company disclosed that it had received formal approval from the Israeli District Court to summon a shareholders' meeting for the approval of the upcoming SPAC meeting and listing terms on the NASDAQ.

On August 24, 2022, Legacy HUB filed a registration statement (the "Registration Statement") on Form F-4 with the SEC in connection with the Merger, covering the Company's ordinary shares and warrants issuable to the securityholders of Mount Rainier, which, after several amendments, was declared effective by the SEC on December 8, 2022.

On August 25, 2022, Legacy HUB made a submission to the Israeli Securities Authority stating, in part, that the completion of the Merger and the start of trading on the NASDAQ was subject to several conditions precedent, including the approval of the Company's shareholders to carry out the Merger.

On or about October 6, 2022, Legacy HUB solicited its stockholders' approval of the Merger through a mailing (*i.e.*, prospectus), with that solicitation stating that the PIPE investors made an absolute and irrevocable commitment to invest in the Company at a value of $10 per share as part of a private placement, and that the PIPE is equal to the minimum amount required to close the Merger.

On October 27, 2022, at a Legacy HUB extraordinary general meeting, Legacy HUB's shareholders and optionholders voted to approve the Merger, whereby, among other things, the combined Company's ordinary shares, existing warrants, and new warrants would begin trading on the NASDAQ.

On December 9, 2022, Legacy HUB filed a proxy statement/prospectus (together with the Registration Statement, the "Offering Documents") on Form 424B3 with the SEC in connection with the Merger, covering the Company's ordinary shares and warrants issuable to the

securityholders of Mount Rainier, which incorporated and formed part of the Registration Statement, and which was used to solicit approval of the Merger from Mount Rainier investors.

On January 4, 2023, Mount Rainier issued a press release announcing that its stockholders had voted to approve the Merger, that "[t]he business combination is expected to close in late January 2023, subject to the satisfaction of certain customary closing conditions" and that HUB's securities were expected to be listed on the NASDAQ "effective at the consummation of the business combination."

The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) PIPE financing in connection with the Merger was not committed; (ii) HUB would not be led by Legacy HUB's then-current management team, including Defendant Moshe; (iii) the Company had downplayed the full scope and severity of deficiencies in its compliance controls and procedures, including its disclosure controls and procedures and internal controls over financial reporting; (iv) the Company overstated its remediation of, and/or ability to remediate, the foregoing deficiencies; (v) accordingly, the Company had hundreds of thousands of dollars of unexplained expenses incurred, and/or funds misappropriated or otherwise fraudulently obtained, by a senior officer of the Company; (vi) the foregoing increased the risk that the Company would be unable to timely file one or more of its periodic financial reports with the SEC, as required by the NASDAQ's listing rules; (vii) as a

6

result, the Company was also at an increased risk of being delisted from the NASDAQ; (viii) all the foregoing, once revealed, was likely to negatively impact the Company's business, financial results, and reputation; and (ix) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

On January 26, 2023, the Company issued a press release announcing "that following the receipt of all approvals and compliance with the conditions for the expected merger with Mount Rainier . . . and transition to trading on the [NASDAQ]," the Company expected its shares and warrants to begin trading on the NASDAQ on February 28, 2023, representing a delay of nearly one month from Mount Rainier's earlier announcement that the Merger would close in late January 2023.

On this news, Mount Rainier's share price fell $0.48 per share over two consecutive trading days, or 4.75%, to close at $9.63 per share on January 27, 2023.

On February 2, 2023, the Company issued a press release stating that Defendant "Moshe will be promoted to undertake the role of President of US operations to better focus resources and attention on the North American strategic business development" and "will be replac[ed] . . . as [CEO]."  The same press release also stated, in relevant part, that the Company "has received an irrevocable commitment by A-Labs Advisory & Finance Ltd. to substitute a current HUB PIPE investor, Clover Wolf Fund, in the sum US$ 10 million on the same terms."

On this news, Mount Rainier's share price fell $0.29 per share, or 3.05%, to close at $9.21 per share on February 3, 2023.

On February 3, 2023, the Company filed a Form 6-K with the SEC, stating that "on February 2, 2023, Ayelet Bitan, the Company's Vice President of Human Resources, resigned

from her position as an officer of the Company, effective immediately"; and that, on February 2, 2023, the Board of Directors (the "Board") of "HUB Cyber Security Ltd. (TASE: HUB) (the 'Company') accepted the resignation of [Defendant] Moshe as the Company's [CEO], effective immediately, and appointed him as President of the Company's U.S. operations."

On this news, Mount Rainier's share price fell $0.38 per share, or 4.13%, to close at $8.83 per share the next trading day on February 6, 2023.

On February 28, 2023, the Company consummated the Merger with Mount Rainier, Mount Rainier became a wholly owned subsidiary of the Company, and the Company's shares closed at $4.99 per share.

On March 1, 2023, the combined Company's securities began trading on the NASDAQ, with a first post-Merger closing stock price of $1.59 per share (the "Initial Closing Price").

