**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE HUB CYBER SECURITY LTD., | Case No. 1:23-cv-05764-AS <br><br> Hon. Arun Subramanian <br><br> **ORAL ARGUMENT REQUESTED** |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**</u>

Ari M. Berman
Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Tel. No.: (212) 858-1638
Fax No.: (212) 858-1500
E-mail: ari.berman@pillsburylaw.com

*Counsel for Defendants Hub Cyber Security Ltd., Manish Agarwal, Matthew Kearney, Hugo Goldman, Uzi Moscovich, Zeev Zell, Moti Franko, Levana Shifman, and Moshe Raines*

Dated: May 31, 2024

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ......................................................................... 1

II.     FACTUAL BACKGROUND............................................................................ 3

        A.      The Parties and Business Combination.................................................. 3

        B.      Allegations about the PIPE Financing ................................................. 4

        C.      Allegations about the Embezzlement.................................................... 5

        D.      Allegations about the Product Line...................................................... 6

III.    LEGAL STANDARD..................................................................................... 6

IV.     ARGUMENT ............................................................................................... 7

        A.      The Amended Complaint Does Not Adequately Allege Claims Under
                Section 11 and Section 12(a)(2).......................................................... 7

                1.      Securities Act Sections 11 and 12(a)(2)...................................... 7

                2.      Plaintiffs Do Not Have Standing to Bring Section 11 or 12 Claims .......... 7

                3.      The Amended Complaint Does Not State a Claim ..................................... 9

                        a.      The Court Should Apply Rule 9(b) because the Allegations
                                Sound in Fraud. ...................................................... 9

                        b.      Plaintiffs Fail to Allege a Material Misstatement or
                                Omission ............................................................. 11

                4.      The Amended Complaint Does Not Allege that the Individual
                        Defendants are Statutory Sellers Under Section 12 ................................. 18

        B.      The Amended Complaint Does Not Adequately Allege a Control Person
                Claim Under Section 15................................................................... 19

                1.      Securities Act Section 15 ...................................................... 19

                2.      The Amended Complaint Does Not Adequately Allege Any of the
                        Individual Defendants Controlled the Transactions in Question or
                        Were Culpable Participants....................................................... 19

V.      CONCLUSION............................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)......................................................................................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................................................6

*In re CarLotz, Inc. Sec. Litig.,*
    No. 21-CV-5906 (AS), 2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ............................14, 15

*In re CarLotz, Inc. Securities Litigation,*
    667 F. Supp. 3d 71 (S.D.N.Y. 2023)..............................................................................1, 8

*In re Citigroup Bond Litig.,*
    723 F. Supp. 2d 568 (S.D.N.Y. 2010)...............................................................................10

*In re Corning Sec. Litig.,*
    No. 01-6580, 2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004)) ................................................10

*DeMaria v. Andersen,*
    153 F. Supp. 2d 300 (S.D.N.Y.2001).................................................................................20

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.,*
    553 F.3d 187 (2d Cir. 2009)...........................................................................................16

*SEC v. First Jersey Sec., Inc.,*
    101 F.3d 1450 (2d Cir. 1996).........................................................................................19

*In re Glob. Crossing, Ltd. Sec. Litig.,*
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)................................................................................7

*In re Glob. Crossing, Ltd. Sec. Litig.,*
    No. 02 Civ. 910, 2005 WL 1881514 (S.D.N.Y. Aug. 5, 2005) ............................................19

*In re HEXO Corp. Sec. Litig.,*
    524 F. Supp. 3d 283 (S.D.N.Y. 2021)............................................................................12, 13

*In re Hi-Crush Partners L.P. Sec. Litig.,*
    No. 12 CIV. 8557 CM, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ...................................12

*In re JP Morgan Chase,*
    363 F. Supp. 2d 595 (S.D.N.Y. 2005)............................................................................9, 11

*Ladmen Partners, Inc. v. Globalstar, Inc.,*
No. 07-0976, 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ....................................................10

*In re Lehman Bros. Mortg.-Backed Sec. Litig.,*
650 F.3d 167 (2d Cir. 2011)......................................................................................................19

*In re Lehman Bros. Sec. & Erisa Litig.,*
799 F. Supp. 2d 258 (S.D.N.Y. 2011).......................................................................................18

*Litwin v. Blackstone Grp., L.P.,*
634 F.3d 706 (2d Cir. 2011).................................................................................................14, 15

*Luce v. Edelstein,*
802 F.2d 49 (2d Cir. 1986).........................................................................................................11

*Merritt v. Molecular Partners AG,*
No. 22-CV-5925 (AS), 2024 WL 495140 (S.D.N.Y. Feb. 5, 2024)........................................13

*In re Micro Focus Int'l Plc Sec. Litig.,*
No. 1:18-CV-06763-ALC, 2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020) ........................9, 10

*In re Morgan Stanley Info. Fund Sec. Litig.,*
592 F.3d 347 (2d Cir. 2010)...................................................................................................7, 18

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.,*
714 F. Supp. 2d 475 (S.D.N.Y. 2010).......................................................................................20

*Rombach v. Chang,*
355 F.3d 164 (2d Cir. 2004)...............................................................................................6, 9, 11

*In re Smith Barney Transfer Agent Litig.,*
884 F. Supp. 2d 152 (S.D.N.Y. 2012).......................................................................................20

*In re Sotheby's Holdings, Inc.,*
No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ...........................................20

*Wandel v. Gao,*
590 F. Supp. 3d 630 (S.D.N.Y. 2022)..................................................................................14, 19

