UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE HUB CYBER SECURITY LTD. | 1:23-CV-05764-AS |

**MEMORANDUM OF LAW IN SUPPORT OF EYAL MOSHE'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT**

PIERSON FERDINAND LLP
Aurora Cassirer
Christina H. Bost Seaton
Matthew DeFrancesco
1270 Avenue of the Americas
Seventh Fl.-7050
New York, NY 10020
Tel.: (917)-817-6617
Aurora.cassirer@pierferd.com
Matthew.defrancesco@pierferd.com
*Counsel for Defendant Eyal Moshe*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

RELEVANT FACTS AND PROCEDURAL HISTORY ......................................................... 3

   I.  The Relevant Parties and the Business Combination ................................................ 3

   II. The Related, First-Filed Action in Israel Alleging Misstatements in the Registration
      Statement .................................................................................................................. 5

   III. Plaintiffs' Allegations Concerning the PIPE Financing Do Not Establish a Violation of
      Securities Law .......................................................................................................... 6

   IV. The Registration Statement's Representations Concerning Hub's Business Were Non-
      Actionable Puffery and Opinion and Were Not Misleading ...................................... 7

   V. Plaintiff's Allegations Concerning Alleged Corporate Malfeasance ........................... 8

ARGUMENT ........................................................................................................................ 9

   I.  This Action Must be Dismissed on the Grounds of *Forum Non Conveniens* ........................... 9

      A. Plaintiff's Choice of Forum is Not Entitled to Deference under the Circumstances ....... 10

      B. Israel is an Available and Adequate Alternative Forum .......................................... 12

      C. The Private and Public Factors Overwhelmingly Favor Litigating this Matter in Israel 13

         1. Private Interest Factors in Support of Israel as the Chosen Forum .......................... 13

         2. Public Interest Factors Further Support Israel as the Chosen Forum ...................... 14

   II. In Any Event, Plaintiffs Lack Standing to Assert Their Section 11 and 12 Claims, and as
      Such, Cannot Assert a Section 15 Claim .................................................................. 17

   III. Even Ignoring Plaintiffs' Lack of Standing, Plaintiff's Complaint is Also Devoid of Facts
      Sufficient to Sufficiently State a Claim for Relief as to Each Alleged Violation .................... 20

CONCLUSION .................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Alcoa S.S. Co. V. M/V Nordic Regent*, 654 F.2d 147, (2d Cir. 1980)...................................11

*Alfadda v. Fenn*, 159 F.3d 41(2d Cir. 1998)............................................................13, 15

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996 (2d Cir. 1993)..............................16

*ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007)...................................3

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007)........................................17, 18

*Capital Currency Exch. v. Nat'l Westminster Bank PLC*, 155 F.3d 603 (2d Cir. 1998)..............13, 14

*CCS v. Int'l ECI Telesystems*, No. 97-CV-4646, 1998 WL 512951 (S.D.N.Y. Aug. 18, 1998)........13

*Cf. First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp. 2d 443 (S.D.N.Y. 2001) ...................14

*Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, No. 07- CV-8014 (CM), 2007 WL 3025699 (S.D.N.Y. Oct. 12, 2007) ...............................................................................10

*Core Software Tech., Inc. v. Imagesat Int'l N.V.*, No. 08-CV- 7017(DC), 2010 WL 21173 (S.D.N.Y. Jan. 5, 2010) ...............................................................................13

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, (2d Cir. 1991)...................................3

*Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)...........................16

*DeMaria v. Andersen*, 318 F.3d 170 (2d Cir. 2003).......................................................19

*Diatronics, Inc. v. Elbit Computs., Ltd.*, 649 F. Supp. 122 (S.D.N.Y. 1986)...................................15

*DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81(2d Cir. 2001) .............................................. 16

*Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 881 N.E.2d 830 N.Y.S.2d 381 (2007) ............................ 17

*Fischbarg v. Doucet*, 9 N.Y.3d 375, 880 N.E.2d 22, 849 N.Y.S.2d 501 (2007) ................................ 17

*Friedus v. Barclays Bank PLC*, 734 F.3d 132 (2d Cir. 2013) .............................................. 19

*Garnett v. RLX Tech. Inc.*, 21-CV-5125, 2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022) .................. 19

*Gucci Am., Inc. v. Li*, 768 F.3d 122 (2d Cir. 2014) .............................................. 16

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) .............................................. 14

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995) ............................ 19

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, (S.D.N.Y. 2015) .............................................. 19

*In re Carlotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, (S.D.N.Y. Mar. 31, 2023) ......................... 3, 18, 19

*In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003) .............................................. 16

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) .............................................. 10, 11

*K.A. Holdings Ltd. of NY v. Chagaris*, No. 7:07-CV-9675, 2009 WL 10685159
(S.D.N.Y. Nov. 13, 2009) .............................................. 10

*Kingstown Capital Mgmt., L.P. v. Vitek*, No. 19-CV-3170, 2020 WL 5350492
(S.D.N.Y. Sept. 4, 2020) .............................................. 11, 12

*Kitaru*, 698 F. Supp. 2d 386 (S.D.N.Y. 2010) .............................................. 15

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039 (2d Cir. 1990) .............. 16

*Mashreqbank PSC v. Ahmed Hamad Gosaibi & Bros. Co.*, 23 N.Y.3d 129 (2014) .......................... 15

*McKee Elec. Co. v. Rauland—Borg Corp.*, 20 N.Y.2d 377, 229 N.E.2d 604, 283 N.Y.S.2d 34 (1967) ...................................................................................................................................17

*Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488 (2d Cir. 2002) .......... 13

*Pehlivanian v. China Gehru Advanced Materials Grp., Ltd.*, 14-CV-9443, 2017 WL 119288 (S.D.N.Y. Mar. 29, 2017) ...................................................................................................... 3

