**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE HUB CYBER SECURITY LTD.,

Master File No. 1:23-cv-05764-AS

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EYAL MOSHE'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   STATEMENT OF FACTS ..................................................................................... 2

      A.    The Registration Statement Registered New Hub Securities ................................ 2

      B.    Each Plaintiff Purchased Or Otherwise Acquired Newly Registered Hub
            Securities................................................................................................. 3

III.  ARGUMENT...................................................................................................... 4

      A.    Dismissal Under *Forum Non Conveniens* Is Not Warranted................................ 4

            1.    This District Has A Strong Interest In Adjudicating This Action
                  Regarding U.S.-Listed Securities................................................... 4

            2.    Israel Is Not An Adequate Alternative Forum To Enforce U.S.
                  Securities Law............................................................................. 7

            3.    Even If Israel Were An Adequate Forum, The Balance Of Factors
                  Does Not Support Dismissal.......................................................... 9

      B.    This Court Has Personal Jurisdiction Over The Individual Defendants
            Because They Signed The Registration Statement .............................................. 11

      C.    Plaintiffs Have Standing To Assert Securities Act Violations ............................. 12

      D.    Moshe Makes No Argument For 12(b)(6) Dismissal ......................................... 16

IV.   CONCLUSION.................................................................................................. 17

i

# TABLE OF AUTHORITIES

## CASES

*Alfadda v. Fenn*,
  159 F.3d 41 (2d Cir. 1998).................................................................................. 5, 8

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
  994 F.2d 996 (2d Cir. 1993)................................................................................ 5, 11

*Cap. Holdings, Inc. Sec. Litig.*,
  2022 WL 4539119 (S.D.N.Y. Sept. 28, 2022)................................................... 4, 9, 10

*CCS Int'l v. ECI Telesystems*,
  1998 WL 512951 (S.D.N.Y. Aug. 18, 1998) ...................................................... 8

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
  450 F. Supp. 3d 379 (S.D.N.Y. 2020)................................................................. 12

*Core Software Tech., Inc. v. Imagesat Int'l N.V.*,
  2010 WL 21173 (S.D.N.Y. Jan. 5, 2010) ........................................................... 8

*Das v. Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018)................................................................. 12

*DeMaria v. Andersen*,
  153 F. Supp. 2d 300 (S.D.N.Y. 2001)................................................................ 14

*First Union Nat'l Bank v. Banque Paribas*,
  135 F. Supp. 2d 443 (S.D.N.Y. 2001)................................................................ 10

*In re Banco Bradesco S.A. Sec. Litig.*,
  277 F. Supp. 3d 600 (S.D.N.Y. 2017)................................................................ 11

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017).................................................................. 16

*In re CarLotz, Inc. Sec. Litig.*,
  667 F. Supp. 3d 71 (S.D.N.Y. 2023).................................................................. 1, 13, 14

*In re CarLotz, Inc. Sec. Litig.*,
  2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) ................................................... 14

*In re CINAR Corp. Sec. Litig.*,
  186 F. Supp. 2d 279 (E.D.N.Y. 2002) ............................................................... 4, 10, 11, 12

*In re Glob. Crossing, Ltd. Sec. Litig.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003) .................................................................. 14

*In re Livent, Inc. Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999) .................................................................... 8

*In re Poseidon Concepts Sec. Litig.*,
   2016 WL 3017395 (S.D.N.Y. May 24, 2016) ...................................................... 10

*In re Wachovia Equity Sec. Litig.*,
   753 F. Supp. 2d 326 (S.D.N.Y. 2011) .................................................................. 12

*Iragorri v. United Techs. Corp.*,
   274 F.3d 65 (2d Cir. 2001) ........................................................................... 4, 7, 9

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
   2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020) .................................................... 5, 7

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) .............................................................................................. 6

*Mucha v. Volkswagen Aktiengesellschaft*,
   540 F. Supp. 3d 269 (E.D.N.Y. 2021) ............................................................ 11, 12

*Philip Servs. Corp.*,
   294 F.3d 21 (2d Cir. 2002) .............................................................................. 4, 9

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) .............................................................................................. 8

*Red Rock Holdings, Ltd. v. Union Bank Tr. Co.*,
   1998 WL 474094 (S.D.N.Y. Aug. 11, 1998) ...................................................... 10

*RIGroup LLC v. Trefonisco Mgmt. Ltd.*,
   949 F. Supp. 2d 546 (S.D.N.Y. 2013) ................................................................ 5, 7

*Royal and Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006) ................................................................................. 10

*Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*,
   549 U.S. 422 (2007) .............................................................................................. 4

*Slack Techs., LLC v. Pirani*,
   598 U.S. 759 (2023) ............................................................................................ 13

*Sussman v. Bank of Israel*,
   801 F. Supp. 1068 (S.D.N.Y. 1992)..................................................................... 5, 6

*Tagger v. Strauss Grp. Ltd.*,
   2018 WL 4356725 (S.D.N.Y. Sept. 12, 2018).......................................................... 8

