# Exhibit 1

2025 WL 501427
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

CRAIG M. ROSE, individually and on behalf
of all others similarly situated, Plaintiffs,
v.
BUTTERFLY NETWORK, INC. F/K/A LONGVIEW
ACQUISITION CORP., et al., Defendants.

No. 22-cv-00854 (MEF)(JBC)
|
Filed 02/13/2025

**OPINION and ORDER**

Michael E. Farbiarz, U.S.D.J.

**Table of Contents**

**\*1  I. Background**

 **A. SPAC Mergers**

 **B. Section 11**

**II. Analysis**

 **A. Before Time 2**

 **B. After Time 2**

  **1. Statistical Tracing**

  **2. "Exchange"**

**III. Conclusion**

* * *

The Plaintiffs[1] sued on behalf of putative classes of investors. See Second Amended Complaint ("Complaint") at 1.

The Defendants[2] have moved to dismiss. See Defendants' Motion to Dismiss at 1.

As of around two weeks ago, the briefing became fully submitted as to one of the motion-to-dismiss issues: do the Plaintiffs have standing as to their claim under Section 11 of the Securities Act of 1933?

The Court's conclusion: no.

Therefore, the Section 11 claim must be dismissed.

To explain why, the Court first moves through some necessary background, see Part I, and then considers and rejects the various arguments that have been advanced here by the Plaintiffs as to Section 11 standing, see Part II. This means the Section 11 claim must be dismissed --- and also another claim, as explained in Part III.

**I. Background**
Before getting to the analysis, take two bits of background, as to a type of merger that is in play here, see Part I.A, and as to Section 11, see Part I.B.

 **A. SPAC Mergers**
A private company has various ways to bring itself public.

The most familiar way: through a conventional initial public offering.

But a private company can also go down a different road. It can merge with a "special purpose acquisition company" ("SPAC"). See Thomas Lee Hazen, 1 Law Sec. Reg. § 3:58 (2024); Louis Loss, Joel Seligman & Troy Paredes, Fundamentals of Securities Regulation § 2.A.8 (6th ed. 2018).

A SPAC is essentially a blank slate --- a shell company brought into being for the purpose of attracting capital, and then using that money to take one or more private companies public. See Hazen, 1 Law Sec. Reg. § 3:58.

Going public via a SPAC is usually a two-step process. See Andrew F. Tuch & Joel Seligman, The Further Erosion of Investor Protection: Expanded Exemptions, SPAC Mergers, and Direct Listings, 108 Iowa L. Rev. 303, 322–23 (2022).

First, the SPAC goes public. See id. at 323; accord, e.g., Ramey Layne & Brenda Lenahan, Special Purpose Acquisition Companies: An Introduction, Harvard Law

School Forum on Corporate Governance (July 6, 2018), https://perma.cc/2CTE-NQB2 (last visited Feb. 13, 2025).

And second, the now-public SPAC merges with a private company. See Tuch & Seligman, Further Erosion, 108 Iowa L. Rev at 323.

As a practical matter, the merger turns the private company into a public company. [3]

\* \* \*

This case is about a SPAC merger. See Complaint ¶ 2; see also Plaintiffs' Letter (Jan. 29, 2025) at 2.

 **\*2**  A particular SPAC [4] became public during 2020. See Complaint ¶ 56. 2020 is, from here, "Time 1."

During 2021, the SPAC in question merged with a private company, the Defendant. See id. ¶ 2. 2021 is, from here, "Time 2."

A registration statement was issued at Time 1, see id. ¶ 56, and also at Time 2, see id. ¶ 65.

 **B. Section 11**

Turn now to Section 11 of the Securities Act of 1933.

Section 11 "allows certain investors to sue if they have been misled by [a] registration statement." Holland v. 9F Inc., 2024 WL 5086106, at \*1 (D.N.J. Dec. 12, 2024); see 15 U.S.C. § 77k(a).

To make out a Section 11 claim, a plaintiff has to "plead ... that he purchased shares traceable to [an] allegedly defective registration statement." Slack Techs., LLC v. Pirani, 598 U.S. 759, 770 (2023).

The "traceable" requirement is there because Section 11 covers only those securities that were "registered under the particular [defective] registration statement." Id. at 767; see Shapiro v. UJB Fin. Corp., 964 F.2d 272, 286 (3d Cir. 1992) ("[A]ny person acquiring a security issued pursuant to a false or misleading registration statement may [seek to] recover [under Section 11]."); see also Barnes v. Osofsky, 373 F.2d 269, 272 (2d Cir. 1967).

## II. Analysis

Against the backdrop set out above, come back now to the Section 11 claim in this case.

