**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE HUB CYBER SECURITY LTD.,

Case No. 1:23-cv-05764-AS

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR: (I)**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND**
**<u>(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... iii

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ..................................1

      A.    Nature of the Action................................................................1

      B.    Initial Complaints and Lead Appointment Process ................................2

      C.    Lead Counsel's Investigation and the Amended Complaint.........................2

      D.    The Court Denies in Part the Motion to Dismiss the CAC.........................3

      E.    Discovery ........................................................................4

      F.    Mediation Efforts and Settlement Negotiations...................................5

III.  STANDARDS FOR PRELIMINARY APPROVAL ........................................................6

IV.   ARGUMENT ........................................................................................7

      A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the
            Rule 23(e)(2) Factors and Remaining *Grinnell* Factors and Warrants
            Preliminary Approval.............................................................7

            1.    Plaintiffs and Counsel Adequately Represented the Settlement
                  Class......................................................................7

            2.    The Settlement Is the Result of Good Faith Arm's-Length
                  Negotiations by Informed Counsel Who Were Aware of the
                  Risks of the Litigation.....................................................9

            3.    The Settlement Is an Excellent Result for the Settlement Class in
                  Light of the Benefits of the Settlement and the Risks of Continued
                  Litigation.................................................................10

                  a)    Complexity, Expense and Duration of Litigation .................10

                  b)    Risks of Establishing Liability and Damages .....................13

                  c)    Risks of Maintaining Class Action Status .........................16

i

d) Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation.................................17

4. Rule 23(e)(2)(C)...........................................................................18

5. The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other ............................................20

6. Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval ........................................................................................20

B. Certification of the Settlement Class for Settlement Purposes is Appropriate ...........................................................................................22

1. The Settlement Class Satisfies the Requirements of Rule 23(a)..................................................................................22

2. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)..............................................................................23

3. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class................................................................25

C. The Court Should Approve the Proposed Form and Method of Notice ....................................................................................................25

V. PROPOSED SCHEDULE OF EVENTS........................................................27

VI. CONCLUSION.............................................................................................27

**TABLE OF AUTHORITIES**

Cases                                                                Page(s)

*A.F.I.K. Holding SPRL v. Fass*,
   216 F.R.D. 567 (D.N.J. Sept. 4, 2003) ...................................................................9

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..........................................................................................25

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ..........................................................................................24

*Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023). ..............................................................................16

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F. 3d 52 (2d Cir. 2000) ................................................................................8

*Beach v. JPMorgan Chase Bank, N.A.*,
   2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .......................................................7

*Becker v. Bank of New York Mellon Trust Co., N.A.*,
   2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ...................................................19

*Pearlstein v. BlackBerry*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ..................................................17

*Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ..............................................................................23

*Chatelain v. Prudential-Bache Sec., Inc.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................15, 20

*City of Detroit v. Grinnell Corp.*,
   495 F. 2d 448 (2d Cir. 1974) ...................................................................7, 10, 17

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) .....................................................10

*D'Amato v. Deutsche Bank*,
   236 F. 3d 78 (2d Cir. 2001) ................................................................................9

*Gap, Inc. v. Stone Intern. Trading, Inc.*,
  1994 WL 38651 (S.D.N.Y. Feb. 4, 1994) ............................................................11

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................16

*Gordon v. Vanda Pharm. Inc.*,
  2022 WL 4296092 (E.D.N.Y. Sept. 15, 2022) ............................................................10

*Gross v. GFI Group, Inc.*,
  784 F. App'x. 27 (2d Cir. 2019) ............................................................14

*In re 3D Systems Sec. Litig.*,
  2023 WL 5018625 (E.D.N.Y. June 5, 2023). ............................................................8

*In re 3D Systems Sec. Litig.*,
  2023 WL 4621716 (E.D.N.Y. July 19, 2023) ............................................................8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................26

*In re Apple Comput. Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................15

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................16

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................20

*In re China Med. Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................................................9

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................................10, 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................................15

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................13

*In re Gilat Satellite Networks, Ltd.*,
  2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) ............................................................21

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................. passim

*In re Hub Cyber Security Ltd.*,
2025 WL 872078 (S.D.N.Y. March 20, 2025) .....................................................3

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) .........................................................................20

*In re Merck & Co. Sec. Litig.*,
432 F.3d 261 (3d Cir. 2005)..................................................................................24

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................21

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ..............................................................22, 23, 24

*In re Mfrs. Life Ins. Co. Premium Litig.*,
1998 WL 1993385 (S.D. Cal. Dec. 21, 1998).....................................................18

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 Fed. Appx. 760 (2d Cir. 2020).......................................................................7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).............................................................................7

*In re Polaroid ERISA Litig.*,
240 F.R.D. 65 (S.D.N.Y. 2006).............................................................................8

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) .........................................................................22

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................18

*In re Stable Road Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. April 23, 2024) ......................................................9

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)...................................................................15

*In re Veeco Instr., Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006)..........................................................................23