Also on March 1, 2023, HUB filed a Form 6-K with the SEC stating, *inter alia*, that "[t]he PIPE Financing did not consummate at closing of the Business Combination" and that, "[a]s a result of the redemptions from [Mount Rainier]'s trust account and the failure of the PIPE Financing to be consummated, the Company waived the Minimum Cash Condition in order to proceed to close the Business Combination."

On this news, HUB's stock price fell $0.34 per share, or 21.38%, to close at $1.25 per share on March 2, 2023.

On April 20, 2023, HUB filed a Form 6-K with the SEC stating, *inter alia*, that "[o]n April 19th, 2023, [the Board] of [HUB] appointed a special committee of independent directors . . . in order to investigate and asses[s] certain allegations of potential misappropriation and other potential fraudulent actions raised against a former senior officer of the Company."  The Form 6-K further disclosed that "[t]he allegations were raised during on-going reviews by the new

8

management of the Company, and within this framework the new management of the Company discovered certain unexplained expenses . . . estimated at approximately NIS [New Israel Shekel] 2.5 million"—*i.e.*, approximately $675,110.

On this news, HUB's stock price fell $0.03 per share, or 2.52%, to close at $1.16 per share on April 20, 2023.

On May 15, 2023, HUB issued a press release disclosing that "due to the previously disclosed internal investigation by a special committee of independent directors . . . that was appointed by the [Board], the Company requires additional time to complete the process and file its Annual Report on Form 20-F for the fiscal year ended December 31, 2022."

On May 22, 2023, HUB issued a press release disclosing that HUB received a notice that the Company was non-compliant with applicable NASDAQ listing rules because the Company had failed to "timely file[] its Annual Report on Form 20-F for the fiscal year ended December 31, 2022 . . . with the [SEC.]"  The Company also disclosed, *inter alia*, that "[t]he Company's management and the Audit Committee are also reviewing the effectiveness of the Company's controls over its disclosure and internal accounting and financial reporting for the year ended December 31, 2022"; and that, "[i]f the Company fails to timely regain compliance with the Nasdaq Listing Rules, the securities of the Company will be subject to delisting from Nasdaq."

On this news, HUB's stock price fell $0.04 per share, or 6.15%, to close at $0.61 per share on May 22, 2023.

Then, on June 13, 2023, HUB issued a press release disclosing that HUB received another notice of non-compliance with applicable NASDAQ listing rules "because for the past 30 consecutive business days preceding the date of the notification . . . the bid price per share of the Company's ordinary shares, no par value ('Ordinary Shares') had closed below the $1.00 per

share minimum bid price required for continued listing on Nasdaq[.]" The Company further disclosed that "[i]f the Company has not regained compliance within the period(s) granted by Nasdaq, including any extensions, the Ordinary Shares will be subject to delisting, pending an appeal to the Nasdaq Hearing Panel."

On this news, HUB's stock price fell $0.04 per share, or 6.78%, to close at $0.55 per share on June 14, 2023—a **65.41%** decline from its Initial Closing Price.

On July 5, 2023, the price of HUB's stock closed at $0.3918 per share—a **75.36%** decline from its Initial Closing Price.

As of the time the *Green* Complaint was filed, HUB's stock was trading significantly below its Initial Closing Price and continues to trade below its initial value from the Merger, damaging investors.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Tripp and Fodjo and other Class members have suffered significant losses and damages.

ARGUMENT

I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d

10

Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same).    Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law ***and*** fact. Each action is brought against the Company in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

11

II.    TRIPP AND FODJO SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

Tripp and Fodjo should be appointed Co-Lead Plaintiffs because they have timely filed a motion for appointment as Co-Lead Plaintiffs, have the largest financial interest in the Related Actions to their knowledge, and otherwise strongly satisfy the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. §§ 77z-1(a)(3)(A)(i), 78u-4(a)(3)(A)(i). Additionally, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* §§ 77z-1(a)(3)(B), 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* §§ 77z-1(a)(3)(B)(i), 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* §§ 77z-1(a)(3)(B)(iii)(I), 78u-4(a)(3)(B)(iii)(I).

As set forth below, Tripp and Fodjo satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

12

A.    Tripp and Fodjo Are Willing to Serve as Class Representatives

On July 6, 2023, counsel for plaintiff in the first-filed of the Related Actions (*i.e.*, *Efrat*) caused the statutorily required Notice of *Efrat* to be published over *Globe Newswire* pursuant to Sections 27(a)(3)(A)(i) and 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against HUB, and which advised investors in HUB securities that they had 60 days from the date of the Notice's publication to file a motion to be appointed as lead plaintiff.  *See* Dkt. No. 8.  On August 9, 2023, this Court entered an Order directing the plaintiff in *Green* to publish a new Notice (the "Renewed Notice") because the Green Complaint covers a broader class and class period than the Efrat Complaint.  *See* Dkt. No. 15.  On August 16, 2023, counsel for plaintiff in *Green* caused the Renewed Notice to be published pursuant to Sections 27(a)(3)(A)(i) and 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against HUB and other defendants, and which advised investors in HUB and Mount Rainier securities that they had until October 16, 2023—*i.e.*, 60 days from the date of the Renewed Notice's publication—to file a motion to be appointed as lead plaintiff.  *See* Dkt. Nos. 16, 16-1.