*Yi Xiang v. Inovalon Holdings, Inc.,*
254 F. Supp. 3d 635 (S.D.N.Y. 2017).......................................................................................18

*Youngers v. Virtus Inv. Partners Inc.,*
195 F. Supp. 3d 499 (S.D.N.Y. 2016).......................................................................................20

Statutes and Codes

United States Securities Act
    Sections 11 ................................................................................................................... *passim*
    Section 12(a)(2) ............................................................................................................ *passim*
    Section 15 ....................................................................................................................... 19, 20

Rules and Regulations

Code of Federal Regulations,
    Title 17, Section 229.105 ........................................................................................................ 13
    Title 17, Section 229.303 ........................................................................................................ 13

Federal Register
    SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45,150 (1999) ...................................... 15

Federal Rules of Civil Procedure
    Rule 9(b) ....................................................................................................................... *passim*
    Rule 12(b)(6) .................................................................................................................. 1

iv

Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, Hub Cyber Security Ltd. ("Hub"), Manish Agarwal, Matthew Kearney, Hugo Goldman, Uzi Moscovich, Zeev Zell, Moti Franko, Levana Shifman, and Moshe Raines (collectively, "Defendants" and without Hub, "Individual Defendants") respectfully submit this Memorandum of Law in support of the Motion to Dismiss Plaintiffs' Amended Complaint ("AC") (ECF 45).

## I.     PRELIMINARY STATEMENT

This is an action for securities law violations against an Israeli cyber security company whose stock price suffered in the wake of its disappointing SPAC merger. While the company's fortunes have not panned out as hoped, that by itself does not amount to a plausible claim for securities law violations – Plaintiffs need much more. The Amended Complaint is long on rhetoric regarding the company's misfortunes, but short on specifics regarding actual misstatements or omissions. It is a far cry from plausibly pleading any viable claims and should be dismissed.

Putting aside the merits of the claims, as was recently held in *In re CarLotz, Inc. Securities Litigation*, 667 F. Supp. 3d 71 (S.D.N.Y. 2023), Plaintiffs lack standing to bring these claims. No Plaintiff purchased shares traceable to the challenged registration statement as required for Section 11. Nor did any Plaintiff purchase securities directly in an initial public offering as required for Section 12(a)(2). This alone ends the inquiry, and this case should be dismissed with prejudice.

To the extent it is relevant, the Amended Complaint fails to plead any claims. Plaintiffs base their claims on three alleged misstatements or omissions, none of which is actionable because they were either true when made, plainly immaterial, or not required to be disclosed.

***First***, Plaintiffs claim that the Defendants intentionally failed to disclose that the PIPE (private investment in public equity) investors had reneged on their firm commitment to provide funding to Hub in connection with its SPAC merger. It is true that the PIPE investors violated their commitment to invest $50 million into Hub in connection with the merger. But that does not mean

that Hub violated any securities laws – Hub accurately disclosed the nature of the PIPE investors' commitment as well as the PIPE investors' decision to renege on such commitment.

*Second*, Plaintiffs claim that the Defendants intentionally failed to disclose that its now-former CEO had stolen an immaterial amount of funds from the company. The Amended Complaint, however, alleges no facts to support the inference that Defendants knew or should have known about such misconduct prior to its eventual disclosure. To the contrary, as the Amended Complaint and Hub's contemporaneous public securities disclosures make clear, after the company suspected misconduct, it promptly formed a Special Committee to investigate the situation, stated that it believed the investigation would not have a material impact on the company's financial statements, and disclosed the results of its investigation to investors.

*Third*, Plaintiffs claim that the Defendants intentionally misled investors about Hub's products. The Amended Complaint bases this strained theory on a single January 2024 news article in which the company's former CEO reportedly stated that at the time of the Business Combination, Hub's products still needed "improvements." But Hub publicly and accurately disclosed the nature of its products, including appropriate disclaimers.

Each of Plaintiffs' theories "sounds in fraud" and should be held to Rule 9(b)'s heightened standard. Plaintiffs attempt to sidestep this pleading requirement by sprinkling in words such as "negligently" throughout their Amended Complaint – but this window dressing cannot conceal the true nature of Plaintiffs' allegations, which plainly "sound in fraud" and should be dismissed.

Defendants also join the arguments proffered in Eyal Moshe's Motion to Dismiss, namely that the action should be dismissed under *forum non conveniens*, as it concerns matters that primarily took place in Israel, and that there is no personal jurisdiction over the Individual Defendants, as most reside in Israel and Plaintiffs have not alleged their connections to New York.

2

## II.    FACTUAL BACKGROUND

### A.    The Parties and Business Combination

This action concerns securities in Hub. AC ¶ 1. As alleged in the Amended Complaint, Hub's predecessor, Hub Cyber Security Company (Israel) Ltd. ("Hub Israel"), was formed in 2017 by veterans of intelligence units of the Israeli Defense Forces. AC ¶ 45. Hub Israel operated in over 30 countries and provided cybersecurity computing appliances and cybersecurity services. AC ¶ 46. Plaintiffs allege that Defendants Moscovich, Zell, Shifman, Raines, Agarwal, and Franko served as directors of the board of Hub Israel at the time of the Business Combination, *see* AC ¶¶ 26-31, but Defendant Shifman's role as director ended in September 2022. RJN Ex. E. Defendant Moscovich became CEO on February 2, 2023, over a month after the Offering Documents were issued. *See* AC ¶ 26. Defendant Goldman was CFO of Hub Israel and later of Hub. AC ¶ 25.