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, (2d Cir. 2010).................................... 16

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, n.23 (1981) ................................................... 10, 11

*Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003)........................ 10, 12, 13

*Red Rock Holdings, Ltd. v. Union Bank Tr. Co.*, No. 97-CV5008 JGK, 1998 WL 474094 (S.D.N.Y. Aug. 11, 1998)...................................................................................... 14, 15

*RIGroup LLC v. Trefonsico Mgmt., Ltd.*, 949 F. Supp. 2d 546 (S.D.N.Y. 2013) .............................11

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)................................................................21

*Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410 (S.D.N.Y. 2009) .........................18

*Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422 (2007).................................... 11, 16

*Slack Technologies, LLC v. Pirani*, 598 U.S. 759, (June 1, 2023) .................................... 3, 18

*Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y. 1992)..........................................12

*Tagger v. Strauss Grp. Ltd.*, No. 18-3189, 2018 WL 4356725 (S.D.N.Y. Feb. 27, 2020) ................13

*Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428 (S.D.N.Y. 2013)..........................................11

*Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507 (S.D.N.Y. 2006).........................................15

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005) ...............................................................19

**Statutes**

Section 10 of the Securities Exchange Act................................................................................... 19

Section 11 of the Securities Act ................................................................................................ 18

Sections 11 of the Securities Act.................................................................................. 18, 19, 21

Section 12(a)(2) of the Securities Act……………………………………………………….18, 19, 21

**Rules**

CPLR 3211 ...................................................................................................................................

C.P.L.R. § 301 .................................................................................................................. 2, 16, 17

C.P.L.R. § 302 ................................................................................................................................2

Rule 9(b)......................................................................................................................................21

Rules 12(b)(2).............................................................................................................................. 1

Rules 12(b)(3)............................................................................................................................. 1

Rules 12(b)(6)......................................................................................................................... 1, 21

vi

Defendant Eyal Moshe ("Moving Defendant" or "Mr. Moshe") respectfully submits this memorandum of law in support of his Motion, pursuant to Rules 9(b), 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Amended Complaint of Lead Plaintiffs Aryeh Agam and Shimon Aharon ("Lead Plaintiffs"), Efrat Investments, LLC ("Efrat"),[1] and additional plaintiffs Rodrigue Fodjo and Dustin Green (together with Lead Plaintiffs and Efrat, "Plaintiffs"). For the reasons set forth below and in the moving papers submitted by co-defendants, Moving Defendant respectfully submits that the requested relief should be granted in its entirety, and with prejudice.

## PRELIMINARY STATEMENT

This matter concerns alleged securities violations in connection with purported purchases of the securities in Hub Cyber Security, Ltd. ("Hub"), an Israeli cyber security company that is headquartered—and incorporated in—Israel. As set forth in detail below, Hub's predecessor ("Hub Israel") was the target of a de-SPAC transaction whereby, on February 28, 2023, Mount Rainier Acquisition Corp. ("Mount Rainier") effectuated a business combination with Hub (the "Business Combination"). Mr. Moshe, the Moving Defendant, previously served as CEO of Hub Israel, but he was no longer the CEO as of February 2, 2023, prior to the completion of the Business Combination. Plaintiffs' claims fail for the reasons proffered by Hub in its Motion to Dismiss, dated May 30, 2024, and in Co-Defendants' recent Motion to Dismiss. *See* ECF Nos. 72, 86.

In addition to failing to state a claim, Plaintiffs' claims must be dismissed for numerous other dispositive reasons, including under the doctrine of *forum non conveniens*. As explained below, the Amended Complaint is devoid of facts linking any of the relevant transactions and occurrences to the State of New York. To the contrary, the allegations concern: (1) an Israeli

---

[1] Plaintiff Efrat, while listed on the caption, is not referenced in the Amended Complaint. For the avoidance of all doubt, Moving Defendant is seeking dismissal of any and all claims against him.

company (i.e., Hub), with an Israeli predecessor (i.e., Hub Israel); (2) numerous officer and director defendants located in Israel at all relevant times; (3) alleged corporate conduct that occurred entirely in Israel, pursuant to Hub Israel's corporate governance and bylaws; and (4) claims brought by some Plaintiffs who are themselves present in Israel.  Further, the many of the same Defendants in the present lawsuit are also defending against a first-filed class action Israel, which concerns substantially similar  allegations and is an adequate forum to resolve securities disputes, as well as disputes concerning the duties of corporate officers.  Courts have routinely held, under such circumstances, that the doctrine of *forum non conveniens* requires dismissal of all claims in their entirety, because to proceed in New York would not serve the interests of justice.

Not surprisingly, Plaintiffs—who have not specifically alleged any jurisdictional facts— have also failed to plead or establish personal jurisdiction over Mr. Moshe.  The Amended Complaint does not mention a single occurrence in New York, let alone one involving Mr. Moshe. Nor does it claim, because it cannot, that Mr. Moshe is "at home" in this state.  Under such circumstances, Plaintiffs have not—and cannot—furnish a predicate for personal jurisdiction under either C.P.L.R. § 301 or C.P.L.R. § 302.

Although this Court need not even reach the merits of this action due to the grave jurisdictional failings discussed above, as Hub also explained in its Motion to Dismiss, Plaintiffs' Complaint also fails to establish that they have standing to assert what are—in any event— substantively insufficient claims under Sections 11 and 12(a)(2).  In that regard, the Amended Complaint is entirely vague as to *which* transactions and purchases form the basis for Plaintiffs' claims; this fails to meet the requirement, imposed by the Supreme Court of the United States, that Plaintiffs *plead and prove* that they purchased shares traceable to the allegedly defective registration statement.  *See Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 767-68 (June 1,

2

2023); *see also In re Carlotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 80 (S.D.N.Y. Mar. 31, 2023) ("Those district courts [in the Second Circuit] that have considered [the tracing question have] required plaintiffs to plead as well as prove that their shares were issues pursuant to the misleading registration statement") (internal quotation omitted).