*Tarazi v. Truehope Inc.*,
   958 F. Supp. 2d 428 (S.D.N.Y. 2013)...................................................................... 7

*Thomas v. Roach*,
   165 F.3d 137 (2d Cir. 1999)................................................................................. 15

*Villella v. Chem. & Mining Co. of Chile Inc.*,
   2017 WL 1169629 (S.D.N.Y. Mar. 28, 2017) ....................................................... 5, 9

## STATUTES

15 U.S.C. § 77k.............................................................................................*passim*
15 U.S.C. § 77*l*........................................................................................... 15, 16
15 U.S.C. § 77v.................................................................................................. 8

## RULES

C.P.L.R. § 301................................................................................................. 11
C.P.L.R. § 302................................................................................................. 11

## GLOSSARY OF DEFINED TERMS

| Term | Definition |
|------|------------|
| Additional Plaintiffs | Rodrigue Fodjo and Dustin Green |
| Bitan | Ayelet Bitan, Moshe's wife |
| Business Combination | The transaction whereby Mount Rainier and Legacy Hub combined to form Hub, which closed on or about February 28, 2023 |
| Complaint or AC | Amended Class Action Complaint for Violation of the Federal Securities Laws (ECF No. 45) |
| Defendants | Hub and the Individual Defendants |
| Hub or the Company | Hub Cyber Security Ltd. f/k/a Mount Rainier Acquisition Corp. |
| Individual Defendants | Manish Agarwal, Matthew Kearney, Hugo Goldman, Uzi Moscovich, Zeev Zell, Moti Franko, Levana Shifman, Moshe Raines, and Eyal Moshe |
| Lead Plaintiffs | Aryeh Agam and Shimon Aharon |
| Legacy Hub | Hub Cyber Security (Israel) Ltd. |
| Moscovich | Uzi Moscovich |
| Moshe | Defendant Eyal Moshe |
| Moshe MTD | Memorandum of Law in Support of Eyal Moshe's Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 93) |
| Mount Rainier | Mount Rainier Acquisition Corp. |
| MTD | Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 86) |
| Offering Documents | The Registration Statement on Form F-4 filed on August 24, 2022 (and all amendments thereto) and the Proxy/Prospectus filed on Form 424B3 on December 9, 2022 (and all supplements thereto) |
| Plaintiffs | Lead Plaintiffs and Additional Plaintiffs |
| Proxy/Prospectus | The Form 424B3 filed on December 9, 2022 (and all supplements thereto) |
| Registration Statement | The Form F-4 filed on August 24, 2022 (and all amendments thereto) |
| Securities Act | Securities Act of 1933 |
| SPAC | Special purpose acquisition company |

Plaintiffs respectfully submit this memorandum in opposition to the motion to dismiss filed by Defendant Eyal Moshe (ECF No. 92), which is joined by Defendants Hub, Manish Agarwal, Matthew Kearney, Hugo Goldman, Uzi Moscovich, Zeev Zell, Moti Franko, Levana Shifman, and Moshe Raines (ECF No. 86 at 2).[1]

## I.    PRELIMINARY STATEMENT

This action arises from the new securities that were registered to effectuate the Business Combination between a U.S. entity (Mount Rainier) and an Israeli entity (Legacy Hub). Defendants are liable in this District for the misleading nature of the Offering Documents, which were filed with the SEC to register the new securities to trade on the Nasdaq exchange.

In many transactions involving special purpose acquisition companies (like Mount Rainier), the pre-merger security merely trades under a new ticker on the exchange, and the acquiree's securityholders receive shares in the publicly traded company.  Unsurprisingly, courts have held that the ticker-change does not confer Securities Act standing for investors who held the pre-merger security.  *See, e.g.*, *In re CarLotz, Inc. Sec. Litig.*, 667 F. Supp. 3d 71, 80 (S.D.N.Y. 2023) (rejecting that merger "functionally transformed" pre-merger security).

This is not such a case.  All securityholders, regardless of whether they owned Mount Rainier or Legacy Hub, ***received newly registered shares*** when the Business Combination closed. That is evident from the face of the Registration Statement, which Defendants do not dispute. MTD at 3.  It is also confirmed by the fact that the pre-merger entity no longer trades on the Tel Aviv exchange, the only exchange where it was listed before the Business Combination closed. Further demonstrating that this transaction is not simply a ticker-change as in many other SPAC

---

[1]    All citations to "¶ __" are to the Complaint.  Unless otherwise noted, all emphasis is added, and internal case citations and quotations are omitted throughout.

transactions, each Plaintiff received fewer Hub shares than the number of pre-merger security they held.  Thus, Plaintiffs acquired "such security" registered by the Offering Documents and have standing for the Securities Act claims. *See generally* 15 U.S.C. §77k(a) ("any person acquiring such security" may bring suit).