Here, the Plaintiffs allege that they "purchased or otherwise acquired the [Defendants'] stock pursuant or traceable to" a particular registration statement, see Complaint ¶¶ 18-20, the one issued at Time 2, see id. ¶¶ 65, 67. [5]

But simply saying so is not enough, see Holland, 2024 WL 5086106, at \*3-\*5, and the Plaintiffs seek to plausibly allege that the "traceable" bar has been cleared by attaching certifications indicating when they made certain stock buys. [6]

Look now to these stock buys --- the ones allegedly made before Time 2, see Part II.A, and the ones allegedly made after, see Part II.B.

 **A. Before Time 2**

Per the certifications: some of the shares were bought before Time 2. Compare Docket Entry 32–3 and Docket Entry 69 with Complaint ¶ 65; see Complaint ¶¶ 19–20, 70.

But to press a Section 11 claim based on buying certain shares, the shares must have been "registered under the particular [misleading] registration statement," Slack, 598 U.S. at 767 --- and here, the Plaintiffs' claim is that the misleading registration statement was issued at Time 2, see Complaint ¶ 1. [7]

Shares that were bought before Time 2 existed before Time 2. And there is no reason to think that shares that existed before Time 2 were "registered under" what would have been a later registration statement, the Time 2 registration statement.

 **\*3**  Therefore, the Plaintiffs have no standing under Section 11 as to those shares that they bought before Time 2.

This is common sense. A plaintiff could not have been damaged by a "[misleading] registration statement" if the shares she bought were issued before the registration statement came out in the first place. See Slack, 598 U.S. at 767; see also 15 U.S.C. § 77k(a).

And cases have landed on this same conclusion. See In re CarLotz, Inc. Sec. Litig., 667 F. Supp. 3d 71, 81 (S.D.N.Y.

2023); Lanigan Grp., Inc. v. Li-Cycle Holdings Corp., 2023 WL 6541884, at \*10 (E.D.N.Y. Oct. 6, 2023).

Bottom line: to the extent the Plaintiffs allege standing under Section 11 as to shares bought before Time 2, the motion to dismiss is granted. No Section 11 claim can go forward here based on those shares.

### B. After Time 2

Turn now to the shares bought after Time 2.

Per the certifications, these shares were bought by the Plaintiffs at various times soon after the Time 2 registration statement became effective. See Docket Entries 21-3, 32-3, 69. Refer to the time when these shares were bought as "Time 3."

"[A] look to the timing of a stock buy is often at the core of establishing whether it is 'traceable' to a registration statement." Holland, 2024 WL 5086106, at \*4 (collecting cases).

But not always, and not here. [8]

The reason: there is another registration statement folded into the mix --- a registration statement that was issued at Time 1, in connection with the SPAC going public. See Complaint ¶ 56.

If the shares bought at Time 3 trace back to the Time 2 registration statement, which the Plaintiffs' claims are based on --- then there is standing for a Section 11 claim based on those shares.

But if the shares bought at Time 3 trace back to the Time 1 registration statement, which the Plaintiffs' claims are not based on --- then there is no standing for a Section 11 claim based on those shares.

It is for the Plaintiffs, who carry the burden, see Slack, 598 U.S. at 770, to connect the dots --- to show that the shares in play trace back to the complained-of registration statement. If they do not, there is no Section 11 standing. See In re ARIAD Pharms. Sec. Litig., 842 F.3d 744, 755 (1st Cir. 2016) (when there are multiple registration statements, a plaintiff needs to trace her shares to the misleading registration statement, "rather than some other registration statement") (cleaned up); In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1106

(9th Cir. 2013) (similar); Hertzberg v. Dignity Partners, Inc., 191 F.3d 1076, 1080 & n.4 (9th Cir. 1999) (similar); see also Rosenzweig v. Azurix Corp., 332 F.3d 854, 873 (5th Cir. 2003) ("[B]ecause there was only one offering ... all the plaintiff's stock is traceable to the challenged registration statement."); W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc., 495 F. Supp. 3d 622, 668–71 (N.D. Ill. 2020) (in the merger context, noting that Section 11 is "harder to satisfy" when there are pre-existing shares); De Vito v. Liquid Holdings Grp., Inc., 2018 WL 6891832, at \*17 (D.N.J. Dec. 31, 2018) (no plausible inference of Section 11 standing when there is another registration statement under which a plaintiff could have purchased shares); cf. In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 158, 173 (S.D.N.Y. 2003) (finding standing pre-Twombly/Iqbal when "the shares are traceable to the allegedly defective [merger registration statement]"); In re Cendant Corp. Litig., 60 F. Supp. 2d 354, 366 (D.N.J. 1999) (similar).

**\*4** Here, the Plaintiffs try to carry their burden in two ways. Take these up just below.

### 1. Statistical Tracing

First, the Plaintiffs say that most shares that were being bought and sold at Time 3 were issued under the Time 2 registration statement, not the Time 1 registration statement. See Plaintiffs' Letter (Jan. 29, 2025) at 2.