*In re Vitamin C Antitrust Litig.*,
    2013 WL 6858853 (E.D.N.Y. Dec. 30, 2013) .......................................................................12

*In re Vivendi Universal, S.A. Sec. Litig.*,
    284 F.R.D. 144 (S.D.N.Y. 2012) .......................................................................................18

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................................17

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)..........................................................................................................16

*Korn v. Franchard Corp.*,
    456 F.2d 1206 (2d Cir. 1972).............................................................................................22

*Maley v. Del Global Tech. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................19

*Marsh & McLennan*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................................24

*Monsanto Intern. Sales Co., Inc. v. Hanjin Container Lines, Ltd.*,
    770 F. Supp. 832 (S.D.N.Y. 1991) ...................................................................................12

*Pronova BioPharma Norge AS v. Teva Pharm. USA, Inc.*,
    708 F. Supp. 2d 450 (D. Del. 2010)...................................................................................11

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012)....................................................................11

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015)...............................................................................................23

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .........................................................................................15

*Seijas v. Rep. of Argentina*,
    606 F.3d 53 (2d Cir. 2010)................................................................................................24

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................................................10

*Thorn v. Novartis Pharm. Corp.*,
    2005 WL 8162566 (E.D. Tenn. Aug. 30, 2005). ...............................................................11

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) ................................................................8

**Statutes**

15 U.S.C. §§ 77k ......................................................................................................................24

15 U.S.C. § 77k(e) ...................................................................................................................14

15 U.S.C. § 77l(b) ....................................................................................................................14

15 U.S.C. § 77o .......................................................................................................................24

**Rules**

Fed. R. Civ. P.  23 ...................................................................................................................12

Fed. R. Civ. P.  23(a) ..............................................................................................................22

Fed. R. Civ. P.  23(a)(2) ..........................................................................................................23

Fed. R. Civ. P.  23(b)(3) .....................................................................................................23, 24

Fed. R. Civ. P. 23(e)(2) .....................................................................................................6, 7, 20

Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................................7

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................................................18

Fed. R. Civ. P.  23(e)(1) ........................................................................................................1, 6

Fed. R. Civ. P.  23(e)(2)(B) .......................................................................................................9

Fed. R. Civ. P.  23(e)(2)(C) .....................................................................................................10

Fed. R. Civ. P.  23(e)(2)(C)(i) ..................................................................................................10

Fed. R. Civ. P.  23(e)(2)(C)(ii) .................................................................................................18

Fed. R. Civ. P.  23(e)(2)(C)(iii) ................................................................................................19

Fed. R. Civ. P.  23(e)(2)(C)(iv) ................................................................................................19

Fed. R. Civ. P.  23(e)(2)(D) .....................................................................................................20

Fed. R. Civ. P.  23(e)(3) ............................................................................................................6

Fed. R. Civ. P.  23(f)...................................................................................................12

Fed. R. Civ. P. 23(g) ...................................................................................................25

Fed. R. Civ. P. 23(g)(1)(A)..................................... ...................................................25

## I.    INTRODUCTION

After more than two years of hard-fought litigation, the Parties[1] have agreed to settle all claims in the Action in exchange for a non-reversionary cash payment of $11 million. The Settlement is an excellent result for the Settlement Class under the circumstances, and it was secured in a procedurally fair manner. Moreover, securities class actions are routinely certified for the purpose of effectuating a settlement. Preliminary approval is, therefore, proper under Rule 23(e)(1) of the Federal Rules of Civil Procedure.

## II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.    Nature of the Action

This is a putative securities class action brought by investors alleging, *inter alia*, that defendant Hub Cyber Security Ltd. ("Hub" or the "Company") and defendants Eyal Moshe, Manish Agarwal, Matthew Kearney, Hugo Goldman, Uzi Moscovich, Zeev Zell, Moti Franko, Levana Shifman, and Moshe Raines (collectively, the "Individual Defendants"; and together with Hub, "Defendants") violated sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") by disseminating materially false and misleading information in the Offering Documents issued in connection a business combination (the "Business Combination") pursuant to which Mount Rainier Acquisition Corp., a special purpose acquisition company ("SPAC"), acquired Hub Cyber Security (Israel) Ltd. ("Legacy Hub"), an Israeli cybersecurity company, in a "de-SPAC" transaction that resulted in the formation of Hub.[2] Among other things, the Plaintiffs

---

[1]    Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation and Agreement of Settlement dated August 4, 2025 (the "Stipulation"), which is attached as Exhibit 1 to the accompanying Declaration of Daniella Quitt ("Quitt Declaration"). All references to "Ex. _" are to exhibits to the Quitt Declaration.