Tripp and Fodjo have filed the instant motion pursuant to the Renewed Notice and have attached sworn Certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B. Accordingly, Tripp and Fodjo satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

B.    Tripp and Fodjo Have the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. §§ 77z-1(a)(3)(B)(iii), 78u-4(a)(3)(B)(iii).  To the best of their knowledge,

Tripp and Fodjo have the largest financial interest of any HUB or Mount Rainier investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide, these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

Pursuant and/or traceable to the Offering Documents issued in connection with the Merger and/or during the Class Period, Tripp and Fodjo collectively: (1) purchased 199,077 HUB and Mount Rainier shares; (2) expended $415,763 on these transactions; and (3) as a result of the disclosures of Defendants' alleged misrepresentations and/or omissions, incurred losses of approximately $214,999. *See* Lieberman Decl., Ex. A. To the extent that Tripp and Fodjo possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(I)(bb).

C.     Tripp and Fodjo Otherwise Satisfy the Requirements of Rule 23

Sections 27(a)(3)(B)(iii)(I)(cc) and 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provide that, in addition to possessing the largest financial interest in the outcome of the litigation, lead plaintiffs must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil

14

Procedure."    Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that lead plaintiff movants satisfy Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification.  Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements.").

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other

15

class members, including distinctions in the qualifications of the class members.'" *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

Tripp and Fodjo's claims are typical of those of the Class. Tripp and Fodjo allege, like other Class members, that Defendants violated the federal securities laws by making false or misleading statements of material facts and/or by omitting to disclose material facts concerning HUB and/or the Merger. Tripp and Fodjo, like other Class members, purchased or otherwise acquired HUB securities pursuant and/or traceable to the Offering Documents issued in connection with the Merger, as well as HUB and Mount Rainier securities during the Class Period, at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove HUB's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Tripp and Fodjo have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submit their choice of Pomerantz to the Court for approval as Lead Counsel

16

pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v).  In addition to Pomerantz, Tripp is also represented by The Schall Law Firm in this litigation.  There is no evidence of antagonism or conflict between Tripp and Fodjo's interests and the interests of the Class. Moreover, Tripp and Fodjo have each submitted a signed Certification declaring their respective commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. B), and the significant losses incurred by Tripp and Fodjo demonstrate that they have a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Moreover, Tripp and Fodjo constitute an appropriate movant duo of the type routinely appointed to serve as Co-Lead Plaintiffs.  *See, e.g.*, *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" that the PSLRA permits appointment of groups and appointing group consisting of six members with the largest financial interest as lead plaintiffs); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding a group of seven shareholders with the greatest loss was "presumptively the most adequate plaintiff"); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

Tripp and Fodjo likewise have demonstrated their adequacy because they are a small and cohesive movant duo who have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their investing experience, their understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class.  *See* Lieberman Decl., Ex. C.  Courts routinely appoint more than one

17

investor as Co-Lead Plaintiffs under such circumstances.  *See, e.g.*, *Blue Apron*, 2017 WL 6403513, at \*4 (appointing group of investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding that the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at \*7-9, \*12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at \*3 (D. Vt. Apr. 27, 2012) (finding a joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

D.    Tripp and Fodjo Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Tripp and Fodjo as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iii)(II).

Tripp and Fodjo's ability and desire to fairly and adequately represent the Class has been discussed above.  Tripp and Fodjo are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, Tripp and Fodjo should be appointed Co-Lead Plaintiffs for the Class.

III.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in lead plaintiffs to select and retain lead counsel, subject to Court approval.  *See id.* §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).    The Court should only

18

interfere with lead plaintiffs' choice if necessary to "protect the interests of the class." *Id.* §§ 77z-1(a)(3)(B)(iii)(II)(aa), 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))).

Here, Tripp and Fodjo have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. D. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.*

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Related Actions, Tripp and Fodjo's counsel, Pomerantz, has the skill, knowledge,

19

expertise, and experience that will enable the firm to prosecute these Related Actions effectively and expeditiously. Thus, the Court may be assured that by approving Tripp and Fodjo's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Tripp and Fodjo respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Tripp and Fodjo as Co-Lead Plaintiffs for the Class; and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class.

Dated: October 16, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Reese Tripp and Rodrigue Fodjo and Proposed Lead Counsel for the Class*

THE SCHALL LAW FIRM
Brian Schall
(*pro hac vice* application forthcoming)
2049 Century Park East, Suite 2460
Los Angeles, California 90067
Telephone: (424) 303-1964
brian@schallfirm.com

*Additional Counsel for Reese Tripp*

20