Mount Rainier Acquisition Corp. ("Mount Rainier") was a special purpose acquisition company ("SPAC"). AC ¶ 40. A SPAC is a publicly traded company formed to acquire an existing company. AC ¶ 34. Mount Rainier was incorporated in Delaware on February 10, 2021, for the purpose of effecting a business combination, and its IPO was consummated on October 7, 2021. AC ¶¶ 40-41. Defendant Kearney was the Chairman and CEO of Mount Rainier. AC ¶ 32.

On March 23, 2022, Hub Israel and Mount Rainier announced they had entered a business combination agreement (the "Business Combination" or "de-SPAC merger"), and the combined entity would be renamed Hub. AC ¶¶ 1-2, 47. On August 24, 2022, Hub Israel filed a Registration Statement on Form F-4, which explained that securities holders of Mount Rainier and Hub Israel would receive newly registered Hub securities. AC ¶¶ 3 n.1, 52-53. On October 31, 2022, Hub Israel announced its shareholders and option holders voted to approve the Business Combination and delisting from the Tel Aviv Stock Exchange. AC ¶ 54. On December 9, 2022, Mount Rainier and Hub Israel filed a Prospectus on Form 424B3. AC ¶¶ 3 n.1, 55.  The Prospectus and its

supplements were incorporated into and formed a part of the Registration Statement that became effective on December 8, 2022. AC ¶ 3 n.1.

On January 4, 2023, Mount Rainier shareholders approved the Business Combination. AC ¶ 57. During this meeting and a prior meeting, shareholders had the right to redeem their shares. AC ¶¶ 56-58. Approximately 99.2% of the total Mount Rainier shares that were then-outstanding and eligible for redemption were redeemed. AC ¶ 58. On January 26, 2023, Mount Rainier and Hub Israel announced that the Business Combination was expected to close on February 27, 2023. AC ¶ 59. On February 28, 2023, Hub announced the completion of the Business Combination. AC ¶ 61. Hub securities began trading on the Nasdaq on March 1, 2023. AC ¶ 63.

By their own admission, Lead Plaintiffs Aryeh Agam and Shimon Aharon had purchased stock in Hub Israel, which was converted into stock in Hub as of the consummation of the Business Combination. *See* ECF 23-1, 23-2. They appear to have also purchased stock in Hub *after* the de-SPAC merger. *Id.* "Additional" Plaintiffs Rodrigue Fodjo and Dustin Green each purchased shares in Mount Rainier, i.e., the SPAC. *See* ECF 27-2; Case No. 1:23-cv-06668-AS, ECF 1-2.

### B.    Allegations about the PIPE Financing

On March 23, 2022, Hub Israel and Mount Rainier stated that they expected PIPE financing. AC ¶ 48. The Registration Statement said that PIPE investors had "committed to invest" $50 million USD as the minimum investment commitment required for closing the transaction. AC ¶ 69. It also stated that the "PIPE Investors have agreed to purchase" five million ordinary shares at a price of $10.00 per share. AC ¶ 69. On February 28, 2023, upon completion of the Business Combination, Hub disclosed that the PIPE financing was not consummated. AC ¶ 73. As disclosed in a class action suit brought by Hub Israel shareholders in Israel, Defendants are in negotiations with the PIPE investors, seeking to enforce their contractual rights. *See* RJN Ex. C.

### C.      Allegations about the Embezzlement

Defendant Eyal Moshe was the CEO of Hub Israel from June 2021 to February 2, 2023, and he served as a director on Hub Israel's board at the time of the Business Combination. AC ¶ 24. As alleged, Moshe's spouse, Ayelet Bitan, was Hub Israel's Vice President of Human Resources. AC ¶ 3. On February 2, 2023, Hub Israel announced that Moshe would take the role of President of U.S. Operations. AC ¶ 65. The press release also stated that Hub Israel's Chairman, Uzi Moskowitz, would replace Moshe as CEO. AC ¶ 65. On February 3, 2023, Hub Israel filed a Form 8-K with the SEC that stated Moshe had resigned as CEO on February 2, 2023. AC ¶ 66. Hub Israel also disclosed that Bitan resigned from her position on February 2, 2023. AC ¶ 66.

On April 20, 2023, Hub disclosed that on April 19, 2023, it appointed a special committee of independent directors (the "Special Committee") to "investigate and assess certain allegations of potential misappropriation and other potential fraudulent actions raised against a former senior officer of the Company." AC ¶ 83. Hub stated it was investigating "unexplained expenses . . . estimated at approximately NIS 2.5 million." AC ¶ 83. On May 1, 2023, Hub stated it believed "the amounts in question will not be material when compared to the Company's financial position, operating losses and cash flows." AC ¶ 87. On May 15, 2023, Hub stated the investigation was commenced due to "certain matters that were identified by the new management team [that followed Moshe's departure] during an overview of the Company's financial statements." AC ¶ 88. Hub explained that "[b]ased on preliminary findings from the Special Committee, [it] believes that the investigation will not have a material impact on the financial statements." AC ¶ 88.