None of the certifications are annexed to the Amended Complaint as required; indeed, the original Complaint attaches only a single vague certification by Plaintiff Efrat, *see* ECF No. 1-1, and the only other certifications were submitted as part of the motion to appoint Efrat as lead counsel. *See* ECF No. 20.

For these reasons, and the reasons stated in co-defendants' memorandum of law, Mr. Moshe respectfully requests that this Court dismiss the Amended Complaint as to him, in its entirety, and with prejudice.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### I.    The Relevant Parties and the Business Combination

Plaintiffs commenced this action in connection with the alleged purchase of securities in Hub. *See generally* AC.[2]  Hub is the successor of Hub Cyber Security Company (Israel) Ltd. ("Hub Israel"), which was formed in 2017 by veterans of intelligence units of the Israeli Defense Forces, and which was previously listed on the Tel Aviv Stock Exchange (TASE).  AC, ¶¶ 2, 4.

---

[2] The conclusory allegations of the Amended Complaint are assumed to be true solely for purposes of this Motion.  In addition to Plaintiffs' allegations, this Court should properly consider (1) all public documents annexed to the Declaration of Matthew DeFrancesco in Support of Defendant Eyal Moshe's Motion to Dismiss, sworn to on May 31, 2024 (the "DeFrancesco Decl."). On a motion to dismiss, the Court "may consider documents that are referenced in the complaint, documents that the plaintiffs relied on when bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken." *Pehlivanian v. China Gehru Advanced Materials Grp., Ltd.*, 14-CV-9443, 2017 WL 119288, at *6 (S.D.N.Y. Mar. 29, 2017); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *ATSI Commc'ns, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting that the Court may consider SEC filings, among other things).

Hub Israel was formed to provide, *inter alia,* cybersecurity computing appliances and cyber security services. AC, ¶ 46. Hub (and its predecessor, Hub Israel) are both headquartered and incorporated in Israel.

Mr. Moshe previously served as CEO of Hub Israel, but he was no longer the CEO as of February 2, 2023, AC, ¶ 24, and his name was removed from Hub Israel's website entirely as of at least February 26, 2023. AC, ¶ 72. Mr. Moshe resides in Israel, and as is relevant to this motion, previously worked at the offices of Hub Israel in Tel Aviv. Plaintiffs have not offered any facts indicating that he has any connection to New York, or to transactions or occurrences that took place in New York. *See generally* AC. In the same vein, the majority of the individual Defendants appear to reside in Israel. *See* ECF Nos. 55-63; *see also* DeFrancesco Decl., Exh. A, at 52 ( "Most of HUB's directors or officers are not residents of the United States and most of their and HUB's assets are located outside the United States."). These include Hub Israel's Chairman, Mr. Moskovich, who replaced Mr. Moshe as CEO on February 2, 2023. AC, at ¶ 66.

Hub Israel ultimately became the target of Mount Rainier Acquisition Corp. ("Mount Rainier"), a special purpose acquisition company that was incorporated in Delaware on February 10, 2021, for the purpose of effectuating a business combination. *See* AC, at ¶¶ 40-41. The IPO for Mount Rainier was consummated on October 7, 2021. *See id.* Following the IPO, on March 23, 2022, Mount Rainier and Hub Israel announced that they had executed a business combination agreement (the "Business Combination" or "de-SPAC merger"). AC ¶¶ 1-2, 47.

In connection with the same, Hub Israel (and Hub) filed a Form F-4 Registration Statement. *See* DeFrancesco Decl., Exh. A; *see also* AC, n. 1. This Registration Statement (and the other public filings incorporated by reference therein), according to Plaintiff's conclusory claims, contain inaccurate and/or misleading and/or untrue statements of material fact or omissions of

material fact.  AC, n. 1, ¶¶ 136, 145.

Among other things, the Registration Statement provided that shareholders in Mount Rainier and Hub Israel would receive Hub securities that were newly registered.  AC ¶¶ 3 n.1, 52-53.  On October 31, 2022, Hub Israel announced that its shareholders and option holders had voted to approve the Business Combination, and, accordingly, that Hub Israel's delisting from TASE would occur after the business combination (i.e., in February 2023).  AC ¶ 54.  On December 9, 2022, Mount Rainier and Hub Israel filed a Prospectus.  AC ¶¶ 3 n.1, 55; *see also* DeFrancesco Decl., Exh. B.  On January 4, 2023, Mount Rainer's shareholders also voted to approve the Business Combination.  AC, ¶ 57.  Approximately 99.2% of outstanding shares in Mount Rainier were redeemed.  AC, ¶ 58.   On January 26, 2023, Hub Israel and Mount Rainier announced that the Business Combination was expected to close by February 27, 2023.  AC, ¶ 59.  On February 28, 2023, Hub announced that the Business Combination had been consummated, and securities for the new entity, Hub, began trading on NASDAQ on March 1, 2023.

## II.    The Related, First-Filed Action in Israel Alleging Misstatements in the Registration Statement

In March 2023, a related class action was commenced in the District Court in Tel Aviv Israel by applicant Avner Majhaz (the "Israel Litigation").  *See* Declaration of Ari M. Berman ("Berman Aff.") (ECF No. 89), Exh. C (ECF No. 88-3).  This class action asserted securities law claims under Israeli law against Hub Cyber Security Ltd., as well as individual Defendants Mr. Moshe, Azriel Moscovich, Zeev Zell,  Motti Franco, Moshe Raines, Levana Shifman, Yaron Kanyazer, Zigmund Belleluband.  *See id.* at 1; *see also* AC, at ¶ 77.  Among other things, Plaintiffs in the Israel Litigation allege that there were misrepresentations contained in the Registration Statement concerning PIPE financing for the Business Combination—which, as noted below—are substantively identical to Plaintiffs' allegations in the present action concerning the same.  *See*

*generally* Berman Aff, Exh. C.  Currently, the Israel Litigation is still pending before the Court in Tel Aviv, and many of the individual Defendants in this action are represented therein.  *See, e.g.,* Declaration of Hagit Blaiberg (ECF No. 90), at ¶ 2.