The Court has jurisdiction over this dispute and over the Individual Defendants.  This country's strong interest in enforcing the federal securities laws outweighs any inconvenience that Defendants claim, especially because Israel likely does not have subject-matter jurisdiction under the Securities Act.  The Court has personal jurisdiction because the Individual Defendants signed, or authorized the signing of, the Registration Statement.

Moshe's motion to dismiss must be denied in its entirety.

## II.    STATEMENT OF FACTS

### A.    The Registration Statement Registered New Hub Securities

The Offering Documents registered new Hub securities.  ¶¶52-53, 62.

The Registration Statement provides that Mount Rainier securityholders would receive newly registered Hub securities in connection with the Business Combination:

> . . . (b) each **RNER Share issued and outstanding immediately prior to the Effective Time will be automatically converted into a number of HUB Security ordinary shares equal to the quotient of** (i) an aggregate number of HUB Security ordinary shares equal to the amount obtained by dividing (A) $221,582,000 less the amounts payable to the RNER stockholders pursuant to the right of the holders of RNER Shares to redeem all or a portion of their RNER Shares in connection with the Transactions contemplated by the Business Combination Agreement or otherwise (the "RNER Stockholder Redemptions") by (B) $7.61 divided by (ii) the aggregate number of RNER Shares issued and outstanding immediately prior to the Effective Time, after taking into account of the RNER Stockholder Redemptions (the "Per Share Consideration") . . .

¶52.

2

Legacy Hub securities were delisted, and the Registration Statement also provides that Legacy Hub securityholders would receive newly registered Hub securities.  ¶¶53, 61.  On February 28, 2023, the Nasdaq announced that Hub's new securities were registered.  ¶62.

**B.      Each Plaintiff Purchased Or Otherwise Acquired Newly Registered Hub Securities**

Each Plaintiff acquired newly registered Hub securities.

Lead Plaintiff Aryeh Agam acquired 187,358.01 new Hub shares on February 28, 2023 when the Business Combination closed.  ¶19 (incorporating-by-reference earlier-filed certification listing transactions).  He purchased thousands of Hub securities on the Nasdaq exchange after the Business Combination closed.  *Id.*

Lead Plaintiff Shimon Aharon acquired 546,883.29 new Hub shares and 41,000 new Hub warrants when the Business Combination closed.  ¶20 (incorporating-by-reference earlier-filed certification listing transactions).   He purchased thousands of Hub securities on the Nasdaq exchange after the Business Combination closed.  *Id.*

Additional Plaintiff Rodrigue Fodjo held 10,420 Mount Rainier shares, and thereby acquired 9,368 new Hub shares when the Business Combination closed.  ¶21 (incorporating-by-reference earlier-filed certification listing transactions). He purchased thousands of Hub securities on the Nasdaq exchange after the Business Combination closed.  *Id.*

Additional Plaintiff Dustin Green held 200 Mount Rainier shares, and thereby acquired 180 new Hub shares when the Business Combination closed.  ¶22 (incorporating-by-reference earlier-filed certification listing transactions).  He purchased thousands of Hub securities on the Nasdaq exchange after the Business Combination closed.  *Id.*

3

## III.    ARGUMENT

### A.    Dismissal Under *Forum Non Conveniens* Is Not Warranted

"A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum."  *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007).  Incredibly, Defendants argue that the "allegations bear no material relationship to the venue of the Southern District of New York," focusing only on Hub's incorporation in Israel. Moshe MTD at 10.  Their argument ignores that this case concerns a U.S. entity's acquisition of Legacy Hub *in New York* via the listing of newly-registered securities on the Nasdaq exchange.

#### 1.    This District Has A Strong Interest In Adjudicating This Action Regarding U.S.-Listed Securities

That the Company's securities trade on the Nasdaq exchange is a valid reason to adjudicate this dispute in this District, so Plaintiffs' choice of forum should be afforded great deference. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-75 (2d Cir. 2001) ("the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice . . . , the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*").  Plaintiffs bring suit for Defendants' actionable misstatements and omissions in the Offering Documents, which registered securities pursuant to the Securities Act and enabled trading on the Nasdaq exchange. *See* ¶¶23, 126; ECF 94-1 at i (Registration Statement stating it "constitutes a prospectus of HUB Security under Section 5 of the Securities Act of 1933").

The weight of authority overwhelmingly favors Plaintiffs' choice to litigate securities law violations in the U.S.  *See, e.g.*, *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002) (reversing dismissal because "this country's interest in having United States courts enforce United States securities laws" is "a quite valid reason for litigating in federal court"); *In re iAnthus Cap. Holdings, Inc. Sec. Litig.*, 2022 WL 4539119, at *11 (S.D.N.Y. Sept. 28, 2022) (similar); *In re*

*CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 300 (E.D.N.Y. 2002) (interest in "preserving the integrity of American financial markets . . . should be given due weight"); *see also Villella v. Chem. & Mining Co. of Chile Inc.*, 2017 WL 1169629, at *7 (S.D.N.Y. Mar. 28, 2017) ("the fact that Plaintiff brings solely federal securities claims" supports his choice of forum).