Therefore, the argument goes, it is plausible, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), that a given Time 3 share can be traced back to the Time 1 registration statement. See Slack, 598 U.S. at 770.

This sort of probabilistic argument may or may not work as a general matter --- there are different views as to whether Section 11 standing can be established based on "statistical tracing." Compare, e.g., Krim v. pcOrder.com, Inc., 402 F.3d 489, 496–97 (5th Cir. 2005); Davidco Invs., LLC v. Anchor Glass Container Corp., 2006 WL 547989, at \*23 (M.D. Fla. Mar. 6, 2006); and Abbey v. Comput. Memories, Inc., 634 F. Supp. 870, 874 (N.D. Cal. 1986) with, e.g., In re Snap, Inc. Sec. Litig., 334 F.R.D. 209, 224 (C.D. Cal. 2019) and Sudunagunta v. NantKwest, Inc., 2018 WL 3917865, at \*5 (C.D. Cal. 2018).

But this issue is not before the Court, at least for now.

The Plaintiffs' statistical tracing argument does not rest on allegations in the Complaint. Rather, it is based solely on

information gleaned from other parts of the docket. See Plaintiffs' Letter (Jan. 29, 2025) at 2 (citing Plaintiffs' Sur-Reply Brief to Motion to Dismiss at 10, which cites Defendants' Pre-Motion Letter (Jan. 6, 2023)).

But on a Rule 12(b)(6) motion to dismiss, this sort of information is usually out of bounds.

A court typically considers only (a) allegations that are in a plaintiff's complaint, (b) materials that are integrated into the complaint, and (c) information that can be judicially noticed. This list does not include factual assertions pulled from other sources, like the filings the parties have put on the court's docket. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993); see also 2 Moore's Federal Practice - Civil § 12.34 (2024).

To be sure, a court can sometimes choose to consider such on-the-docket information. See Buck, 452 F.3d 256 (citing Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed. 2024)).

But whether to do so is a discretionary call. See Pryor, 288 F.3d at 559.

And here, the Court will not look to the statistical tracing information that is on the docket (but not in the Complaint or integrated into it) as a basis for Section 11 standing.

The reason why: traceability is an element of a Section 11 claim, see Slack, 598 U.S. at 770, and when it comes to the information that is said to directly check the box as to an element --- that information should not generally be available to the Court only in post-complaint filings on the Court's docket. It should be drawn from the Complaint, materials integrated into it, or information that can be judicially noticed.

**\*5** This is for three reasons.

First, the elements are irreducibly necessary and also typically small in number; they are often the most important thing in a case. Requiring that they be backed up by at least some factual allegations in a complaint is a way to ensure that a defendant can have a fair sense from the get-go of what the case against her is all about. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (pleadings must "give the defendant fair notice

of what the claim is and the grounds upon which it rests") (cleaned up).

Second, a complaint helps to ensure efficient and on-the-merits dispute resolution by providing the parties with a crystallized (and early) sense of the issues that divide them. This is part of why a complaint must be "short and plain," Fed. R. Civ. P. 8(a)(1) --- the culmination of thinking, not a scattershot first draft that has not yet been honed down. [9]

But a complaint cannot play this clarifying role if it does not include the case's basic information. And there is no information more basic than information as to how the elements might be met.

Third, there is generally nothing unfair to a plaintiff about requiring him to rely on factual allegations in the complaint as to what undergirds each element.

At the time of filing the complaint, and based on a sufficient "inquiry," the plaintiff's lawyer must be ready to stand behind the complaint's claims. See Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a [complaint], ... an attorney ... certifies that ... the claims ... are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.").

If the plaintiff's lawyer has satisfied himself that the claim is solid-enough for Rule 11 purposes, it necessarily follows that he is sufficiently comfortable as to each of the claim's elements. After all, without each element being met, there can be no claim. If the plaintiff's lawyer is ready enough to go forward as to a claim --- he should be ready enough to lay out the factual allegations as to the claim's basic constituent parts, its elements.

Bottom line: when it comes to the core factual assertions that go directly to an element, there is special reason to look only to the standard sources --- and not to information that is backfilled from here-and-there post-complaint filings that have been put on the court's docket.

And this principle applies here with added force.

In this putative class action, the Plaintiffs are represented by highly sophisticated and experienced lawyers. They presumably included Section 11 claims (and not just their claims under the Exchange Act of 1934) because they have a sense as to how statistical tracing might play out here; it is

reasonable to expect that sense to be put forward to an extent in the Complaint.