[2]    Hub and the Individual Defendants (with the exception of Eyal Moshe) are referred to herein as the "Hub Defendants." Plaintiffs voluntarily dismissed their claims against Levana Shifman on August 12, 2024. ECF No. 105.

alleged that Defendants materially misled investors regarding: (i) whether the investors in a $50 million private investment in public equity ("PIPE") facility were committed; (ii) the strength of the Company's internal controls in light of undisclosed embezzlement by corporate insiders; and (iii) their portrayal of Legacy Hub as a cash-positive, "established business" with a "client base" and "established products" when, in fact, Legacy Hub's flagship product was nowhere near ready for market. Plaintiffs further alleged that Hub common stock traded at artificially inflated prices as result of the alleged misrepresentations and omissions, and declined when the truth was revealed.

**B.    Initial Complaints and Lead Appointment Process**

On July 6, 2023, and July 31, 2023, class action complaints were filed in the United States District Court for the Southern District of New York (the "Court"). By Order dated November 8, 2023, the Court: (i) consolidated the cases for all purposes, and recaptioned the consolidated case as *In re Hub Cyber Inc. Securities Litigation*, Master File No. 1:23-cv-05764-AS (ii) appointed Aryeh Agam and Shimon Aharon to serve as Lead Plaintiffs; and (iii) approved their selection of Glancy Prongay & Murray LLP ("GPM") and the Law Offices of Jacob Sabo ("Sabo") to serve as Lead Counsel. ECF No. 40.

**C.    Lead Counsel's Investigation and the Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Hub's filings with the U.S. Securities and Exchange Commission, as well as Legacy Hub's filings with the Tel Aviv Stock Exchange, (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Hub, and (c) Hub's investor call transcripts, press releases and other public statements made by Defendants prior to,

during, and after the Settlement Class Period; (ii) retaining and working with a private investigator who conducted an investigation in Israel that involved, *inter alia*, numerous interviews of former Hub employees and other sources of relevant information; and (iii) consulting with an expert on negative causation and damages.

Based on the foregoing investigation, on January 26, 2024, Plaintiffs filed and served the 54-page (154-paragraph) Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC").  ECF No. 45.  The CAC asserted Securities Act claims against Hub and the Individual Defendants under sections 11 and 12(a)(2), and against the Individual Defendants under Section 15.

### D.    The Court Denies in Part the Motion to Dismiss the CAC

On May 31, 2024, the Hub Defendants and Defendant Eyal Moshe each moved to dismiss the CAC.  ECF Nos. 85-86, 92-93.  Plaintiffs filed an opposition to each motion to dismiss on July 15, 2024.  ECF Nos. 95-96.  The Hub Defendants and Defendant Eyal Moshe filed their respective replies in support of their motions to dismiss on August 9, 2024.  ECF Nos. 101-102.

By Order dated February 3, 2025, the Court ordered the Parties to file a letter brief answering certain questions related to the motions to dismiss.  ECF No. 109.  On February 7, 2025, the Parties filed their letter briefs.  ECF Nos. 110-112.

On March 20, 2025, the Court granted in part, and denied in part, Defendants' motions to dismiss.  *See* ECF No. 115; *In re Hub Cyber Security Ltd.*, 2025 WL 872078 (S.D.N.Y. March 20, 2025).  The Court denied Defendants' motions with respect to Plaintiffs' section 11 claims, except with respect to: (i) the allegation that the statement in the Offering Documents that the PIPE investors were committed was false and misleading at the time the Registration Statement was made effective on December 8, 2022; and (ii) the allegation that the Defendants violated Item 105

in failing to disclose the Company's internal control weaknesses, although the Court allowed this claim to proceed against Defendant Moshe.  With respect to Plaintiffs' Section 12(a)(2) claims, the Court denied Defendants' motions with respect to all claims, noting that "the relevant point of reference for the Section 12 (a)(2) claim is the day the business combination closed" and thus "the PIPE-financing statements survives."  Order at 17, ECF No. 115.  The Court also denied Defendants' motions with respect to the section 15 claims against the Individual Defendants, but dismissed Plaintiffs' Item 303 claims.  On May 19, 2025, Defendants filed their answers to the CAC.  ECF Nos. 128-29.

### E.    Discovery

On April 4, 2025, the Court entered a Civil Case Management Plan and Scheduling Order.  ECF No. 119.  As part of the discovery process, the Parties negotiated a Protective Order regarding the handling of confidential documents and an Order regarding the Protocol for the Discovery of Electronically Stored Information, both of which were entered by the Court on May 6, 2025.  ECF Nos. 125, 126.  The Parties also made initial disclosures to each other, and negotiated over date ranges, search terms, and custodians for Defendants' electronically stored information.

Plaintiffs served their First Request for Documents on April 12, 2025, targeting PIPE financing materials, internal control-related documents, board minutes, and insurance policies, among other categories, and Defendants served their responses and objections on May 12, 2025.  The Hub Defendants served a First Request for Documents directed to Plaintiffs on May 23, 2025, and on June 4, 2025, Plaintiffs served a First Request for Admissions on Defendants.  On June 6, 2025, the Hub Defendants served a Request for Admissions on Plaintiffs.