On August 15, 2023, Hub filed its 2022 Annual Report, disclosing that Moshe and Bitan had stolen approximately $582,000 USD for personal use from a Hub bank account. AC ¶¶ 91-92. Hub also disclosed that a controller, with Moshe's permission, used Hub credit cards for

approximately $110,000 USD in personal use, and that Moshe approved a bonus for that controller, which was paid to a third party. AC ¶¶ 91-92. Hub also disclosed that Moshe authorized payments to contractors without proper documentation and approval or approved reports. AC ¶¶ 91-92. Hub stated that it "continues to pursue recovery of the misappropriated funds." AC ¶ 91.

### D.    Allegations about the Product Line

The Registration Statement said Hub Israel was an "established business, with established products, client base, and revenue stream" and was "cash positive with a range of new products providing significant growth potential." AC ¶ 124. Plaintiffs allege, based on a January 2024 article that purportedly recounted an interview with Defendant Moscovich, that there was not a "mature" product prior to Moscovich becoming CEO in February 2023. AC ¶¶ 94-95.

## III.    LEGAL STANDARD

On a motion to dismiss, the Court must assume well-pled factual allegations are true, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), but it need not accept legal conclusions, naked assertions, mere conclusory statements, or implausible inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted).

Where claims are "premised on allegations of fraud," as here, they must satisfy the heightened particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

IV.    **ARGUMENT**

A.    **The Amended Complaint Does Not Adequately Allege Claims Under Section 11 and Section 12(a)(2)**

1.    **Securities Act Sections 11 and 12(a)(2)**

Sections 11 and 12(a)(2) "impose liability on certain participants in a registered securities offering when the publicly filed documents used during the offering contain material misstatements or omissions." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010). They have "roughly parallel elements": Section 11 applies to registration statements, and Section 12(a)(2) applies to prospectuses and oral communications. *Id.* at 358. Under Section 11, a plaintiff must allege: "(1) she purchased a registered security, either directly from the issuer or in the aftermarket following the offering; (2) the defendant participated in the offering in a manner sufficient to give rise to liability under section 11; and (3) the registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Id.* at 358-59 (quoting 15 U.S.C. § 77k(a)). The elements of a Section 12(a)(2) claim are: "(1) the defendant is a 'statutory seller'; (2) the sale was effectuated 'by means of a prospectus or oral communication'; and (3) the prospectus or oral communication 'include[d] an untrue statement of a material fact or omit[ted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading.'" *Id.* at 359 (quoting 15 U.S.C. § 77*l*(a)(2)).

2.    **Plaintiffs Do Not Have Standing to Bring Section 11 or 12 Claims**

Plaintiffs lack standing to bring a Section 11 or 12 claim. "[T]o have standing to assert a section 11 claim, plaintiffs must be able to 'trace their shares to an allegedly misleading registration statement.'" *In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 206 (S.D.N.Y. 2003) (quoting *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003)). "[T]he cause of action [under

7

section 11] inheres in the faulty registration statement that put the shares in question on the market[.]" *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 80 (S.D.N.Y. 2023) (quoting *In re Glob. Crossing*, 313 F. Supp. 2d at 207-08). "[A] Section 11 plaintiff can only challenge the same registration statement under which her securities were issued." *Id.* at 81. No Plaintiff here can satisfy their burden to show they obtained shares put on the market by the Registration Statement.

Lead Plaintiffs Aryeh Agam and Shimon Aharon purchased stock in Hub Israel,[1] which was converted into stock in Hub as of the consummation of the Business Combination. *See* ECF 23-1, 23-2. Because they purchased shares in Hub Israel – i.e., not in Hub - they could not have purchased their shares pursuant to the Registration Statement, which did not offer shares in Hub Israel. *See* RJN Ex. A. Plaintiffs appear to have also purchased stock in Hub *after* the de-SPAC merger, *see* ECF 23-1, 23-2. but these shares are not traceable to the Registration Statement.

"Additional" Plaintiffs Rodrigue Fodjo and Dustin Green fare no better. They each purchased shares in Mount Rainier, i.e., the SPAC. *See* ECF 27-2; Case No. 1:23-06668-AS, ECF 1-2. These plaintiffs are analogous to Plaintiff Bailey in *In re CarLotz, Inc. Securities Litigation*, where the Court held that a plaintiff who purchases shares in a SPAC after the filing of the Registration Statement, but prior to the de-SPAC merger, does not have Section 11 standing. 667 F. Supp. 3d at 80-83. The Court there rejected the argument that individuals who bought shares in a SPAC have standing under Section 11 "because the [de-SPAC] merger functionally transformed" their shares into new shares in the newly formed entity. *Id.* at 81.

Moreover, Plaintiffs' 12(a)(2) claim fails because Plaintiffs have not alleged (nor can they demonstrate) that they "purchased securities directly in the initial public offering." *In re CarLotz*, 667 F. Supp. 3d at 83 (quoting *In re Smart Techs. Inc. S'holder Litig.*, 295 F.R.D. 50, 57 (S.D.N.Y.

---

[1] There is a class action pending in an Israeli court for Hub Israel stockholders. *See* AC ¶ 77.

2013)). "Aftermarket" or "secondary market" purchasers lack standing to maintain a section 12(a)(2) claim. *Id*. Accordingly, Plaintiffs' Section 12(a)(2) claims must be dismissed.

### 3.      The Amended Complaint Does Not State a Claim

The Amended Complaint essentially alleges that the Defendants intentionally misled investors about the PIPE investors, hid the former CEO's embezzlement, and lied about the state of the company's product line. Each of these allegations "sounds in fraud" and should be subject to the heightened standard of Rule 9(b). If the Court disagrees and applies a negligence standard, the Amended Complaint nonetheless fails to plead any claims for the reasons discussed below.