### III.    Plaintiffs' Allegations Concerning the PIPE Financing Do Not Establish a Violation of Securities Law

As with the Israel Action, the crux of Plaintiffs' grievance in the present action concerns the PIPE financing for the Business Combination.  According to Plaintiffs, on March 23, 2022, prior to the Registration Statement, both Hub Israel and Mount Rainier issued a press release that stated that they expected PIPE Financing.  AC, ¶ 48.  The later-filed Registration Statement said that PIPE investors had "committed to invest" $50 million USD as the minimum investment commitment required for closing.  *Id.* at ¶ 69.  It further stated that the "PIPE investors have agreed to purchase" five million ordinary shares at a price of $10.00/share.  *Id.*   The Registration Statement further provided that subscription agreements were executed concurrently with the Business Combination Agreement.  *See* DeFrancesco Decl., Exh. A, at 168.

Plaintiffs do not allege facts showing that Hub Israel falsely represented the existence of these subscription agreements; instead, they seemingly take issue with the fact that, subsequently, counterparties to those agreements ultimately—and unilaterally—reneged with respect to their contractual obligations.  Notably, neither the press release, nor the Registration Statement, promises that the counterparties would not breach their obligations under those agreements.

After the breach of the subscription agreements, on February 28, 2023, Hub properly and timely disclosed their breach by the counterparties, when Hub stated that the PIPE financing was not consummated.  *Id.* at ¶ 73.  Relatedly, as Hub explained in its motion to dismiss, Defendants are still in negotiations with the PIPE investors, including Israeli investors, seeking to enforce their contractual rights under the subscription agreements. *See* ECF No. 72, at 4.

Importantly, the Registration Statement contained cautionary language pertaining generally to the ability to raise funds, as well as the typical cautionary language concerning future, forward-looking events. Among other things, it cautioned that "Hub may need to raise additional funds in the future" and "*these funds may not be available*." DeFrancesco Decl., Exh. A, at 23 (emphasis added). It further disclosed that "RNER may not have sufficient funds to consummate the Business Combination." *Id.* at 13. Additionally, the Registration Statement advised investors that it contained "forward-looking statements" that, of course, involve substantial risks and uncertainties. *Id.* at 71. In its investor presentation, around the same time, similar disclosures were included. *See* DeFrancesco Decl., Exh. C (cautioning that the company may face "unforeseen difficulties in realizing the Company's intentions and plans").

## IV. The Registration Statement's Representations Concerning Hub's Business Were Non-Actionable Puffery and Opinion and Were Not Misleading

Plaintiffs also attempt to allege that the Registration Statement was misleading because it stated that Hub Israel was an "established business, with established products, client base, and revenue stream," and that Hub "[was] cash positive with a range of new products providing significant growth potential." AC, at ¶ 124. According to Plaintiffs, Hub did not, in fact, have a "mature" product, based upon their reading of a January 2024 article recounting an interview with Defendant Moscowitz. AC, at ¶ 124.

Plaintiffs do not even attempt to explain (and indeed they cannot) how these statements were allegedly misleading in light of the numerous cautionary statements in the same Registration Statement, including warning potential investors that among other things: (1)"Hub's products and solutions have occasionally contained, and may in the future contain, undetected defects or errors, . . . due to defects or errors that Hub fails to detect . . . ."; (2) "If Hub's products do not effectively interoperate with its customers' existing or future IT infrastructures, implementations of Hub's

7

products could be delayed or cancelled, which could harm its business."; (3) "Hub's ability to introduce new products, features, integrations, and enhancements is dependent on adequate research and development resources."; (4) "HUB may not deliver or maintain interoperability quickly or cost-effectively, or at all . . . . If HUB fails to maintain compatibility of its products with its customers' internal networks and infrastructures, its customers may not be able to fully utilize its network and products, and HUB may, among other consequences, lose or fail to increase its market share and number of customers and experience reduced demand for its products, and its business, financial condition and results of operations could be materially adversely affected."; (5)"Hub's limited operating history makes it difficult to evaluate its business and future prospects and increases the risk of your investment."; and (6) "Hub's ability to introduce new products, features, integrations, and enhancements is dependent on adequate research and development resources." DeFrancesco Decl., Exh. A, at 11, 28, 71.

V.      **Plaintiff's Allegations Concerning Alleged Corporate Malfeasance**

Finally, Plaintiffs further allege that on April 19, 2023, after the Business Combination was completed, Hub disclosed that it had appointed a special committee of independent directors to "investigate and assess certain allegations of potential misappropriation and other potential fraudulent actions raised against a former senior officer…" AC, at ¶ 83. Hub further stated that it was investigating "certain unexplained expenses . . . estimated at approximately NIS 2.5 million." *Id.* The following month, on May 1, 2023, Hub stated that it "believe[d] the amounts in question [would] not be material when compared to the Company's financial position, operating losses and cash flows." *Id.* at ¶ 87. Later, on May 15, 2023, Hub further explained that the investigation was commenced after "certain matters . . . were identified by the new management team." *Id.* at ¶ 88. It also stated that, "[b*]ased on preliminary findings from the Special committee, [it] believe[d]*

*that the investigation [would] not have a material impact on the financial statements."* AC ¶ 88

(emphasis added).[3]

Plaintiffs do not explain why the foregoing matters, even if true, were material, or

misleading. *See generally* AC. Nor do Plaintiffs reference the numerous disclosures in the

Registration Statement relating to Hub's internal controls, which, combined with Hub's other

disclosures, adequately informed Plaintiffs about the risk in investing:

- "Hub Security has identified material weakness in its internal control over financial reporting. If HUB Security's remediation of the material weakness is not effective, or it fails to develop and maintain effective internal controls over financial reporting, HUB Security's ability to produce timely and accurate financial statements or comply with applicable laws and regulations could be impaired." DeFrancesco Decl., Exh. A, at 12.