Defendants resist this conclusion but rely almost exclusively on cases that do not concern federal securities laws. Moshe MTD at 9-15. The outliers are decades-old cases bearing no resemblance to the instant dispute. *Alfadda v. Fenn*, 159 F.3d 41, 43-44 (2d Cir. 1998) (stock was not publicly traded); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 997 (2d Cir. 1993) (dismissing foreign banks who aided and abetted fraud under *forum non conveniens*, in part because primary violators were dismissed on the ground of comity). Their arguments must fail.

First, Defendants' reliance on the Company's incorporation in Israel is misplaced because Defendants availed themselves of the U.S. capital markets. *Cf.* Moshe MTD at 11-12. Defendants' desperate attempt to characterize Plaintiffs' investment as foreign or "international business" ignores the nature and purpose of the Business Combination, whereby a U.S. entity (*i.e.*, Mount Rainier) was the vehicle for an Israeli entity (*i.e.*, Legacy Hub) to go public on a U.S. exchange through the Offering Documents. ¶¶40, 45, 52-53. In contrast, Defendants' cases involve entirely foreign investments. *See Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *9 (S.D.N.Y. Sept. 4, 2020) ("investment in a European company whose securities are traded on European stock exchanges and whose business is conducted exclusively in Europe"); *RIGroup LLC v. Trefonisco Mgmt. Ltd.*, 949 F. Supp. 2d 546, 549-50, 553 (S.D.N.Y. 2013) (contested buyout and looting of Russian LLC); *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1069, 1074 (S.D.N.Y. 1992) (financing the creation of Israeli bank; routing loan proceeds through New York branch was "peripheral" to allegations). Defendants fixate on Lead Plaintiffs' purchases of Legacy Hub

securities on the Tel Aviv exchange, but Lead Plaintiffs' claims stem from the acquisition of U.S.-registered securities in connection with the Business Combination. *See* Sec. III.C., *infra*. Moreover, Additional Plaintiffs purchased U.S.-registered securities, so those investments could not conceivably be characterized as "foreign." ¶¶21-22.

Second, any aspersion that Plaintiffs engaged in forum-shopping misapprehends the statutory lead plaintiff process. *See* Moshe MTD at 10-11. Three of the Plaintiffs did not initiate the above-captioned action, and the remaining Plaintiff filed a follow-on action in this District after Efrat Investments LLC (now a non-party) had already commenced suit. *See* ECF No. 1 (Jul. 6, 2023); *Green v. Hub Cyber Security Ltd. et al.*, Case No. 1:23-cv-06668 (S.D.N.Y), ECF No. 1 (Jul. 31, 2023). Lead Plaintiffs became a party to this action in November 2023 after interested investors sought appointment as lead plaintiff pursuant to the PSLRA, so they could not have forum-shopped. *See generally* ECF Nos. 21, 40. Defendants also grossly misstate Lead Plaintiffs' previously-filed declaration to impugn the propriety of their involvement here. *Compare* Moshe MTD at 11 (stating that Lead Plaintiffs "reside in Israel and were instructed by their attorney to bring their dispute to the United States")*, with* ECF No. 23-3 at ¶4 (stating that Lead Plaintiffs "directed Mr. Sabo [their attorney in Israel] to retain counsel in the United States to represent us"). Regardless, Lead Plaintiffs' foreign residency is of little relevance to this class action. *See Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524-25 (1947) (representative plaintiff's residence within particular forum is not probative because a plaintiff class includes many "potential plaintiffs . . . all of whom could with equal show of right go into their many home courts").

Third, Defendants cite earlier-filed Israeli litigation as "indicia of forum-shopping" but tellingly omit the differences between the actions. Moshe MTD at 12 (asserting that the "first-

filed Israel Litigation is inextricably intertwined because it is a class action asserting substantially the same allegations").  In addition to misstatements and omissions about the PIPE financing (which are the only subject of the Israeli action), Plaintiffs also allege that Defendants failed to disclose Moshe's embezzlement of corporate funds, the Company's utter lack of internal controls, and Hub's lack of a market-ready product.  ¶¶77, 82-96.  Moreover, the Israeli case seeks to represent a class of investors who held Legacy Hub securities while it traded on the Tel Aviv exchange.  ¶77 ("As the Company disclosed, the lawsuit covers securities traded on TASE from March 2022 until February 2023").  By definition, the Israeli case excludes the class of investors that Plaintiffs seek to represent.  ¶126 (class of investors who purchased or otherwise acquired U.S.-registered securities).  As such, the putative class and their claims are not covered by the Israeli action.  Unlike the cases cited by Defendants, where the parties and issues were substantially the same, these differences show that Plaintiffs did not engage in forum-shopping.  *See Kingstown*, 2020 WL 5350492, at \*5 (parallel case filed 4 years had "same core parties" and "same overarching theory of wrongdoing"); *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 437 (S.D.N.Y. 2013) (defendant had first sued plaintiffs in Canada); *see also RIGroup*, 949 F. Supp. 2d at 553 ("substantial and uncontroverted evidence" of forum-shopping where plaintiffs abandoned earlier-filed Cypriot action).