**\*6** Moreover, there may potentially be a basis for some limited discovery as to statistical tracing. See Holland, 2024 WL 5086106, at \*4 n.4. Rough allegations in a complaint can help to anchor such discovery, if it is available, and tightly limit it.

In short: the Plaintiffs' statistical tracing argument fails because it rests entirely on information that is not in the Complaint that the Court will not opt to consider here.

#### 2. "Exchange"

The Plaintiffs' second argument as to why there is Section 11 standing here is more difficult to understand.

It seems to be this: the shares that were issued under the Time 1 registration statement were "convert[ed]" at the Time 2 merger --- and all of those shares must, after the merger, therefore be viewed as having been issued under the Time 2 registration statement. See Plaintiffs' Letter (Jan. 29, 2025) at 2; see also Complaint ¶¶ 1, 254 (referencing the "exchange" of Time 1 shares).

But even assuming arguendo that an argument along these lines might work in general, it does not work here. This is because the information put before the Court suggests that some SPAC shares issued under the Time 1 registration statement were "exchanged" at the time of the merger, see Motion to Dismiss, Exhibit B [10] at 3–4, but that others were not; they were simply renamed after the merger, see id.

And if that is the case, it leaves things as they were: with no way to know whether a given share bought at Time 3 can be traced to the Time 2 registration statement or the Time 1 statement. After all, the Plaintiffs put forward no reason to think that a given share issued under the Time 1 registration statement was converted or exchanged at the merger (so that, on the Plaintiffs' argument, it counts as having been issued under the Time 2 registration statement) or was simply renamed at the merger (so that, even on the

Plaintiffs' argument, it presumably does not count as having been issued under the Time 2 registration statement).

\* \* \*

In sum: the Plaintiffs need to plausibly allege that their shares were "registered under the particular [misleading] registration statement," Slack, 598 U.S. at 767, but here they do not, and so their Section 11 claim must be dismissed.

### III. Conclusion

In light of the above, there are two loose ends.

First, the Plaintiffs have also pressed a Section 15 "control person" claim under the Securities Act of 1933. A Section 15 claim "can go forward ... only by piggy-backing on a Section 11 claim." Holland, 2024 WL 5086106, at \*5 (citing In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 284 (3d Cir. 2006) and In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 273 n.3 (3d Cir. 2004)). So the dismissal of the Plaintiffs' Section 11 claim means that their Section 15 claim must be dismissed, too.

And second, the Plaintiffs have sought permission to narrowly replead if the instant motion to dismiss is granted, in the hopes of establishing Section 11 standing. See Plaintiffs' Letter (Jan. 29, 2025). In light of this, the Court's dismissal of the Section 11 and Section 15 claims is without prejudice. Should the Plaintiffs wish to replead, they may seek leave to do so.

\* \* \*

The motion to dismiss the Plaintiffs' Securities Act of 1933 claims (Count I and II) is granted.

**\*7** IT IS on this 13th day of February, 2025, so **ORDERED.**

**All Citations**

Slip Copy, 2025 WL 501427

---

**Footnotes**

There are three: KNS Holdings LLC DBPP UA Jan. 1, 2016; Carl Metzger; and Dan Liu. KNS Holdings is the lead plaintiff. Metzger and Liu are the named plaintiffs. No party has sought to alter the caption to reflect this.

The Defendants are Butterfly Network, Inc., see Complaint ¶ 21, plus a set of individuals, see id. ¶¶ 22–34.

As to some of the reasons why a private company might opt to go public via a SPAC merger, see, for example, Hacker v. Electric Last Mile Solutions Inc., 687 F. Supp. 3d 582, 591 n.15 (D.N.J. 2023).

Longview Acquisition Corp.

The Time 2 registration statement was allegedly "declared effective" on January 26, 2021. See Complaint ¶ 65. Section 11 liability is keyed to when the relevant "part of the registration statement ... [becomes] effective." 15 U.S.C. § 77k(a).

These certifications were incorporated by reference into the Complaint. See Complaint ¶¶ 18–20. Therefore, they can be considered here. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

The Plaintiffs do not allege that the Time 1 registration statement was misleading.

Note: there is a conclusory allegation in Complaint as to a lock-up period, see Complaint ¶¶ 19–20, but nothing meaningful. For example, there is no allegation of a lock-up period that prevented shares issued under the Time 1 registration statement from being bought on the aftermarket at Time 3.

[P]leading rules ... facilitate efficient "communication" between parties to a lawsuit. In other words, pleading rules set the parameters for the parties' exchange of "signals" as to what issues are to be disputed; ... [P]leading rules[s'] ... role is to refine the scope of the litigation.

Thomas R. Lee, Pleading and Proof: The Economics of Legal Burdens, 1997 B.Y.U. L. Rev. 1, 6–7 (1997).

This is the Time 2 registration statement.

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.