On June 25, 2025, the Parties jointly moved the Court for an extension of the discovery deadlines to allow the Parties to pursue mediation and conserve resources.  ECF No. 130.  The

Court granted the request on June 26, 2025.  ECF No. 131.

In advance of the mediation, the Parties agreed to commence document discovery. Pursuant to that agreement, Defendants produced more than 88,000 pages of documents, and Plaintiffs produced 262 pages.  Lead Counsel conducted a targeted review and analysis of the documents produced by Defendants, many of which were in Hebrew.  Plaintiffs were prepared to continue vigorously pressing for discovery if the Parties' planned mediation was not successful.

### F.    Mediation Efforts and Settlement Negotiations

The Parties agreed to mediate with Jed Melnick, Esq. of JAMS, a well-respected mediator of complex cases.  On September 3, 2025, Lead Counsel and Defendants' Counsel participated in a full-day, in-person mediation session with Mr. Melnick.  In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements, and exhibits, which addressed both liability and damages issues.  The mediation culminated in Mr. Melnick making a mediator's recommendation to resolve the Action for $11,000,000 in cash for the benefit of the Settlement Class.  The Parties accepted the mediator's proposal.

After substantial negotiations, the agreement in principle to settle the Action was memorialized in a term sheet dated October 9, 2025 (the "Term Sheet").  The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $11,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions, and contemplates the execution of a customary "long form" stipulation and agreement of settlement and related papers.  The Stipulation was executed following substantial additional negotiations concerning the terms of the Settlement.

## III.    STANDARDS FOR PRELIMINARY APPROVAL

A class action settlement must be presented to the Court for approval, and it should be approved if the Court finds it "fair, reasonable, and adequate."  FED. R. CIV. P. 23(e)(2).[3]  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  *Id.*  Rule 23(e)(2)—which governs final approval— requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's-length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitable relative to each other.

Factors (A) and (B) "identify matters . . . described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expect to provide to class members").  Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).

The four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the

---

[3]    Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

proposal." *Id*. at 918; *see also In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (new factors "add to, rather than displace, the *Grinnell* factors"). The Second Circuit's Grinnell factors (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[4] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F. 2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Grinnell*).

As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the non-duplicative *Grinnell* factors.

## IV. ARGUMENT

### A. The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and Remaining *Grinnell* Factors and Warrants Preliminary Approval

#### 1. Plaintiffs and Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any interests antagonistic to the interests of other class members and whether the representatives have an interest in vigorously pursuing the claims of the class." *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed. Appx. 760, 764 (2d Cir. 2020) (citing

---

[4] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F. 3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019). In addition, Plaintiffs diligently oversaw the litigation, produced documents to Defendants in conjunction with the mediation process, and communicated with Lead Counsel concerning case developments and settlement. *See In re 3D Systems Sec. Litig.*, 2023 WL 5018625, at *5 (E.D.N.Y. June 5, 2023) (finding of adequacy supported where "Plaintiffs themselves were very active in this case, communicated regularly with their attorneys, and, particularly, were very involved with the approval of the proposed settlement." (cleaned up)), *R&R adopted as modified*, *In re 3D Systems Sec. Litig.*, 2023 WL 4621716, at *1 (E.D.N.Y. July 19, 2023).

Second, Plaintiffs retained as counsel: (i) GPM, a firm whose attorneys are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases (*see* ECF No. 23-4 (GPM firm résumé)), and (ii) Sabo, an Israeli based firm that has significant commercial and securities litigation experience in Israel and securities experience in the United States. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at

*18 (S.D.N.Y. Aug. 13, 2018) (GPM has "extensive experience serving as lead or co-lead counsel in class action securities litigation" and noting "[w]e have full confidence that they will fairly and adequately represent the interests of the class"); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 577 (D.N.J. Sept. 4, 2003) (appointing predecessor firms to GPM and Sabo lead counsel in securities class action); *see also* ECF No. 40 (granting motion to appoint GPM and Sabo as Lead Counsel). And, as noted above, Lead Counsel have vigorously prosecuted the Settlement Class's claims throughout the litigation by, *inter alia*, conducting an extensive investigation of the claims through a detailed review of publicly available documents about Hub, as well as contacting former Hub employees, drafting the detailed CAC, fully briefing and defeating in part the two motions to dismiss, conducting discovery of Defendants, and obtaining an $11,000,000 Settlement for the benefit of the Settlement Class through an adversarial mediation process. *See* Sec. II., *supra*; *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *6 (C.D. Cal. April 23, 2024) (finding adequacy of counsel under substantially similar circumstances).

### 2. The Settlement Is the Result of Good Faith Arm's-Length Negotiations by Informed Counsel Who Were Aware of the Risks of the Litigation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Here, as set forth in detail above (Sec. II.F., *supra*), the Parties engaged in a substantive mediation process with Mr. Melnick. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with extensive experience mediating complex securities class actions, support the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F. 3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *5

(C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive.").