### a.      The Court Should Apply Rule 9(b) because the Allegations Sound in Fraud.

The Second Circuit has made clear that "the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Rombach*, 355 F.3d at 171. Rule 9(b)'s application is determined by the conduct alleged and not whether allegations are identified as fraud. *Id.* A court must evaluate whether the complaint includes "wording and imputations . . . classically associated with fraud[.]" *In re JP Morgan Chase*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (quoting *Rombach*, 355 F.3d at 172). Rule 9(b) applies when a plaintiff pleads that "statements that allegedly violated sections 11 and 12(a)(2) are 'false and misleading' and were 'untrue statements of material facts.'" *In re Micro Focus Int'l Plc Sec. Litig.*, No. 1:18-CV-06763-ALC, 2020 WL 5817275, at *16 (S.D.N.Y. Sept. 29, 2020).

Plaintiffs self-servingly state they are not alleging fraud, but the Amended Complaint "sounds in fraud." Plaintiffs repeatedly allege Defendants' statements were "false and misleading," AC ¶¶ 119, 123, 125, 132; included "untrue statements of material facts," AC ¶ 116, 136, 145; "concealed and failed to disclose material facts," AC ¶ 145; and omitted information "known" to Defendants, AC ¶ 113. When a plaintiff alleges a defendant had contrary knowledge when

9

"reviewing and/or disseminating [allegedly] misleading statements and information," the claims "sound in fraud." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-0976, 2008 WL 4449280, at *12 (S.D.N.Y. Sept. 30, 2008) (allegations suggested defendants turned a blind eye to known deficiencies and participated in an essentially fraudulent scheme to deceive investors about the status of its assets); *see also In re Corning Sec. Litig.,* No. 01-6580, 2004 WL 1056063, at *9 (W.D.N.Y. Apr. 9, 2004) (Rule 9(b) applied to Section 11 claim alleging Registration Statement "concealed and failed adequately to disclose material facts"). By contrast, a complaint does not "sound in fraud" if it lacks allegations of fraudulent intent. *See In re Citigroup Bond Litig.*, 723 F. Supp. 2d 568, 586-87 (S.D.N.Y. 2010) (plaintiffs did not allege statements were knowingly false or misleading but rather defendants had no reasonable grounds to believe statements were true).

*The PIPE financing*. Plaintiffs allege that "contrary to [Defendants'] representations" the PIPE financing "was not committed to finance the Business Combination." This is a binary proposition – either the PIPE financing was or was not committed and either the Defendants told the truth or intentionally misrepresented that fact to investors. Plaintiffs try to sidestep Rule 9(b)'s pleading requirement by stating that the Offering Documents were "negligently prepared," *see* AC ¶ 3, but their approach is too facile by half. As the Amended Complaint makes clear, *see* AC ¶¶ 117-119, the Offering Documents disclosed the nature of the PIPE investors' commitment, the importance of such commitment, and the language of the contracts with the PIPE investors. *See* RJN Ex. A, Ex. 10.6. It betrays common sense to suggest that such statements would be the product of negligence rather than intentional design. Accordingly, the PIPE allegations "sound in fraud," and the Court must apply Rule 9(b). *See In re Micro Focus Int'l*, 2020 WL 5817275, at *16.

*The embezzlement*. Plaintiffs attempt to cloak allegations regarding Hub's knowledge of embezzlement as negligent mismanagement while alleging Hub not only knew of but concealed

10

material facts in the Offering Documents, including but not limited to the embezzlement. *See* AC ¶¶ 85, 145. Without any particularity, Plaintiffs go as far as to allege Hub intentionally did not disclose that Moshe was "effectively fired by the Company in February" "in order to not rock the ship" before the Business Combination. *See* AC ¶ 85. These allegations necessarily involve Defendants' ***actual*** knowledge and ***concealment*** of embezzlement. Because "the wording and imputations of the [Amended Complaint] are classically associated with fraud," the Court must apply Rule 9(b). *See In re JP Morgan*, 363 F. Supp. 2d at 635 (quoting *Rombach*, 355 F.3d at 172).

***The company's product line***. Plaintiffs allege that Defendants' statements that Hub had "established" and "new" products were "false and misleading" because it was "known" to Defendants that the product was not mature. *See* AC ¶¶ 113, 124-125. Plaintiffs' theory is that Defendants ***knew*** the product was not ready but stated otherwise. This theory is based on one news article recounting an interview with Moscovich. Even if this Court generously takes Plaintiffs' thin theory at face value, by the Amended Complaint's own logic, Moscovich knew Hub's product was not "mature," but the company represented otherwise – such a theory sounds in fraud.

Plaintiffs have not even attempted to satisfy Rule 9(b) as to any of the three theories. The Amended Complaint fails to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *See Rombach*, 355 F.3d at 170 (quoting *Mills*, 12 F.3d at 1175); *see also Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986) (Allegations that "fail to specify the time, place, speaker, and sometimes even the content of the alleged misrepresentations, lack the 'particulars' required by Rule 9(b)."). Accordingly, the Amended Complaint should be dismissed.

### b.    Plaintiffs Fail to Allege a Material Misstatement or Omission

Even if the Court disagrees and applies a negligence standard, the Amended Complaint fails to plead any claims for the reasons discussed below.