- "HUB's internal controls over financial reporting may not be effective and its independent registered public accounting firm may not be able to certify as to their effectiveness, which could have a significant and adverse effect on HUB's business and reputation." *Id.* at 72.

As set forth herein, none of Plaintiffs' theories of liability provide a cognizable basis for

Plaintiffs to assert claims against Mr. Moshe under Sections 11, 12, or 15 of the Securities Act—

and, in any event—Plaintiffs have failed to establish either personal jurisdiction or proper venue.

## ARGUMENT

### I.    This Action Must be Dismissed on the Grounds of *Forum Non Conveniens*

To survive a Rule 12(b)(3) motion to dismiss, "the plaintiff has the burden of establishing

that it has chosen a proper venue." *K.A. Holdings Ltd. of NY v. Chagaris*, No. 7:07-CV-9675, 2009

WL 10685159, at *5 (S.D.N.Y. Nov. 13, 2009).

---

[3] On August 15, 2023, Hub also filed its 2022 Annual Report, disclosing allegations by the company that, *inter alia*, Mr. Moshe and another officer had purportedly stolen approximately $582,000 USD. AC, ¶¶ 91-92. Mr. Moshe denies these allegations and maintains that Hub currently owes him [millions] of dollars in unpaid compensation, which is currently being litigated in Israel via an action that was first commenced against Mr. Moshe's spouse before the Labor Court in Tel Aviv. *See* Hub Form 20-F, at 1 *available at* XBRL Viewer (sec.gov).

This action should be dismissed under the doctrine of *forum non conveniens*, as the Amended Complaint's allegations bear no material relationship to the venue of the Southern District of New York, particularly where, as here, the allegations overwhelmingly concern matters that primarily took place in Israel, and where there is a first-filed litigation in Israel dealing with substantively identical claims.  This Court has broad discretion to decline to exercise jurisdiction "whenever it appears that [a] case may be more appropriately tried in another forum, either for the convenience of the parties or to serve the ends of justice." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 67 (2d Cir. 2003).  This is such a case; dismissal is proper because the "balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant[s] or the court."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, n.23 (1981).

In addressing the query of whether a *forum non conveniens* dismissal is appropriate, a court must consider: (1) the degree of deference due to plaintiffs' choice of forum; (2) whether there is an adequate alternative forum; and, if so, (3) whether the balance of the public and private interests warrants dismissal.  *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73-74 (2d Cir. 2001) (*en banc*). In weighing these factors, a court is not required to take the plaintiff's allegations as true, *Construtora Norbeto Oderbrecht S.A. v. Gen. Elec. Co.*, No. 07- CV-8014 (CM), 2007 WL 3025699, at *1 (S.D.N.Y. Oct. 12, 2007), but rather may consider facts and evidence outside the pleadings and submitted by affidavit.  *Alcoa S.S. Co. V. M/V Nordic Regent*, 654 F.2d 147, 158 (2d Cir. 1980) (*en banc*).

### A.  Plaintiff's Choice of Forum  is Not Entitled to Deference under the Circumstances

Courts are (appropriately) inclined to reject a plaintiff's choice of forum when there is a related, first-filed action abroad.  *See, e.g., Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 437 (S.D.N.Y. 2013) (noting "deference to the plaintiffs' choice of forum must be weighed in light of the fact that another action was filed in a different forum); *Kingstown Capital Mgmt., L.P.*, No.

19-CV-3170, 2020 WL 5350492, *8-9 (noting presence of previously filed and substantially similar litigation in foreign country raised "indicia of forum shopping").

Plaintiffs' choice of forum also should be given less deference, where, as here, Plaintiffs' "choice is not its home forum" and thus "the presumption in the plaintiff's favor applies with less force," for the assumption that the chosen forum is appropriate is then "less reasonable." *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) (quoting *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235, 255-256, 102 S. Ct. 252, 70 L. Ed. 2d 419. pp. 5-6); *see also* ECF No. 23-3 ¶¶ 2-4 (plaintiffs Agam and Aharon reside in Israel and were instructed by their attorney to bring their dispute to the United States); *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) ("the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands").

Moreover, where plaintiffs engage in matters involving international business, and a cause of action does not have significant ties to a chosen forum, courts are appropriately hesitant to give deference to plaintiffs' chosen forum. *See, e.g., RIGroup*, 949 F. Supp. 2d 546, 553 (N.D.N.Y. 2013) (noting the "principle that where an American plaintiff chooses to invest in a foreign country . . . the plaintiff's ability to rely upon citizenship as a talisman against *forum non conveniens* dismissal is diminished")*; Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1073-74 (S.D.N.Y. 1992) (U.S. resident's decision to do business with Israeli defendant reduced deference to forum choice).

In addition, a court should afford diminished deference to a plaintiff's chosen forum where the location of evidence and foreign defendants is abroad. *See, e.g., Kingstown Capital Mgmt., L.P. v. Vitek*, No. 19-CV-3170, 2020 WL 5350492, *8-9 (S.D.N.Y. Sept. 4, 2020) (foreign defendants, contests to venue, and location of evidence abroad "significantly diminish" deference to plaintiff's choice of forum).