Therefore, Plaintiffs' choice of forum is due significant deference.  *Iragorri*, 274 F.3d at 75 (finding district court "did not accord appropriate deference" where there was "little reason for discrediting the bona fides of" plaintiff's chosen forum).

### 2.    Israel Is Not An Adequate Alternative Forum To Enforce U.S. Securities Law

Plaintiffs cannot bring their suit in Israel because the securities at-issue no longer trade on the Tel Aviv exchange.  "[D]ismissal would not be appropriate where the alternative forum does

not permit litigation of the subject matter of the dispute." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  Defendants make no showing that Israeli courts have jurisdiction to enforce U.S. federal securities law for misstatements and omissions issued in the U.S. about a security that trades in the U.S.  *See* Moshe MTD at 12; *see generally* 15 U.S.C. § 77v(a) (suit to enforce Securities Act "may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district in where the offer or sale took place . . ."). Indeed, foreign courts do "not, of course, have the familiarity with those laws that courts of this District, located within walking distance of Wall Street, have obtained through the continuous adjudication of securities litigation." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999).

Defendants again cite the "first-filed parallel dispute" to claim that Israel is an adequate forum, neglecting to mention that that case only concerns Legacy Hub securities that traded on the Tel Aviv exchange and applies Israeli securities laws.  Moshe MTD at 12.  Their cited authorities involve conduct rooted in Israel and do not concern federal securities laws. *Tagger v. Strauss Grp. Ltd.*, 2018 WL 4356725, at *1-2 (S.D.N.Y. Sept. 12, 2018) (foreclosure of property in Israel); *Core Software Tech., Inc. v. Imagesat Int'l N.V.*, 2010 WL 21173, at *3 (S.D.N.Y. Jan. 5, 2010) (mismanagement of Israeli close corporation); *CCS Int'l v. ECI Telesystems*, 1998 WL 512951, at *7 (S.D.N.Y. Aug. 18, 1998) (business dispute that mandated arbitration in Israel).  None of the parties in Defendants' cited case disputed that France was an adequate alternative forum for an action about an "international financial transaction." *Alfadda*, 159 F.3d at 46-47.  In contrast, the Business Combination occurred in the U.S., and Israel's adequacy to adjudicate *this* dispute is contested.  Also, *Alfadda* predates *Iragorri*, thus it did not assess the deference due to plaintiff's choice of forum as the Second Circuit has since instructed. *Alfadda*, 159 F.3d at 46 (considering plaintiff's choice only to assess private interests).

### 3. Even if Israel Were An Adequate Forum, The Balance of Factors Does Not Support Dismissal

The Court need only balance the private and public interests if it finds that Israel is an adequate alternative forum (it is not). *Iragorri*, 274 F.3d at 73. Even if the Court were to consider the balancing of interests, it would not support dismissal.

**Private Factors:** Even if many of the Defendants reside in Israel and documentary evidence is located in Israel, "plaintiffs should not [be] deprived of their choice of forum except upon defendants' clear showing that a trial in the United States would be so oppressive and vexatious to them as to be out of all proportion to plaintiffs' convenience." *DiRienzo*, 294 F.3d at 30. Defendants' complaints about the expense of translation and travel are ill-received. *See* Moshe MTD at 13. The U.S. was not too inconvenient for Defendants to access its capital markets and take Legacy Hub public; convenience cannot be used to excuse Defendants from the reach of the very securities laws they sought to exploit. *iAnthus*, 2022 WL 4539119, at *13 ("And no concerns arising from the private interests of the parties should preclude litigating these [securities] actions in this Court."). Plaintiffs agree that the "non-parties [need] not be dragged into a Court in New York." Moshe MTD at 13. Testimony from the entities involved in the PIPE financing is not necessary to show that ***Defendants*** misstated that the funds were "irrevocable commitments" when, in fact, the PIPE investors had withdrawn. ¶¶67-76. Even if the foreign non-parties are relevant witnesses, their testimony can be obtained through letters rogatory if live testimony is not feasible. *Chem. & Mining*, 2017 WL 1169629, at *8; *DiRienzo*, 294 F.3d at 30.[2]

Defendants improperly place the burden on Plaintiffs to show that "New York is more convenient." Moshe MTD at 14; *DiRienzo*, 294 F.3d at 30 ("Of greater significance, the district

---

[2] Also, modern technology, like videoconferencing, negates much of the inconvenience that historically existed with foreign discovery.

court committed legal error by failing to hold defendants to their burden of proof[]" to show that current forum was inconvenient).  Additionally, "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction."  *Royal and Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006) (emphasis in original); *see also In re Poseidon Concepts Sec. Litig.*, 2016 WL 3017395, at *10 (S.D.N.Y. May 24, 2016) (parallel litigation "does not obviate United States interests in enforcing securities laws").  Defendants cannot point to any "exceptional circumstances."  *See* Moshe MTD at 13-14.  They cite cases with "no perceptible contacts with New York or the United States."  *First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp. 2d 443, 452 (S.D.N.Y. 2001); *Red Rock Holdings, Ltd. v. Union Bank Tr. Co.*, 1998 WL 474094, at *7 (S.D.N.Y. Aug. 11, 1998) (similar).  At best, the private factors are neutral.