### 3.    The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[5] Each supports the Settlement's approval.

### (a)    Complexity, Expense and Duration of Litigation

"As a general matter, the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381-82 (S.D.N.Y. 2013); *see also Gordon v. Vanda Pharm. Inc.*, 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) ("settlement is favored when the alternative–litigating the case–will be long, complex, and expensive."). "[S]ecurities class actions are by their very nature complicated and district courts in this Circuit have long recognized that securities class actions are notably difficult and notoriously uncertain to litigate." *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (it is "beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.").

---

[5]    Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also GSE*, 414 F. Supp. 3d at 693 ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

This case was no exception; in fact, it was significantly more complex, expensive, and risky by virtue of the fact that the majority of Defendants and evidence is located Israel. While Israel is a signatory to the Hague Convention, "Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient." *Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012).

In addition, even if the Court grants a letter rogatory (or Letter of Request), it is not clear to what extent it would be executed in Israel. "Individuals to whom a Letter of Request is directed have the right to refuse to give evidence to the extent they are protected by a privilege under either the law of the State of execution or the State of origin." *Pronova BioPharma Norge AS v. Teva Pharm. USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010). A potential witness may, therefore, oppose a Letter of Request by claiming that the discovery sought is impermissible under Israeli law—for instance Israeli privacy or attorney-client privilege laws—and there is no guarantee that the letter rogatory will be enforced. Lead Counsel would need to thread the needle of both U.S. and Israeli law in order to obtain documentary and testimonial evidence from third parties. *See Gap, Inc. v. Stone Intern. Trading, Inc.*, 1994 WL 38651, at *2 (S.D.N.Y. Feb. 4, 1994) ("an American court must first issue a Letter of Request to the appropriate Israeli official … it will be up to an Israeli tribunal to determine whether any privilege exists or whether to compel him to respond."). The need to effectuate discovery via lengthy Hague Convention procedures would, without doubt, increase the complexity, expense and duration of the litigation. *See Thorn v. Novartis Pharm. Corp.*, 2005 WL 8162566, at *3 (E.D. Tenn. Aug. 30, 2005) ("discovery from

third parties in Israel and Denmark would need to be obtained through the Hague Convention, a process that is difficult and expensive.").

Moreover, even if documents were produced, many would be written in Hebrew, meaning prosecution of the Action would have required a team of attorneys who are both fluent in Hebrew and familiar with U.S. securities laws.  Review of the documents would have been expensive, time consuming, and involve many more documents than those that would be offered into evidence at trial.  *See e.g.*, *Monsanto Intern. Sales Co., Inc. v. Hanjin Container Lines, Ltd.*, 770 F. Supp. 832, 836 (S.D.N.Y. 1991) (recognizing difficulties of trying a case with translated documents and testimony, including "significant cost").  To the extent documents would then be used in the U.S., they would need to be translated from Hebrew to English, and translation accuracy can be contentious because a word or phrase may have multiple meanings or a different context-specific meaning, which can lead to evidentiary disputes and increased cost.  *See id.*; *see also In re Vitamin C Antitrust Litig.*, 2013 WL 6858853, at *2 (E.D.N.Y. Dec. 30, 2013) (noting that case involved "extensive Chinese documents that had to be translated with concomitant disputes over the accuracy of the translations").

Depositions would also be far from routine, given that Defendants and most non-party witnesses reside in Israel.  Every deposition would entail either trans-Atlantic travel, or multi-day videoconferences, and the extensive (and expensive) use of translators would be unavoidable.

It is also important to note that this case has been pending for approximately 2 1/2 years.  Assuming Plaintiffs' claims were certified under Rule 23 (and not reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would undoubtedly be a long and expensive endeavor.  *GSE*, 414 F. Supp. 3d at 693

("even if plaintiffs were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.").

In short, the complexity, cost, and potential duration of continued litigation strongly favors preliminary approval. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) ("A securities case, by its very nature, is a complex animal … and counsel faced the additional challenges that many documents needed translation, [and] that evidence, witnesses and depositions were overseas").

### (b) Risks of Establishing Liability and Damages

In considering these factors, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *GSE*, 414 F. Supp. 3d at 694. While Plaintiffs and Lead Counsel believe that the claims asserted against Hub are meritorious, they recognize that this Action presented a number of substantial risks to establishing both liability and damages. When compared to the certainty of the significant, immediate benefit conferred by the Settlement, these risks militate against further litigation and support preliminary approval.

**<u>Establishing Liability</u>:** The claims here resulted from an alleged scheme orchestrated by the Individual Defendants to pump up the prospects of Hub in order to complete the Business Combination and get unsuspecting investors to invest in the Company. While Plaintiffs prevailed at the pleading stage, this Court's decision on the motion to dismiss demonstrates that this case was far from a "slam dunk." The Court recognized that there were standing issues with respect to the Section 12 claims, finding that only the Plaintiffs who purchased Mount Rainier shares had standing. With respect to the Section 11 claims, the Court held that Plaintiffs had not adequately plead that the PIPE investors were not irrevocably committed at the time the registration statement became effective. Whether Hub's PIPE investors were irrevocably committed would have been

open questions at summary judgment and/or trial.