11

### i. Allegations about the PIPE Financing

**Misstatements.** Plaintiffs point to statements in the Offering Documents that the PIPE investments were "committed." AC ¶¶ 117-118. In the Registration Statement, Hub stated: "According to the merger transaction, qualifying Israeli and U.S. institutional investors ('the PIPE investors') committed to invest a gross US$ 50 million based on the merger company's agreed value as described above (in a private placement) as the minimum investment commitment required for closing the merger transaction." AC ¶ 117. Hub also stated that the "PIPE Investors have agreed to purchase" shares. AC ¶¶ 117. The Prospectus stated that the aggregate consideration for the Business Combination and related transactions was expected to be approximately $226,885,000 of equity consideration, which includes "PIPE Financing commitments." AC ¶ 118.

Plaintiffs claim these statements were false and misleading, *see* AC ¶ 119, but they cannot plausibly allege these statements were actually false. "The truth of a statement made in the registration statement is adjudged by the facts as they existed when the registration statement became effective." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 CIV. 8557 CM, 2013 WL 6233561, at *7 (S.D.N.Y. Dec. 2, 2013) (quoting *Charter Twp. of Clinton Police & Fire Ret. Sys. v. KKR Fin. Holdings LLC*, No. 08 Civ. 7062, 2010 WL 4642554, at * 11 (S.D.N.Y. Nov. 17, 2010)). The PIPE investments were committed when the Registration Statement became effective in December 2022, *see* AC ¶ 3 n.1, as evidenced by the language of the agreements, filed as an exhibit thereto, *see* RJN Ex. A, Ex. 10.6. The fact that the PIPE investments did not consummate on February 28, 2023, does not change the facts as of December 2022. Defendants are currently in negotiations with the PIPE investors, seeking to enforce their contractual rights. *See* RJN Ex. C.

In an analogous case, a company disclosed a purchase obligation from an important customer in its offering materials, but the customer did not ultimately satisfy that obligation. *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 297 (S.D.N.Y. 2021). The court dismissed the

12

Section 11 claim, as the plaintiffs did not allege the defendants "knew any information . . . when they issued the Prospectus, upon which to conclude that [defendant company] would not sell the Purchase Obligation to the [purchaser.]" *Id.* at 301. This Court recently addressed a similar situation in *Merritt v. Molecular Partners AG*, No. 22-CV-5925 (AS), 2024 WL 495140 (S.D.N.Y. Feb. 5, 2024). In *Merritt*, the plaintiff brought a Section 11 claim alleging that the defendant company's statements about an agreement were misleading because the defendant did not disclose that the agreement was in jeopardy. *Id.* at *6. This Court rejected the argument, explaining "the complaint fails to plausibly allege that the . . . agreement was in fact in jeopardy at the time the registration statement became effective." *Id.* The same is true here:  Plaintiffs do not allege that Defendants knew or should have known that the PIPE investors would break their commitment.

**Omissions.**  Plaintiffs also allege that Defendants omitted information about the PIPE investors that they needed to disclose under Regulation S-K Items 303 and 105. AC ¶¶ 109-115.

Item 303 requires issuers to disclose "known trends or any known demands, commitments, events or uncertainties that will result in or that are reasonably likely to result in the registrant's liquidity increasing or decreasing in a material way" and "known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303. Item 105 requires that offering documents "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and "explain how each risk affects the registrant or the securities being offered." 17 C.F.R. § 229.105.

Plaintiffs claim Defendants had to disclose the PIPE investments were not "committed." AC ¶¶ 113, 115. But under Item 303, "[d]isclosure is required where the trend or uncertainty is both '[1] *presently known* to management and [2] reasonably likely to have material effects on the

registrant's financial conditions or results of operations.'" *In re CarLotz, Inc. Sec. Litig.*, No. 21-CV-5906 (AS), 2024 WL 1348749, at *12 (S.D.N.Y. Mar. 29, 2024) (emphasis added) (quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 716 (2d Cir. 2011)). Item 303 requires Defendants had "actual knowledge"; it is not enough that they "should have known." *Id.* (quoting *Indiana Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 95 (2d Cir. 2016)). And "[t]o state a claim under Item 105, an issuer must ***know***, at the time of the IPO, about an undisclosed risk factor that could seriously affect its present or future business." *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022) (emphasis added) (citing *Rubinstein v. Credit Suisse Grp. AG*, 457 F. Supp. 3d 289, 300 (S.D.N.Y. 2020)). "Thus, whether for a 'risk factor' under Item 105 or 'a trend, demand, commitment, event or uncertainty' under Item 303, Plaintiffs must plausibly allege that [Defendants] ***actually knew*** about, but did not disclose, the matter to investors." *Id.* (emphasis added).

Plaintiffs have not alleged that the fact that the PIPE investment would not be consummated was *actually known* to Defendants when the Registration Statement became effective in December 2022. That the PIPE investors reneged and did not consummate their investment at the closing of the Business Combination on February 28, 2023, *see* AC ¶ 73, does not demonstrate – in any way – that this fact was known to Hub's management two months prior.

### ii.   Allegations about the Embezzlement

**Omissions.** Plaintiffs allege that Defendants failed to disclose that Moshe and Bitan were embezzling funds, again pointing to Items 303 and 105 of Regulation S-K. AC ¶¶ 113, 115. But, as discussed above, Defendants are only required to disclose omitted facts that they knew. Plaintiffs have not alleged that the embezzlement was known as of December 2022, when the Registration Statement became effective. *See* AC ¶ 3 n.1. Moshe and Bitan resigned on February 2, 2023. *See* AC ¶ 66. The Special Committee was formed on April 19, 2023. AC ¶ 83. On May 15, 2023, Hub explained that "[t]he internal investigation was commenced as a result of certain

matters that were identified by the new management team [following Moshe's departure] during an overview of the Company's financial statements." AC ¶ 88. The embezzlement was not *known* as of December 2022, so Defendants were not required to disclose it.