Here, Plaintiffs cannot meaningfully dispute that:  (1) most, if not all, of the evidence relating to this matter is abroad, given that Plaintiffs have sued an Israeli corporation and Israeli individual defendants, nearly all of whom reside in Israel; (2) Plaintiffs willingly availed themselves to Israel by virtue in their investment in a transaction that had the sole purpose of investment in an Israeli company, and (3) the first-filed Israel Litigation is inextricably intertwined because it is a class action asserting substantially the same allegations.

### B.  Israel is an Available and Adequate Alternative Forum

An alternative forum is adequate if "[(1)] the defendants are amenable to service of process there, and [(2) the forum] permits litigation of the subject matter of the dispute." *Pollux*, 329 F.3d at 75.

Here, Israel easily satisfies both criteria and is clearly an adequate alternative forum.  First, the parties are subject to the jurisdiction of Israel and are amenable to service of process.  The vast majority of Defendants reside in, and have significant contacts with, Israel—including Hub, which is headquartered and incorporated there.  Second, there is also no question that a Court in Israel would constitute an adequate forum; not only has a first-filed parallel dispute been litigated in Israel since [2023], Israel's judicial system (like that of the United States) is widely recognized as embodying the fundamental principles of fairness, including public hearings, reasoned judgments, independence and impartiality of the courts, the right to be heard, and the right to appeal.  *See, e.g.*, *Tagger v. Strauss Grp. Ltd.*, No. 18-3189, 2018 WL 4356725, at *5-6 (S.D.N.Y. Sept. 12, 2018) (dismissing on *forum non conveniens* grounds; Israel was adequate alternative forum); *Core Software Tech., Inc. v. Imagesat Int'l N.V.*, No. 08-CV- 7017(DC), 2010 WL 21173, at *3 (S.D.N.Y. Jan. 5, 2010) (dismissing on *forum non conveniens* grounds ; "no impediment to suit in Israel"); *CCS Int'l v. ECI Telesystems*, No. 97-CV-4646, 1998 WL 512951, at *6 (S.D.N.Y. Aug. 18, 1998) (same).

### C. The Private and Public Factors Overwhelmingly Favor Litigating this Matter in Israel

The third and final question in the *forum non conveniens* analysis is whether, on balance, New York or Israel "will be most convenient and will best serve the ends of justice." *Alfadda v. Fenn*, 159 F.3d 41, 46 (2d Cir. 1998) (internal quotations omitted). Here, the interests of justice support dismissing this case in favor of the first-filed Israel Litigation.

#### 1. Private Interest Factors in Support of Israel as the Chosen Forum

The private interest factors "pertain[] to the convenience of the litigants," *Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*, 311 F.3d 488, 500 (2d Cir. 2002), and include ease of access to evidence, the cost for witnesses to attend trial, the availability of compulsory process and other factors that might shorten trial or make it less expensive. *Capital Currency Exch. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir. 1998); Pollux, 329 F.3d 64, 75 (2d Cir. 2003).

Here, the dispute concerns an Israeli company, which is headquartered and has an office in Israel, with numerous individual Defendants who reside in Israel, whose alleged actions occurred *in Israel*. These Defendants will all have to engage in expensive travel if this matter is litigated in this forum, which has no material connection to this matter. Even ignoring this, this matter also could require discovery from numerous non-parties who also reside in Israel. As Plaintiffs' own complaint admits, for example, the entities involved in the PIPE financing were also Israeli companies. *See* AC, at ¶ 79. These non-parties should not be dragged into a Court in New York, which has few—if any—ties to this matter. Equally important, it is certain that relevant documentary evidence, including documents and records held by Hub are maintained in Israel. Considering these claims in New York may therefore require the parties to engage in extensive (and expensive) use of translators. By contrast, Moving Defendant is unaware of any material

number of potential witnesses who are located in New York, and neither Hub nor any of its current or former employees are "at home" in this forum. Ironically, none of the plaintiffs are alleged to be located in New York either, and two are Israeli residents. *See, e.g.,* ECF No. 23-3 ("I Aryeh Agam, reside in Israel"); *see also id.* ("I, Shimon Aharon, reside in Israel.").

Finally, all but two individual Defendants (including Mr. Moshe) are also already litigating the first-filed Israel Litigation, addressing substantially related claims; Plaintiffs cannot credibly claim that New York is more convenient. *Cf. First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp. 2d 443, 453 (S.D.N.Y. 2001) (granting *forum non conveniens* dismissal where related litigation was pending in defendant's proposed alternative forum). It would be inequitable "to be forced to conduct a duplicative litigation in New York when the very same issues are already being litigated in Israel." *Red Rock Holdings, Ltd. v. Union Bank Tr. Co.*, No. 97-CV5008 JGK, 1998 WL 474094, at *9 (S.D.N.Y. Aug. 11, 1998), *aff'd* as modified, 181 F.3d 83 (2d Cir. 1999) (dismissing on *forum non conveniens* grounds in favor of litigation in Israel).

### 2. Public Interest Factors Further Support Israel as the Chosen Forum

The "public interest factors" also favor Israel. Such factors relate to concerns regarding having local disputes settled locally, practical challenges for the courts and juries, and the forums' interest in the dispute. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947) (enumerating factors); *Capital Currency*, 155 F.3d at 609. This District is not "local," and New York has no cognizable public interest where, as here, the dispute does not meaningfully relate to any transactions or occurrences within New York. *See Mashreqbank PSC v. Ahmed Hamad Gosaibi & Bros. Co.*, 23 N.Y.3d 129, 138-39 (2014) (granting *forum non conveniens* dismissal where "[n]o party is a New York resident; no relevant conduct . . . occurred in New York").