**Public Factors:** This Court's strong interest in adjudicating this securities action has already been discussed at length.  Defendants counter that Israel has a strong interest in regulating an Israeli corporation and Israeli officers and directors for "alleged corporate malfeasance."  Moshe MTD at 14-15.  However, Defendants' misstatements about PIPE financing, Moshe's embezzlement, and Hub's flagship product were "only a prelude to misstated SEC filings and fraudulent financial reports dangled before American investors to attract their money."  *CINAR*, 186 F. Supp. 2d at 300 (defendants' "attempt to cast this suit as a purely Canadian dispute is unpersuasive").  Defendants cannot credibly claim that "the dispute does not meaningfully relate to any transactions or occurrences within New York" when the Company's stock currently trades on the Nasdaq exchange, a feat made possible by the misleading Offering Documents that underlie this suit.  *See* Moshe MTD at 14.  Any risk of inconsistent judgments with the existing Israeli litigation can be addressed through issue preclusion.  *iAnthus*, 2022 WL 4539119, at *13; *cf.*

10

Moshe MTD at 15 (citing *Allstate Life Ins.*, 994 F.2d at 1002 (recognizing risk of inconsistent judgments if securities claims were litigated in U.S. and cross-claims were litigated in Australia)). Thus, none of Defendants' concerns outweigh this Court's strong interest in enforcing U.S. securities laws, and the public factors do not support dismissal.

\*    \*    \*

In sum, dismissal under *forum non conveniens* is not warranted. Enforcing compliance with federal securities laws "weighs heavily against dismissal," even where the plaintiffs had little or no connection to the U.S. court, they likely engaged in forum-shopping, **and** the relevant security traded on a foreign market. *Mucha v. Volkswagen Aktiengesellschaft*, 540 F. Supp. 3d 269, 289-90 (E.D.N.Y. 2021) (denying dismissal because "Defendants have availed themselves of the United States banking system in marketing securities in a foreign market to United States investors" through sponsored ADRs). Here, the relevant securities trade on a U.S. stock exchange, *a fortiori*, Defendants' request should be denied.

### B.    This Court Has Personal Jurisdiction Over The Individual Defendants Because They Signed The Registration Statement

Defendants state that personal jurisdiction is governed by C.P.L.R. §§ 301, 302, which are state statutes. Moshe MTD at 16-17. However, this Court's jurisdiction is governed by federal statute. *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 641 (S.D.N.Y. 2017) ("A federal court applies the forum state's personal jurisdiction rules unless a federal statute specifically provides for national service of process.") (cleaned up).

Personal jurisdiction in securities cases reaches "only as far as the due process clause of the Fifth Amendment allows." *CINAR*, 186 F. Supp. 2d at 304-05; *see also Banco Bradesco*, 277 F. Supp. 3d at 642 (due process analysis considers "the 'minimum contacts' analysis and the 'reasonableness' inquiry"). Here, "every person who signed the registration statement" may be

11

sued under the Securities Act.  15 U.S.C. § 77k(a)(1).  The Complaint alleges that each of the Individual Defendants, except Kearney, "signed or authorized the signing of the Registration Statement."  ¶¶24-31.  Nothing more is required to plead this District's jurisdiction over them. *CINAR*, 186 F. Supp. 2d at 305-06 ("it is perfectly reasonable to exercise jurisdiction over [general counsel] based solely on her signing the 1999 Registration Statement") (citing cases); *see also Mucha*, 540 F. Supp. 3d at 283 ("Courts in this Circuit regularly have exercised personal jurisdiction over foreign persons who signed allegedly false or misleading statements filed with the Securities and Exchange Commission . . . "); *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 801 (S.D.N.Y. 2018) (signing specific SEC filings sufficient for "minimum contacts").  Kearney was named as a director nominee in the Registration Statement, which also suffices to establish personal jurisdiction. ¶32; *see generally* 15 U.S.C. § 77k(a)(2).

## C.    Plaintiffs Have Standing To Assert Securities Act Violations

Plaintiffs have adequately alleged standing to bring their Section 11 and 12(a)(2) claims. At the motion to dismiss stage, "Plaintiffs need only assert that they purchased shares issued pursuant to, or traceable to" the defective Offering Documents.  *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 403 (S.D.N.Y. 2020); *accord In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 372-73 (S.D.N.Y. 2011) ("generalized allegations" suffice).  The Complaint meets this minimal pleading burden: it alleges that each Plaintiff "purchased or otherwise acquired Hub securities pursuant and/or traceable to the Offering Documents issued in connection with the Business Combination."  ¶¶19-22.