Moreover, Plaintiffs still needed to *prove* their case, and documents and deposition testimony may have supported Hub's narrative of the case. Although Plaintiffs have built a strong circumstantial case, there is simply no guarantee that that the evidence would support their theory. Hub argued in its motion to dismiss, and would undoubtedly continue to assert at summary judgment, trial, and/or on appeal, that Hub made no actionable misrepresentations under the federal securities law. For instance, Hub would continue to argue that the claims sustained with respect to the lack of internal controls were not material and that Hub did in fact have a mature product. The resolution of these issues would largely depend on the fruits of discovery, and success was not a forgone conclusion. *See Gross v. GFI Group, Inc.*, 784 F. App'x. 27, 28 (2d Cir. 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite District Court Judge Pauley twice finding the statement actionable).

**Risks Related to Causation and Damages:** Although Plaintiffs were confident that they could establish damages assuming a finding of liability, Plaintiffs faced a risk that the Court or jury would substantially reduce or even eliminate damages. Under §§11(e) and 12(a)(2) of the Securities Act, (15 U.S.C. §§77k(e) and 77l(b)), a defendant can reduce or eliminate damages through a showing that the false or misleading statements or omissions were not the cause, in whole or in part, of the loss sustained by the class. Here, Defendants were likely to argue "negative causation" at both summary judgment and trial, and that cognizable class-wide damages would be a small fraction of the damages claimed by Plaintiffs. They would also most likely argue that Plaintiffs' §11 claims overlap with claims brought in Israel on behalf of shareholders of Legacy

14

Hub that allege misrepresentations about the PIPE financing and, as such, the Court should exclude that amount as duplicative to the shareholders who receive damages in Israel. While Plaintiffs believe they had the stronger argument, the issue still presented very real risks. *See* C*hristine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *13 (S.D.N.Y. Oct. 16, 2019) ("While Plaintiffs proceeded as though they had the better arguments, the risk remained that Defendants could have defeated loss causation, or significantly diminished damages, for the one remaining alleged corrective disclosure date."); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning jury verdict of $81 million for plaintiffs against an accounting firm on loss causation grounds and entering judgment for defendants).

In addition, the Parties' respective experts would offer sharply divergent testimony on these issues both at summary judgment and trial, resulting in a "battle of the experts." *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) (with a "battle of experts, it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found").

**Post-Trial/Appellate Risk:** Even if Plaintiffs were to obtain 100% of their damages, the risks would not end there. There are numerous cases in which a successful verdict has been overturned either by motion after trial or on appeal. In *In re Apple Comput. Sec. Litig.*, 1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991), for example, the jury rendered a verdict for plaintiffs after an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100

million.   The court, however, overturned the verdict, entered judgment for the individual defendants, and ordered a new trial with respect to the corporate defendant.  *See also Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 433 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20 (S.D. Fla. Apr. 25, 2011) (after plaintiffs' jury verdict, court granted defendants' motion for judgment as a matter of law and entered judgment for defendants), *aff'd on other grounds*, 688 F.3d 713 (11th Cir. 2012) (finding trial court erred, but defendants nevertheless entitled to judgment as a matter of law based on lack of loss causation).

### (c)       Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. IV.B., *infra*, a class has not yet been certified.  Even if the Court were to certify a class, there is always a risk that it could be decertified at a later stage in the proceedings.  *See Ark. Teacher Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (decertifying a class of investors after 12 years of litigation); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding certification also support approval of the Settlement, as Hub undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action … this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

16

> **(d)** **Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation**

"Courts typically analyze the last two *Grinnell* factors together." *Pearlstein v. BlackBerry*, 2022 WL 4554858, at*6 (S.D.N.Y. Sept. 29, 2022 (citing *Grinnell*, 495 F.2d at 463). In so doing, the adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).

Here, the proposed Settlement provides a cash payment of $11 million. This is a highly favorable result in light of the significant risks of continued litigation as set forth herein. Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory, *i.e.*, Plaintiffs' best case scenario, the total maximum damages potentially available in this Action would be approximately $178.5 million. The Settlement thus represents a recovery of 6.16%, which is more than twice the median recovery of 3.0% of estimated damages in securities class action settlements during the past decade in cases with comparable damages. *See* Ex. 2 (Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025)) at p. 26, Fig. 23 (between January 2015 and December 2024 the median settlement as a percentage of estimated losses was 3.0% for securities class actions with estimated losses between $100-$199 million)).

Of course, no litigation is risk free. If, for example, Defendants were to prevail on their negative causation arguments, and/or assertion that damages should be reduced due to potentially duplicative payments to investors in the Israeli action, damages would have been greatly reduced.