**Materiality.** To demonstrate materiality, a plaintiff must allege "a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Litwin*, 634 F.3d at 716-17 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161-62 (2d Cir. 2000)). "[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* at 717 (quoting *Ganino*, 228 F.3d at 162). A complaint can be dismissed for immateriality if "the alleged misstatements or omissions 'are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.'" *In re CarLotz*, 2024 WL 1348749, at *8 (quoting *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009)).

Courts have rejected a "formulaic approach" to assessing materiality, but the SEC has provided some guidance, which the Second Circuit has cited with approval. *See id.* at 717 (quoting *Ganino*, 228 F.3d at 162). Specifically, the SEC stated:

> [t]he use of a percentage as a numerical threshold, such as 5%, may provide the basis for a preliminary assumption that . . . a deviation of less than the specified percentage with respect to a particular item . . . is unlikely to be material. . . . But quantifying, in percentage terms, the magnitude of a misstatement . . . cannot appropriately be used as a substitute for a full analysis of all relevant considerations.

SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45,150, 45,151 (1999); *see Litwin*, 634 F.3d at 717. Accordingly, a court must consider "both 'quantitative' and 'qualitative' factors in assessing an item's materiality." *Litwin*, 634 F.3d at 717 (quoting 64 Fed. Reg. at 45,151).

15

The Special Committee reported that Moshe and Bitan stole approximately $582,000 USD from a Company bank account; that a Hub controller, with Moshe's permission, used Hub credit cards for personal use in the amount of approximately $110,000 USD; and that Moshe approved a bonus of approximately $69,000 USD for that controller, which was paid to a third-party at the controller's direction. AC ¶¶ 91-92. The total value of the embezzlement was approximately $761,000 USD. Hub's market capitalization as of March 3, 2023 was $145 million USD. AC ¶ 75. The amount lost due to embezzlement was 0.5% of the company's March 3, 2023 market capitalization. Therefore, any omission was not material. *See IBEW*, 553 F.3d at 203-05 (misclassification of $2 billion of loans was immaterial where it was reclassified out of category totaling $76 billion into category totaling $212 billion and total assets were $715 billion).

**Internal Controls.** Plaintiffs also point to statements in the Registration Statement related to Hub's identification of "a material weakness in its internal control over financial reporting." AC ¶¶ 120-123. Plaintiffs allege that these statements were misleading because Hub did not disclose that it lacked adequate internal controls. AC ¶ 123. But the language quoted by Plaintiffs discloses the exact weakness they identify. AC ¶ 120. Hub disclosed details about this weakness and the steps it was taking to remediate it, and explicitly warned about financial control and compliance issues. AC ¶¶ 120-122; *see* RJN Ex. A. Plaintiffs also allege these statements were false and misleading because they did not disclose the embezzlement and resulting risks. *See* AC ¶ 123. But, again, Plaintiffs fail to allege that Defendants were aware of the embezzlement at the relevant time.

### iii.    Allegations about the Product Line

Plaintiffs added new allegations about Hub's product in the Amended Complaint, based entirely upon a January 2024 article in which Defendant Moscovich purportedly was interviewed.

16

It is a thin reed upon which to base a securities claim, especially considering that, as explained below, the company provided detailed risk disclosures regarding its products.

**Misstatements.** The Registration Statement stated Hub Israel was an "established business, with established products, client base, and revenue stream" and was "cash positive with a range of new products providing significant growth potential." AC ¶ 124. Plaintiffs allege these statements were materially false and misleading based on Moscovich's reported later statements. AC ¶ 94. But, as quoted in the article, Moscovich stated that at the time of the Business Combination, "the company's flagship product existed and was being sold, but improvements were required" and that the company had a "mature product" as of the interview. AC ¶¶ 94-95. Moscovich's purported statements do not demonstrate the Registration Statement was false or misleading. Accepting his statement that the "product existed and was being sold" as true, Hub did have an "established" product at the time of the Business Combination. And the fact that Hub had meaningful revenue during the first six months of 2023 belies the suggestion that there was no "established" product. *See* RJN Ex. D. A product can be "established" without being "mature," especially as the meaning of both adjectives is open to interpretation and a matter of opinion. Finally, it is worth noting that Moscovich is Israeli, and the cited article translated his quote from Hebrew into English, calling into further doubt the wisdom of basing an entire claim on out-of-context translated quotations in a news article. Context matters when assessing plausibility.

**Omissions.** Plaintiffs allege that Defendants failed to disclose that Hub did not have a mature product. AC ¶¶ 113, 115. But the Amended Complaint does not plausibly plead that Hub's statements were false. And Hub disclosed several risks about its products:

- "HUB expects its operating expenses will increase . . . as it . . . develops and expands its product features[.]"

17

- "HUB must continually modify and improve its products[.]"

- "HUB cannot guarantee that it will be able to . . . develop or acquire product enhancements or new products or solutions . . . in a timely manner or at all."

- "Network security products . . . such as HUB's are complex . . . and may contain errors[.]"

- "If HUB is unable to develop new products, . . . HUB's business may be harmed.".

- "HUB's products . . . may in the future contain[] undetected defects or errors[.]"