Israel, on the other hand, undoubtedly has a strong interest because it concerns an Israeli corporation that is subject to the Companies Law of Israel, to which, as noted in the Registration

Statement, the defendant officers and directors, such as Mr. Moshe, are regulated, including with respect to alleged corporate malfeasance. *See* DeFrancesco Decl., Exh. A, at 114. Israel is an adequate and appropriate forum even for cases that involve claims under U.S. securities laws. *See, e.g., Alfadda v. Fenn*, 159 F.3d 41, 46-49 (2d Cir. 1998) (affirming *forum non conveniens* dismissal of U.S. securities law claims in favor of a French forum). This is particularly the case where, as here, this matter involves an Israeli business, and the first-filed Israel Litigation has been overseeing substantially the same claims for sixteen months. *See, e.g.*, *Turedi v. Coca Cola Co.*, 460 F. Supp. 2d 507, 528 (S.D.N.Y. 2006) (dismissing on *forum non conveniens* grounds where Turkey had greater interest and Turkish courts were already considering relevant claims); *Red Rock Holdings*, 97-CV-5008, 1998 WL 474094, at *10 (S.D.N.Y. Aug. 10, 1998) (*forum non conveniens* dismissal granted where Israeli action was pending and U.S. action would result in significant duplication of legal efforts); *Diatronics, Inc. v. Elbit Computs., Ltd.*, 649 F. Supp. 122, 129-30 (S.D.N.Y. 1986) (same).

Moreover, duplicative parallel litigation also presents a risk of inconsistent judgments, which further weighs in favor of dismissal. *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993) (affirming *forum non conveniens* dismissal and noting risk of inconsistent judgments posed by parallel litigation).

I.     **Alternatively, Plaintiffs' Claims Against Moving Defendant Must be Dismissed for Lack of Personal Jurisdiction**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31, 127 S. Ct. 1184, 167 L. Ed. 2d 15 (2007) (internal citation omitted). On a motion to dismiss pursuant to Rule 12(b)(2), the "plaintiff bears the burden of demonstrating personal

jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (internal citation omitted).  Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).

### A.    Plaintiffs Have Not Met Their Burden to Establish Personal Jurisdiction Under C.P.L.R. § 301

General jurisdiction is governed by C.P.L.R. § 301, which only allows a court to exercise personal jurisdiction over a nondomiciliary defendant when he is "engaged in such a continuous and systematic course of doing business as to warrant a finding of its presence in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (internal quotation marks and citations omitted).  To comport with due process, the contacts must be "so 'continuous and systematic,' judged against [his] national and global activities, that [he] is 'essentially at home' in th[e] state." *Gucci Am., Inc. v. Li*, 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).

Here, Plaintiffs' Amended Complaint lacks any facts or allegations sufficient to make a *prima facie* showing that Mr. Moshe has such continuous and systematic contacts with New York such that he is "at home" in this state—because he is not.  In fact, Plaintiffs do not even specifically allege that personal jurisdiction even exists as to Mr. Moshe; in that regard, Plaintiffs' *sole* allegation as to jurisdiction is impermissible group pleading.  *See* AC, at ¶ 18.  This vague, boilerplate allegation is patently insufficient under C.P.L.R. § 301.

### A.    Plaintiffs Have Further Failed to Establish a Basis for Specific Jurisdiction under C.P.L.R. § 302(a)(1)

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide: (1) whether the defendant transacts any business in New York; and if so, (2) whether th[e] cause

16

of action arises from such a business transaction." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (quotations and alteration omitted).  In construing section 302(a)(1)'s "transacts business" language, "'[t]he overriding criterion' necessary to establish a transaction of business is 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York.'" *Ehrenfeld v. Bin Mahfouz*, 9 N.Y.3d 501, 508, 881 N.E.2d 830, 851 N.Y.S.2d 381 (2007) (quoting *McKee Elec. Co. v. Rauland—Borg Corp.*, 20 N.Y.2d 377, 382, 229 N.E.2d 604, 283 N.Y.S.2d 34 (1967)).  "Purposeful activities are those with which a defendant, through volitional acts, 'avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 880 N.E.2d 22, 849 N.Y.S.2d 501 (2007) (quoting *McKee*, 20 N.Y.2d at 382).  "A connection that is merely coincidental is insufficient..."  *Best Van Lines, Inc.*, 490 F.3d at 249 (internal quotation marks omitted).

As set forth above, Plaintiffs have failed to  articulate basis for personal jurisdiction as to Moving Defendant.  Plaintiffs' allegations facially concern transactions and occurrences that took place in Israel, and merely allege that Mr. Moshe worked for Defendant Hub Israel—a Company headquartered and incorporated in Israel. *See* SAC, at ¶ 23.  If anything, Plaintiffs' own Complaint merely establishes that Mr. Moshe's alleged role bore a nexus to Israel—not New York.  Finally, Plaintiffs have also failed to assert, or establish, any other basis for the assertion of personal jurisdiction under the remaining subsections of C.P.L.R. § 302.

## II.    In Any Event, Plaintiffs Lack Standing to Assert Their Section 11 and 12 Claims, and as Such, Cannot Assert a Section 15 Claim

In order to survive dismissal as to their claims under Sections 11 and 12(a)(2) of the Securities Act, Plaintiffs must establish that they have standing.  The Supreme Court recently held that pleading Section 11 standing "requires a plaintiff to *plead and prove* that [he or she] purchased

shares traceable to the allegedly defective registration statement." *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 767-68 (June 1, 2023); *see also In re Carlotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 80 (S.D.N.Y. Mar. 31, 2023) ("those district courts [in the Second Circuit] that have considered [the tracing question have] required plaintiffs to plead as well as prove that their shares were issues pursuant to the misleading registration statement") *quoting In re Global Crossing*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003). As this Court recently held in *In re Carlotz, Inc. Sec. Litig.*, the strict pleading burden imposed on plaintiffs in Section 11 cases is due to the fact that, unlike claims pled under Section 10 of the Securities Exchange Act, Section 11 claims dispense with the requirements of scienter. 667 F. Supp. at 80 (internal citations and quotations omitted). Notably, the Second Circuit has held that plaintiffs "can only challenge the same registration under which [their] securities were issued;" they may not argue, for example, that securities purchased *prior* to a registration statement provide standing because the registration statement's corporate event somehow fundamentally transformed their pre-purchased securities. *See In re Carlotz, Inc. Sec. Litig.*, 667, F. Supp. 3d at 81, *citing DeMaria v. Andersen*, 318 F.3d 170 (2d Cir. 2003).