Defendants argue that no Plaintiff can "show they obtained shares put on the market by the Registration Statement," yet they do not—and cannot—distinguish Plaintiffs' securities from those registered by the Offering Documents.  MTD at 8; Moshe MTD at 19.  Under the Securities Act, "any person acquiring such security" may bring suit.  15 U.S.C. §77k(a).  "[S]uch security"

12

means "a security registered under the particular registration statement alleged to contain a falsehood or misleading omission." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 767 (2023). Here, Defendants acknowledge—as they must—that the "Registration Statement on Form F-4 . . . explained that securities holders of Mount Rainier and Hub Israel would receive ***newly registered*** Hub securities." MTD at 3; *see also* ¶¶52-53. As a result, all investors who held Mount Rainier ***or*** Legacy Hub securities as of the closing of the Business Combination received shares traceable to the defective Offering Documents. Therefore, Lead Plaintiffs (who held Legacy Hub shares prior to the Business Combination) and Additional Plaintiffs (who held Mount Rainier shares prior to the Business Combination) have standing for their Section 11 claim. *See* ¶¶19-22.

As to Lead Plaintiffs, Defendants claim that the purchases of Hub Israel are insufficient because "they could not have purchased their shares pursuant to the Registration Statement." MTD at 8. But Defendants' claim cannot be squared with their concession that Legacy Hub investors received "newly registered Hub securities," a phrase which necessarily means that Lead Plaintiffs acquired securities pursuant to the Offering Documents. *See id.* At best, Defendants quibble over whether Lead Plaintiffs "purchased" the at-issue securities, but the law explicitly confers standing on investors who "acquir[ed]" the relevant security. 15 U.S.C. §77k(a). Lead Plaintiffs acquired U.S.-registered securities when the Business Combination closed. ¶¶19-20 (listing shares that converted on February 28, 2023). Notably, Moshe does not challenge Lead Plaintiffs' Section 11 standing based on the shares received directly from the Business Combination. Moshe MTD at 19 (challenging only the aftermarket purchases).

As to the Additional Plaintiffs, Defendants' strawman argument overlooks a fundamental distinction between *CarLotz* and the instant case: the *CarLotz* plaintiff did not receive newly registered shares, but Plaintiffs here did. MTD at 8 (citing *CarLotz*, 667 F. Supp. 3d at 80); Moshe

13

MTD at 18 (same).[3] In *CarLotz*, the newly registered stock was distributed only to the acquiree's shareholders, but plaintiff Bailey was an investor in the *acquiror* and did not receive the newly registered shares.[4] *CarLotz*, 667 F. Supp. 3d at 81 (stating that Bailey purchased SPAC's common stock). As a result, plaintiff Bailey was forced to rely on a "creative" argument that his investment was "functionally transformed" by the de-SPAC merger. *CarLotz*, 667 F. Supp. 3d at 81. Here, the Hub securities registered by the Offering Documents were issued to the acquiror's ***and*** acquiree's shareholders. Due to this distinction between *CarLotz* and this case, Plaintiffs need not rely on any argument that their investments were "functionally transformed" by the Business Combination. Indeed, Additional Plaintiffs actually acquired newly registered shares issued pursuant to the Offering Documents. *See* Sec. II.A., *supra*.

Moreover, Plaintiffs' standing is also adequately pled by their aftermarket purchases. *DeMaria v. Andersen*, 153 F. Supp. 2d 300, 310 (S.D.N.Y. 2001) ("The plain language of Section 11 confirms that it confers standing to purchasers in the secondary market."). Defendants' *ipse dixit* that the "shares are not traceable" cannot defeat the well-pled allegations. MTD at 8; Moshe MTD at 19; *see In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003) ("Plaintiffs have not been required to explain how their shares can be traced") (collecting cases). Defendants have made no showing that any unregistered shares entered the market prior to

---

3    Moshe references *CarLotz* as a decision by "this Court." Moshe MTD at 18. But the opinion cited by Defendants was issued by Judge Ronnie Abrams, and this Court's *CarLotz* decision only addressed standing for pre-merger statements under the Securities Exchange Act of 1934. *See In re CarLotz, Inc. Sec. Litig.*, 2024 WL 1348749, at *4-7 (S.D.N.Y. Mar. 29, 2024).

4    Attached as Exhibit A to the concurrently filed Declaration of Casey E. Sadler is an excerpt of the registration statement for the CarLotz business combination that states that the 80 million shares were to be issued ***only*** to holders of legacy CarLotz securities upon the consummation of the de-SPAC merger.

Plaintiffs' aftermarket purchases.  *See* MTD at 8; Moshe MTD at 19.[5]  In any event, regardless of whether their aftermarket purchases are traceable to the Offering Documents, Plaintiffs received newly registered shares contemporaneously with the Business Combination, so they have standing for the Section 11 claim.