And, even if Plaintiffs were successful at trial, Defendants could have challenged the damages of each and every class member in post-trial proceedings, substantially reducing any aggregate recovery. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *5 (S.D.N.Y. July 21, 2020) ("In the absence of the Settlement, the continued litigation of the Action likely would have required the Parties to … submit post-trial motions, including a contested individual claims procedure"); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 155 (S.D.N.Y. 2012) (establishing a preliminary framework for a post-trial claims administration whereby class members could submit claims against Vivendi and Vivendi could interpose individualized challenges, including on the basis of a claimant's lack of reliance or damages). In sum, the risks posed by continued litigation were substantial, and they would be present at every step of the litigation if it were to continue. Accordingly, this factor weighs in favor of approving the Settlement. *See In re Mfrs. Life Ins. Co. Premium Litig.*, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) ("[E]ven if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all apparent – there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings.").

### 4. Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and

distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The Claims Administrator will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This proposed claims processing method is standard in securities class action settlements as it has been long found to be effective, as well as necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required to distribute the Net Settlement Fund on a claims-free basis. *See Becker v. Bank of New York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) ("The requirement that class members submit documentation to substantiate their holdings . . . will facilitate the filing of legitimate claims, yet is not overly demanding given the range of permissible documentation.").

**Rule 23(e)(2)(C)(iii):**  As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award, in an amount not to exceed 33⅓% to compensate them for the services they rendered on behalf of the Settlement Class. The proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties entered into a confidential agreement establishing certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a Hub securities in excess of a certain threshold request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.    The Settlement Treats All Members of the Settlement Class Equitably Relative to Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    Remaining *Grinnell* Factors Weigh in Favor of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors. These factors also support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear*

20

*Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Here, Plaintiffs conducted an extensive investigation into Hub prior to filing the CAC, including, *inter alia*: interviewing former employees; analyzing the Company's SEC filings and Legacy Hub's filings with the Tel Aviv Stock Exchange; and consulting with a loss causation and damages expert. The Parties submitted substantial briefing relating to the motion to dismiss, exchanged detailed mediation briefs, and Plaintiffs obtained over 88,000 pages of documents from Defendants concerning the matters alleged in the CAC prior to the mediation. The fact that there has been only a small amount of formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions. *See In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *10 (E.D.N.Y. Sept. 18, 2007) ("Although little formal discovery has been completed, Lead Counsel has interviewed several former employees of [Defendant] and obtained a number of internal documents, and all parties have conducted extensive research[.]").

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Here, collecting a large judgment after trial and appeals, however, was not a foregone conclusion. The D&O policies were wasting, Hub's business is struggling, the Company has repeatedly issued going concern warnings, HUB does not have substantial assets in the U.S., and the Individual Defendants neither reside nor are domiciled in the U.S. Under these circumstances, ability to pay weighs in favor of preliminary approval.

B.    **Certification of the Settlement Class for Settlement Purposes is Appropriate**

1.    **The Settlement Class Satisfies the Requirements of Rule 23(a)**

**Numerosity:**  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, Plaintiffs' consulting damages expert estimates that there were approximately 92 million damaged shares as a result of the alleged wrongdoing in the Action.[6]  Thus, while the precise number of Settlement Class Members cannot be identified, it is likely to be in the thousands.  Under such circumstances, numerosity is presumed.  *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions:**  Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where "the alleged misrepresentations in the prospectus relate to all the investors, [because the] existence and materiality of such misrepresentations obviously present important common issues." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (citing *Korn v. Franchard Corp.*, 456 F.2d 1206, 1210 (2d Cir. 1972)).  Here, questions of law and fact regarding Plaintiffs' Securities Act claims will be common to the class, including whether Defendants' representations to the investing public in the Offering Materials were "materially misleading."  Similarly, such questions also exist regarding the Section 15 claims, including whether the Individual Defendants "controlled" Hub.  These questions are susceptible

---

[6]    The Settlement Class is comprised of: (i) holders of Mount Rainier securities or Legacy Hub securities that were converted into Hub Securities on or about March 1, 2023 as part of the Business Combination; and (ii) all persons and entities that purchased Hub Securities in the open market during the period from March 1, 2023 through July 31, 2023, both dates inclusive, and were damaged thereby.

to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *MF Glob.*, 310 F.R.D. at 236.

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the class because their claims are based on the alleged misrepresentations and omissions in the Offering Materials. Thus, any class member's claim arising from these misrepresentations will necessarily rely on the same course of events. *MF Glob.*, 310 F.R.D. at 236 ("The legal and factual arguments that [plaintiff] advances in support of its claims—chiefly, that [the company's] Offering Documents omitted or misstated information material to the value of its securities—are the same arguments that all Proposed Class members would advance in support of their claims.").

**Adequacy:** As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel have, and will continue to, adequately represent the proposed Settlement Class.