- "HUB's products must effectively interoperate with its customers' . . . IT infrastructures[.]"

RJN Exs. A, B. Hub appropriately disclosed several specific risks related to its products. Plaintiffs have not demonstrated that the company was required to disclose anything more.

### 4.    The Amended Complaint Does Not Allege that the Individual Defendants are Statutory Sellers Under Section 12

"A plaintiff has standing to bring a Section 12 claim only against a 'statutory seller' from which it 'purchased' a security." *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 310 (S.D.N.Y. 2011) (citation omitted). A statutory seller is one who "(1) 'passed title, or other interest in the security, to the buyer for value,' or (2) 'successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner.'" *In re Morgan Stanley*, 592 F.3d at 359 (quoting *Pinter*, 486 U.S. at 642, 647).

Plaintiffs allege that the Individual Defendants (except Kearney) signed the Registration Statement and that they all "participated in the solicitation and sale of Hub securities to investors in the Business Combination for their own benefit and the benefit of Hub[.]" AC ¶ 33. Courts in this District "consistently" hold that "an individual's signing a registration statement does not itself suffice as solicitation under Section 12(a)(2)." *Yi Xiang v. Inovalon Holdings, Inc.*, 254 F. Supp. 3d 635, 645-46 (S.D.N.Y. 2017) (quoting *Citiline Holdings, Inc. v. iStar Fin. Inc.*, 701 F. Supp. 2d 506, 512 (S.D.N.Y. 2010)). Shifman did not sign the Registration Statement, RJN Ex. A, as her

18

role as a director ended in September 2022, RJN Ex. E. The conclusory allegation that the Individual Defendants "participated in the solicitation and sale of Hub securities" is insufficient. Plaintiffs do not point to *any* actions taken by the Individual Defendants demonstrating how each participated in the solicitation and sale. The Section 12 claim must be dismissed.

**B.    The Amended Complaint Does Not Adequately Allege a Control Person Claim Under Section 15**

**1.    Securities Act Section 15**

To plead a claim for control person liability pursuant to Section 15 Plaintiffs must show "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Wandel*, 590 F. Supp. 3d at 647 (quoting *Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 562 (S.D.N.Y. 2021)); *cf. In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 186 (2d Cir. 2011) (recognizing a split in this District as to whether Section 15 requires "culpable participation" but declining to decide the question). Plaintiffs have not plausibly alleged a primary violation of Section 11 or 12; accordingly, their Section 15 claim fails.

**2.    The Amended Complaint Does Not Adequately Allege Any of the Individual Defendants Controlled the Transactions in Question or Were Culpable Participants**

Even assuming Plaintiffs pled a primary violation, the control person claim fails because Plaintiffs have not alleged that the Individual Defendants had "actual control over the transaction in question." *See In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1881514, at *12 (S.D.N.Y. Aug. 5, 2005) (citation omitted). Control under Section 15 entails "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise." *In re Lehman Bros. Mortg.-Backed*, 650 F.3d at 185 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996)).

Plaintiffs allege the Individual Defendants are control persons "due to their control, ownership, offices, directorship, and specific acts" and because they "participated in the operations and management of Hub, and conducted and participated, directly and indirectly, in the conduct of Hub's business affairs" based on "their positions of control and authority as officers and directors of Hub." AC ¶¶ 152-53. But "officer or director status alone does not constitute control" for purposes of control person liability. *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041, 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000); *see also Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 524 (S.D.N.Y. 2016) ("boilerplate allegations that a party controlled another based on officer or director status are insufficient"). This applies with greater force when, as with Kearney, who was CEO of *Mount Rainier* (not Hub), the position is at a company other than the primary violator. *See Youngers*, 195 F. Supp. 3d at 525. And Shifman resigned as a director in September 2022, months before the Registration Statement became effective. RJN Ex. E. Plaintiffs' allegations "focus exclusively on [Defendants'] 'control person status' rather than [their] exercise of 'actual control over the matters at issue.'" *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166 (S.D.N.Y. 2012) (citation omitted).

Nor do Plaintiffs plausibly allege "meaningful culpable conduct [by a defendant] beyond mere status as a director or officer." *See Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) (citation omitted). Plaintiffs have not alleged any "particularized facts as to [the Individual Defendants'] culpable participation in the violation of the controlled person." *See DeMaria v. Andersen*, 153 F. Supp. 2d 300, 314 (S.D.N.Y.2001). Absent specific allegations of actual control over the specific transactions or of culpable participation, the Section 15 claim fails.

## V.    CONCLUSION

For the reasons herein, the claims against Defendants should be dismissed with prejudice.

Dated: May 31, 2024               Respectfully submitted,

*/s/ Ari M. Berman*
Ari M. Berman

Pillsbury Winthrop Shaw Pittman LLP
31 West 52nd Street
New York, NY 10019-6131
Tel. No.: (212) 858-1638
Fax No.: (212) 858-1500
E-mail: ari.berman@pillsburylaw.com

***Counsel for Defendants Hub Cyber Security Ltd.,
Manish Agarwal, Matthew Kearney, Hugo
Goldman, Uzi Moscovich, Zeev Zell, Moti Franko,
Levana Shifman, and Moshe Raines***

21

**CERTIFICATE OF SERVICE**

I, Ari M. Berman, hereby certify that this document filed through the ECF system will be sent electronically via the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 31st day of May, 2024.

*/s/ Ari M. Berman*
Ari M. Berman