With respect to Section 12(a)(2), in *Gustafson v. Alloyd Co.,* the Supreme Court held that Section 12(a)(2) *does not apply to secondary market transactions*, inasmuch as the statute's inclusion of the term "prospectus," evinces and intent to limit the Section's scope *solely* to the initial public offering. *See* 513 U.S. 561, 571, 115 S. Ct. 1061, 131 L. Ed. 2d 1 (1995), *see also Yung v. Lee*, 432 F.3d 142, 147-49 (2d Cir. 2005) (holding that § 12(a)(2) relief is only available for purchasers of securities in public offerings); *Friedus v. Barclays Bank PLC*, 734 F.3d 132, 141 (2d Cir. 2013) ("In order to have standing under § 12(a)(2), . . . plaintiffs must have purchased securities directly from the defendants."). To this point, courts within this district have been appropriately wary of allegations that a plaintiff purchased a security "'pursuant or traceable to"

an offering, as compared to simply 'pursuant to an offering,' because it is ambiguous whether the plaintiff is alleging they were a direct or indirect purchaser.'" *Garnett v. RLX Tech. Inc.*, 21-CV-5125, 2022 WL 4632323, *84 (S.D.N.Y. Sept. 30, 2022) (internal citations omitted).

In the present case, Plaintiffs have failed to allege facts sufficient to conclude that they have standing to assert claims under Sections 11 and 12(a)(2) because none of them have pled and proved that their shares were issued pursuant or traceable to the Registration Statement or pursuant to the initial public offering. For example, Lead Plaintiffs Aryeh Agam and Shimon Aharon, in the certifications, that they previously submitted in this litigation (but did not attach to the Amended Complaint), appear to indicate that they purchased stock in Hub *after* the Business Combination (*i.e.*, not pursuant to the initial public offering), and the certifications do not trace the shares to the Registration Statement, including with respect to the alleged assigned claims. As for "Additional" Plaintiffs Rodrigue Fodjo, Dustin Green, Gerard Smith, and Reese Tripp, each of those Plaintiffs allege that they purchased shares in Mount Rainier, which means those purchases were neither in connection with the Registration Statement nor the initial public offering. *See* ECF 20-5, 20-6. It appears they also purchased shares in the new entity, Hub, following the business combination, throughout March 2023, but, again, it does not appear that these purchases were in connection with the initial public offering, and it is impossible, on the record before the Court, to trace these purchases to the Registration Statement. *See* ECF Nos 20-5, 20-6. As for Plaintiff Efrat, it appears it also purchased shares in Mount Rainier (so those purchases are not in connection with the initial public offering or Registration Statement). *See* ECF No. 20-6. As for Efrat's purchases of Hub Israel occurring in March 2023 (which curiously do not indicate that any shares were purchased—only that certain shares in Hub may have been "received"), the Amended Complaint still fails to plead and prove that the purchases were in connection with the Registration

19

Statement or the initial public offering.

This Court should not permit Plaintiffs' Complaint to survive dismissal when Plaintiffs have not bothered to delineate which transactions form the basis for their claims.[4]  For these reasons, and the reasons stated in the co-defendants' moving papers, Plaintiffs lack standing to assert their claims under Section 11 and Section 12(a)(2).  As a corollary, Plaintiffs' Section 15 claim would also be extinguished, as a matter of law.  *See Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) (because the district court dismissed primary securities claims under Section 11 and 12(a)(2), "secondary claims" under Section 15 were also properly dismissed because "claims under § 15 . . . are necessarily predicated on a primary violation of securities law").

## III.    Even Ignoring Plaintiffs' Lack of Standing, Plaintiff's Complaint is Also Devoid of Facts Sufficient to Sufficiently State a Claim for Relief as to Each Alleged Violation

Plaintiffs' Amended Complaint also fails to state a claim for relief as to each and every cause of action. For the sake of brevity, Mr. Moshe  joins in  and incorporates by reference the arguments set forth in the Company's Motion to Dismiss pertaining to Plaintiffs' failure to identify actionable misstatements for their Section 11 and 12 claims, which also apply to Moving Defendant, as well as the Motion to Dismiss filed by Co-Defendants.  *See* ECF Nos. 72, 86.

## CONCLUSION

For the reasons set forth above, and for the reasons set forth in co-Defendants' moving papers. Mr. Moshe  respectfully requests that this Court dismiss Plaintiffs Complaint as against him, in its entirety and with prejudice, and for such other relief as this Court deems just and proper.

---

[4] In the event this Court finds that some of the transactions in question are traceable to a Registration Statement in Hub, it should—alternatively—dismiss any claims for damages that are based on ineligible purchases.

Dated May 31, 2024
New York, NY

**PIERSON FERDINAND LLP**

*/s/ Aurora Cassirer*_____
Aurora Cassirer
Christina H. Bost Seaton
Matthew DeFrancesco
1270 Avenue of the Americas
Seventh Fl.-7050
New York, NY 10020
Tel.: (917)-817-6617
Aurora.cassirer@pierferd.com
Matthew.defrancesco@pierferd.com
*Counsel for Defendant Eyal Moshe*

21