As to Section 12(a)(2) standing, Defendants cannot seem to agree what Plaintiffs are required to allege.  *Compare* MTD at 8-9 (aftermarket purchasers lack Section 12(a)(2) standing)*, with* Moshe MTD at 19 (suggesting Section 12(a)(2) standing includes shares "traceable to the Registration Statement").  In any case, Plaintiffs did acquire shares "directly" in the offering— they held shares that directly became newly registered Hub securities concurrent with the closing of the Business Combination.  Defendants have not even attempted to argue why this falls short, relying on nothing more than that this transaction was not an initial public offering.  However, the statute does not limit Section 12(a)(2) claims to only initial public offerings. *See* 15 U.S.C. § 77*l*(a).

In addition to the foregoing, Moshe makes a series of baseless arguments that warrant specific attention. Moshe argues that Plaintiffs "have not bothered to delineate which transactions form the basis for their claims."  Moshe MTD at 20.  The Complaint incorporates-by-reference Plaintiffs' certifications, which plainly list relevant transactions.  ¶¶19-22.  Moshe also claims that Plaintiffs did not purchase in the "initial public offering," which is nonsensical.  Moshe MTD at 19.  Plaintiffs never said that they purchased in an initial public offering; Hub did not offer any U.S. securities that could be purchased from an underwriter in a traditional initial public offering because it became a U.S.-traded entity via a special purpose acquisition company.  ¶¶34-36, 47. Moshe also argues that "Plaintiff Efrat" does not have requisite standing, Moshe MTD at 19, but

---

5    Defendants cannot attempt to make such a showing in their reply brief.  *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir. 1999) (argument is waived unless a party raises it in its opening brief).

Efrat is not even named as a plaintiff in the operative complaint.  *See* ¶¶19-22.  Moshe seemingly argues that some of Plaintiffs' transactions should be dismissed as ineligible for damages, though the nature of his argument is unclear.  MTD at 20 n.4.  For the avoidance of doubt, none of Plaintiffs' transactions should be excluded for lack of damages: (1) all of Plaintiffs' listed transactions are eligible for Section 11 claims; and (2) though aftermarket purchases are excluded under Section 12(a)(2), the remedy for that claim is damages *or recission*.  *See generally* 15 U.S.C. § 77*l*(a).

Therefore, Plaintiffs have standing for all their claims.

### D.    Moshe Makes No Argument For 12(b)(6) Dismissal

Moshe purports to move to dismiss under Rule 12(b)(6), but he makes no argument other than to join in and incorporate by reference the arguments by the other Defendants.  Moshe also attempts to dismiss claims against him because "Plaintiff Efrat, while listed on the caption, is not referenced in the Amended Complaint."  Moshe MTD at 1 n.1.  But Efrat is not listed on the caption, which is *In re Hub Cyber Security Ltd.*.  To be clear, Efrat is not a named plaintiff but *is* an absent member of the putative class, and there is no basis to prejudice Efrat's ability to recover as a class member.

Additionally, Moshe's statement of facts includes arguments that must be ignored as improper.  Moshe MTD at 7-8.  First, those arguments are not supported by any case law, and bespeaks caution and puffery are highly context-specific inquiries that cannot excuse Defendants' liability merely because Moshe says so.  *See, e.g.*, *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 79 (S.D.N.Y. 2017) ("courts have recognized that '[w]hether a representation is 'mere puffery' depends, in part, on the context in which it is made.'"); Plaintiffs' concurrent opposition to MTD at Sec. III.E.1 (discussing that Hub's risk disclosures did not disclose then existing risks and how "materiality is an 'inherently fact-specific finding' that is not a basis for dismissal").

16

Second, they do not adhere to Rule 8.G.i. of Your Honor's Individual Rules of Practice. Again, Moshe cannot attempt to cure these fatal defects on reply.

In sum, Moshe provides no basis for dismissal independent of the arguments raised by the remaining Defendants in their motion to dismiss.

## IV.    CONCLUSION

For the foregoing reasons, this Court has subject-matter jurisdiction over the claims under the Securities Act, this Court has personal jurisdiction over the Defendants, and Plaintiffs have standing for their claims. Moshe's motion to dismiss should be dismissed in its entirety.

Dated: July 15, 2024

Respectfully submitted,

*/s/ Casey E. Sadler*
**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Casey E. Sadler (admitted *pro hac vice*)
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel: (310) 201-9150
Fax: (310) 201-9160
rprongay@glancylaw.com
csadler@glancylaw.com
prajesh@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Tel: (212) 682-5340
Fax: (212) 884-0988
glinkh@glancylaw.com

**THE LAW OFFICE OF JACOB SABO**
Jacob Sabo
22a Mazzeh St.
Tel-Aviv, Israel
Tel: (++972) 39070770

*Counsel for Lead Plaintiffs and Co-Lead Counsel for the Class*

17

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Tel: (212) 661-1100
Fax: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Additional Plaintiffs Rodrigue Fodjo and Dustin Green*

18

## **PROOF OF SERVICE**

I hereby certify that on this 15th day of July, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

_s/ Casey E. Sadler_
Casey E. Sadler