### 2.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

**Common Questions Predominate:** Class-wide issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "While Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of individual issues." *In re Veeco Instr., Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006). "[T]he fact that damages may have to be ascertained on an

individual basis is not sufficient to defeat class certification." *Seijas v. Rep. of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010).  "[I]f the liability issue is common to the class, common questions are held to predominate." *Marsh & McLennan*, 2009 WL 5178546, at *11.

Here, Plaintiffs and the Settlement Class would establish Defendants' liability by proving that the Offering Materials misstated or omitted material facts and that the Individual Defendants are "control persons."  *See* 15 U.S.C. §§ 77k, 77o.  The evidence needed to prove these claims will be the same for all Settlement Class members, a fact that strongly favors a finding of predominance.  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466-67 (2013).  Moreover, affirmative defenses are also subject to general proof, including causation-based defenses.  *See In re Merck & Co. Sec. Litig.,* 432 F.3d 261, 274 (3d Cir. 2005) ("[D]efendants can limit damages by showing that the plaintiffs' losses were caused by something other than their misrepresentations.").  These questions, among others, are identical for each Settlement Class member, as is the evidence necessary to answer them.  Accordingly, the predominance requirement is met.  *See MF Glob.,* 310 F.R.D. at 238.

**Class Action Is Superior:**  Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* FED. R. CIV. P. 23(b)(3).

Here, there is no evidence that putative class members desire to bring separate individual actions, and the Parties are unaware of any individual litigation involving the same issues in the United States.  Furthermore, it is desirable to concentrate the claims in this Court as HUB's

24

common stock is, and was, traded on the NASDAQ, and the Court is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 3. The Court Should Appoint Lead Counsel as Counsel for the Settlement Class

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM and Sabo were appointed Lead Counsel on November 8, 2023 (ECF Doc. No. 40), and since that time the firms have devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1., *supra*, GPM has substantial experienced prosecuting securities class actions, and Sabo has relevant litigation experience in Israel and securities experience in the U.S. For these reasons, among others, Plaintiffs respectfully request that the Court appoint GPM and Sabo to serve as Class Counsel.

### C. The Court Should Approve the Proposed Form and Method of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail by first-class mail, individual copies of the Postcard Notice (Ex. A-4 to the Stipulation), or email a link to the Notice (Ex. A-1 to the Stipulation) and Claim Form (Ex. A-2 to the Stipulation, and together with the Notice, the "Notice Packet"), to all

potential Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice and emailing of the Notice Packet, copies of the Notice and the Claim Form will be posted on a website to be developed for the Settlement. From this website, potential Settlement Class Members will be able to download copies of the Notice and Claim Form and submit claims online.[7] The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses. The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to mailing the Postcard Notice, the Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

It is "more than sufficient" to use "a combination of a mailed post card [sic] directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Accordingly, Plaintiffs respectfully submit that the proposed notice and related procedures are appropriate and should be approved.

## V.    PROPOSED SCHEDULE OF EVENTS

---

[7]    Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Plaintiffs request that Court schedule the Settlement Hearing for a date at least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing/emailing notice to Settlement Class Members (which date shall be the "Notice Date") | Not later than 20 business days after entry of Preliminary Approval Order (Prelim. App. Order ¶7(b)) |
| Publication of Summary Notice | Not later than 10 business days after the Notice Date (Prelim. App. Order ¶7(d)) |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and the application for attorneys' fees and expenses | Not later than 35 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶26) |
| Deadline for receipt of exclusion requests | Not later than 28 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶¶13) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶17) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Prelim. App. Order ¶26) |
| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date (Prelim. App. Order ¶10) |
| Settlement Hearing | At least 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience thereafter |

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

Dated: December 9, 2025

Respectfully yours,

**GLANCY PRONGAY & MURRAY LLP**

By: *s/Daniella Quitt*
Daniella Quitt
745 5TH Avenue, 5th Floor
New York, NY 10151
Telephone: (212) 935-7400
Email: dquitt@glancylaw.com

Joseph D. Cohen (admitted *pro hac vice*)
Casey E. Sadler (admitted *pro hac vice*)
Christopher R. Fallon (admitted *pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email:  jcohen@glancylaw.com
         csadler@glancylaw.com
         cfallon@glancylaw.com

**THE LAW OFFICE OF JACOB SABO**
Jacob Sabo
22a Mazzeh St. Tel-Aviv, Israel
Telephone: (++972) 39070770
Email:   jsabo53@gmail.com

*Counsel for Plaintiffs and Co-Lead Counsel
for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

*Counsel for Additional Plaintiffs Rodrigue
Fodjo and Dustin Green*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(c)</u>

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains **8,681**

words, which complies with the word limit of L.R. 7.1(c).

Dated: December 9, 2025

*/s/ Daniella Quitt*
Daniella Quitt

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of December 2025, I caused a true and correct copy of the foregoing document to be served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Daniella Quitt*
Daniella Quitt